PENTIUK, COUVREUR & KOBILJAK, P.C. • ATTORNEYS AND COUNSELLORS AT LAW • EDELSON BUILDING, SUITE 200 • 2915 BIDDLE AVENUE, WYANDOTTE, MICHIGAN 48192 • (734) 281-7100

**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

THE UNITED STATES OF AMERICA AND JENNIFER GRANHOLM, ATTORNEY GENERAL FOR THE STATE OF MICHIGAN, *EX REL* MICHIGAN NATURAL RESOURCES COMMISSION, AND DIRECTOR OF THE MICHIGAN DEPARTMENT OF NATURAL RESOURCES,

Plaintiffs,

v.

Case No. 87-70992
HON. JOHN FEIKENS



WAYNE COUNTY, MICHIGAN; CITY OF ALLEN PARK; CITY OF BELLEVILLE; TOWNSHIP OF BROWNSTOWN; CITY OF DEARBORN HEIGHTS; CITY OF ECORSE; CITY OF LINCOLN PARK; CITY OF RIVER ROUGE; CITY OF RIVERVIEW; CITY OF ROMULUS; CITY OF SOUTHGATE; CITY OF TAYLOR; TOWNSHIP OF VAN BUREN; CITY OF WYANDOTTE; SOUTHGATE-WYANDOTTE RELIEF DRAIN DRAINAGE DISTRICT; AND ECORSE CREEK POLLUTION ABATEMENT DRAIN, NO. 1 DRAINAGE DISTRICT,

Defendants.
_______________________________/

**RIVERVIEW'S SECOND SUPPLEMENTAL BRIEF REGARDING BYPASS**

Now comes the City of Riverview, by and through its attorneys, Pentiuk, Couvreur and Kobiljak, P.C., and in further supplemental support for its Motion to Allow Bypass filed April 13, 2001, and Motion to renew same, respectfully prays this Honorable Court allow the City of Riverview to maintain its currently approved bypass location beyond the October 1, 2002 seal date for the following reasons.

During the August 30, 2002 on the County's Motion regarding a one year extension of the bypass seal date, the Court raised questions and offered remarks from the bench which the

454

PENTIUK, COUVREUR & KOBILJAK, P.C. • ATTORNEYS AND COUNSELLORS AT LAW • EDELSON BUILDING, SUITE 200 • 2915 BIDDLE AVENUE, WYANDOTTE, MICHIGAN 48192 • (734) 281-7100

City of Riverview now addresses. The United States asked that the Court not disturb the Consent Decree deal that was struck in 1987. The Court was in general agreement. Perhaps Riverview's particular pleadings regarding its specific bypass location 5.1 present a more compelling case than the County's generic one-year extension motion? Riverview has reviewed its briefs and is confident that it has present its best arguments therein. No need to restate, highlight and recapitulate them here.

What Riverview proposes to accomplish herein is to paint the larger picture that everyone seems to be missing. The focus seems to be exclusively on the Consent Decree and its modification or amendment, rather than the Clean Water Act and CFR's which the Consent Decree serves and must comport with.

The key section of the law is found at 40 CFR § 403.17 which defines a bypass event. "(a) Definitions. (1) Bypass means the intentional diversion of waste streams from any portion of an Industrial User's treatment facility."

What portions of the Downriver treatment and collection system are included in section 403.17's definition of "any portion" of a "treatment facility?" Is the Longsdorf bypass, location 5.1 part of "any portion" of the Industrial User's treatment facility?

The term "any portion" is broad. The term "treatment facility" is likewise broad. A narrower term –"POTW treatment *plant*" is defined at 403.3(p) "The term POTW Treatment Plant means that portion of the POTW which is designed to provide treatment (including recycling and reclamation) of municipal sewage and industrial waste.

PENTIUK, COUVREUR & KOBILJAK, P.C. • ATTORNEYS AND COUNSELLORS AT LAW • EDELSON BUILDING, SUITE 200 • 2915 BIDDLE AVENUE, WYANDOTTE, MICHIGAN 48192 • (734) 281-7100

Thus, a treatment facility must be more expansive than a treatment plant. The larger concept of a treatment facility is more akin to a Publically Owned Treatment Works (POTW) which is defined at 403.3(o). The term *Publicly Owned Treatment Works* or *POTW* means:

> a treatment works as defined by section 212 of the Act, which is owned by a State or municipality (as defined by section 502(4) of the Act). This definition includes any devices and systems used in the storage, treatment, recycling and reclamation of municipal sewage or industrial wastes of a liquid nature. *It also includes sewers, pipes and other conveyances* only if they convey waste-water to a POTW Treatment Plant. The term also means the municipality as defined in section 502(4) of the Act, which has jurisdiction over the Indirect Discharges to and the discharges from such a treatment works. (Emphasis added).

It is clear that the definition of a POTW is unambiguously broad enough to include the Longsdorf bypass location in Riverview. When Congress and the EPA *via* rulemaking, refer to a treatment facility, they had the scope of a POTW in mind, not the limited idea of a treatment plant.

Thus, when 40 CFR § 403.17 states that a bypass event can occur from "*any portion* of an Industrial User's treatment facility" it means "any portion", and "any portion" in turn includes any systems, "sewers, pipes and other conveyances."

Riverview's Longsdorf site is part of a pipe. It is part of a larger system of sewers and conveyances. It is tied to the operation of the Downriver system and part of that system. *qua* system.. Title 40 CFR § 403.17 allows it use to bypass. Title 40 CFR § 403.17 allows any portion of the system to be used. An Industrial User is not limited, however, to the 5.1 location or the other currently permitted eight bypasses for that matter.

All eight currently permitted bypasses under the Consent Decree are controlled automatically from a *single source at the treatment plant*. Riverview's bypass location would follow suit. The fact that a bypass location exists at the plant itself, *as well as remotely* from the

PENTIUK, COUVREUR & KOBILJAK, P.C. • ATTORNEYS AND COUNSELLORS AT LAW • EDELSON BUILDING, SUITE 200 • 2915 BIDDLE AVENUE, WYANDOTTE, MICHIGAN 48192 • (734) 281-7100

plant, is immaterial to the purpose of the bypass. Nor does the remote location of the bypass alter or affect central control of the bypasses from the treatment plant.

It make no difference to water quality if a bypass is opened up at the treatment plant or a little bit "up-pipe" from the plant. The bypassed water all goes into the river anyway. Bypassed water goes untreated to the river from the Plant. It goes untreated to the river from the remote bypass. And if the Plaintiffs are willing to face the truth, it will go untreated to the river after being pumped out of basements. It makes no sense to destroy private property along the way if the water ends up in the same place.

Plaintiffs response to it all is that "It just can't happen", that "The system is just too perfect", and "The Models are 100% reliable." However, this is the same system that saw thirteen-thousand basement flooding plaintiffs alleging property damages and filing claims. Their damage is real, even if they are denied a state law cause of action.

The law allows bypasses. It does not limit the user to a bypass site physically confined to the treatment plant itself. The law says bypass can occur at "any portion" of the pipe or sewer. This is the law. The consent decree says something different. But if an industrial user in association with the City of Riverview wants to avail the Downriver system of additional bypass points, the law will allow it. After the life of the Consent Decree, the law will govern.

That law provides that a bypass event may occur at the industrial users' discretion if it is "unavoidable to prevent loss of life, personal injury, or severe property damage" *i.e.*, "substantial physical damage to property . . . ."

That literal text of the law authorizes a bypass if it is "unavoidable to prevent loss of life, personal injury, or severe property damage." *Notice that bypass events are not tied to civil liability, but rather property damage.* This Court focused on civil liability under the amended

PENTIUK, COUVREUR & KOBILJAK, P.C. • ATTORNEYS AND COUNSELLORS AT LAW • EDELSON BUILDING, SUITE 200 • 2915 BIDDLE AVENUE, WYANDOTTE, MICHIGAN 48192 • (734) 281-7100

Michigan law during the August 30, 2002 hearing. But the Code of Federal regulations speaks in terms of damage. The law does not care whether liability attaches to the industrial user, *pro tanto*. The law is concerned with something other than liability. It is concerned with damage to property. This is because the goal of the Federal Water Pollution Control Act, commonly known as the Clean Water Act, 86 Stat. 816, as amended, 33 U.S.C. § 1251 et seq., is not simply to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters" § 1251(a) but also to require each State to institute comprehensive water quality standards establishing water quality goals for all intrastate waters. §§ 1311(b)(1)(C), 1313. "Such standards shall be such as to protect the public health or welfare, enhance the quality of water and serve the purposes of this chapter." 33 U.S.C. § 1313(c)(2)(A). *See also* § 1251(a)(2).

In other words, the goal of the Clean Water Act is not merely to protect the aqueous environment. It is also intended to "protect the public health or welfare." This includes protecting homes and families.

Riverview is aware that United States wants to shut down every SSO in this Country and that the City's motion threatens this goal on both a local and national scale. The EPA cannot shut down SSO's, however, if in doing so it would impair the discretion given to users to operate their POTW in a manner consistent with preventing the loss of life, personal injury, or severe property damage as per section 403.17.

In short, part and parcel of the statutory scheme to protect the public health or welfare is allowing bypass events. Said events may specifically occur at the industrial users' discretion to prevent loss of life, personal injury, or substantial physical damage to property. The bypass may occur on site or remotely as long as it is tied to the system.

PENTIUK, COUVREUR & KOBILJAK, P.C. • ATTORNEYS AND COUNSELLORS AT LAW • EDELSON BUILDING, SUITE 200 • 2915 BIDDLE AVENUE, WYANDOTTE, MICHIGAN 48192 • (734) 281-7100

For the reasons stated in its original Memorandum and the above supplemental argument, the City of Riverview hereby requests this Court allow the City of Riverview to maintain its currently approved bypass location beyond the October 1, 2002 seal date subject to centralized treatment plant oversight, and also Order that Riverview be allowed to preserve its bypass option beyond the termination of the Consent Decree as otherwise allowed by law, so that the Downriver system as a whole will be better situated to save human life, protect public health, and mitigate damage to the system through use of the bypass option during extreme wet weather.

Respectfully submitted,

PENTIUK, COUVREUR & KOBILJAK, P.C.

Randall A. Pentiuk P32556
City Attorney
Kerry L. Morgan P32645
Attorneys for Defendant Riverview
2915 Biddle Avenue
Wyandotte, Michigan 48192
(734) 281-7100
(734) 281-7102 FAX

August 30, 2002

F:\4-R-ZClients\RVWVIE\LIT\rvlitmotion4.wpd

§ 403.17 Bypass.

(a) Definitions.

(1) Bypass means the intentional diversion of waste streams from any portion of an Industrial User's treatment facility.

(2) Severe property damage means substantial physical damage to property, damage to the treatment facilities which causes them to become inoperable, or substantial and permanent loss of natural resources which can reasonably be expected to occur in the absence of a bypass. Severe property damage does not mean economic loss caused by delays in production.

(b) Bypass not violating applicable Pretreatment Standards or Requirements. An Industrial User may allow any by-pass to occur which does not cause Pretreatment Standards or Requirements to be violated, but only if it also is for essential maintenance to assure efficient operation. These bypasses are not subject to the provision of paragraphs (c) and (d) of this section.

(c) Notice.

(1) If an Industrial User knows in advance of the need for a by-pass, it shall submit prior notice to the Control Authority, if possible at least ten days before the date of the bypass.

(2) An Industrial User shall submit oral notice of an unanticipated bypass that exceeds applicable Pretreatment Standards to the Control Authority within 24 hours from the time the Industrial User becomes aware of the bypass. A written submission shall also be provided within 5 days of the time the Industrial User becomes aware of the bypass. The written submission shall contain a description of the bypass and its cause; the duration of the bypass, including exact dates and times, and, if the bypass has not been corrected, the anticipated time it is expected to continue; and steps taken or planned to reduce, eliminate, and pre-vent reoccurrence of the bypass. The Control Authority may waive the written report on a case-by-case basis if the oral report has been received within 24 hours.

(d) Prohibition of bypass.

(1) Bypass is prohibited, and the Control Authority may take enforcement action against an Industrial User for a bypass, unless; (I) Bypass was unavoidable to prevent loss of life, personal injury, or severe property damage; (ii) There were no feasible alternatives to the bypass, such as the use of auxiliary treatment facilities, retention of untreated wastes, or maintenance during normal periods of equipment downtime. This condition is not satisfied if adequate back-up equipment should have been installed in the exercise of reasonable engineering judgment to prevent a bypass which occurred during normal periods of equipment downtime or preventative maintenance; and (iii) The Industrial User submitted notices as required under paragraph (c) of this section.

(2) The Control Authority may approve an anticipated bypass, after considering its adverse effects, if the Control Authority determines that it will meet the three conditions listed in paragraph (d)(1) of this section. [53 FR 40615, Oct. 17, 1988, as amended at 58 FR 18017, Apr. 7, 1993]

PENTIUK, COUVREUR & KOBILJAK, P.C. • ATTORNEYS AND COUNSELLORS AT LAW • EDELSON BUILDING, SUITE 200 • 2915 BIDDLE AVENUE, WYANDOTTE, MICHIGAN 48192 • (734) 281-7100

**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

THE UNITED STATES OF AMERICA AND JENNIFER GRANHOLM, ATTORNEY GENERAL FOR THE STATE OF MICHIGAN, *EX REL* MICHIGAN NATURAL RESOURCES COMMISSION, AND DIRECTOR OF THE MICHIGAN DEPARTMENT OF NATURAL RESOURCES,

Plaintiffs,

v.

Case No. 87-70992
HON. JOHN FEIKENS

FILED
2002 SEP -5 A 11: 22
U.S. DIST. COURT CLERK
EAST. DIST. MICH.
DETROIT

WAYNE COUNTY, MICHIGAN; CITY OF ALLEN PARK; CITY OF BELLEVILLE; TOWNSHIP OF BROWNSTOWN; CITY OF DEARBORN HEIGHTS; CITY OF ECORSE; CITY OF LINCOLN PARK; CITY OF RIVER ROUGE; CITY OF RIVERVIEW; CITY OF ROMULUS; CITY OF SOUTHGATE; CITY OF TAYLOR; TOWNSHIP OF VAN BUREN; CITY OF WYANDOTTE; SOUTHGATE-WYANDOTTE RELIEF DRAIN DRAINAGE DISTRICT; AND ECORSE CREEK POLLUTION ABATEMENT DRAIN, NO. 1 DRAINAGE DISTRICT,

Defendants.

______________________________/

**PROOF OF SERVICE/MAILING**

STATE OF MICHIGAN )
) §
COUNTY OF WAYNE )

Linda Cronce being first duly sworn deposes and says that she is employed by **PENTIUK, COUVREUR & KOBILJAK, P.C.**, Attorney for the Defendant in this matter, and that on September 4, 2002, she caused to be placed in the United States mail an envelope, with full postage thereon affixed, containing a copy of the **Riverview's Second Supplemental Brief Regarding Bypass**; and this **Proof of Service** and address to:

All Counsel on attached Service List.

PENTIUK, COUVREUR & KOBILJAK, P.C. • ATTORNEYS AND COUNSELLORS AT LAW • EDELSON BUILDING, SUITE 200 • 2915 BIDDLE AVENUE, WYANDOTTE, MICHIGAN 48192 • (734) 281-7100

Linda Cronce
Legal Assistant

Subscribed and sworn to before me
on September 4, 2002

JILL E. LILLY, Notary Public
Wayne County, Michigan
My Commission Expires: 4/20/05

ATTACHMENT

F:\4-R-ZClients\RVWVIE\USA_WAYN\POS US v Wayne 9-4.wpd

| SERVICE LIST<br>U.S. -vs- Wayne County — Case No.: 87-70992 | |
|---|---|
| Annette Lang, Esq.<br>Environmental Enforcement Division<br>United States Department of Justice<br>P.O. Box 7611, Ben Franklin Station<br>Washington, D.C. 20044-7611<br>(202) 514-4213<br>FAX (202) 616-6584 | Kenneth D. Kruse, Esq.<br>Pagnucco, Kruse & Tamsen<br>7000 Roosevelt, Suite 100<br>Allen Park, Michigan 48101-2566<br>(313) 386-1111<br>FAX (313) 386-8088 |
| Jennifer Granholm, Attorney General<br>Attn: Pam Stevenson<br>Natural Resources Division<br>Knapps Office Center<br>300 South Washington, Suite 530<br>Lansing, Michigan 48913<br>(517) 373-1110<br>FAX (517) 373-3042<br>miag@ag.state.mi.us | Susan Perdomoi<br>Office of Regional Counsel<br>Region V<br>Environmental Protection Agency<br>77 West Jackson Blvd.<br>Chicago, IL 60604 |
| L. Michael Wicks<br>Attn: Peter Caplan<br>Assistant U.S. Attorney<br>211 West Fort Street, #2300<br>Detroit, Michigan 48226-3211<br>(313) 226-9760<br>FAX (313) 226-3800 | Edward Zelenak, Esq.<br>2933 Fort Street<br>Lincoln Park, Michigan 48192<br>(313) 386-6400<br>FAX (313) 386-7778 |
| Thomas K. DiPietro<br>DiPietro & Day, P.C.<br>557 Main Street<br>Belleville, Michigan 49811<br>(734) 697-3800<br>FAX (734) 697-3802 | William Look<br>Look, Kalmbach & Look<br>2241 Oak Street<br>Wyandotte, Michigan 48192-5317<br>(734) 285-6500<br>FAX (734) 285-4160 |
| Stephen J. Hitchcock, Esq.<br>Cox, Hodgmen & Giamarco, P.C.<br>201 West Big Beaver<br>5th Floor<br>Troy, Michigan 48084-4160<br>(248) 528-2200<br>FAX (248) 528-2773 | Ms. Beth S. Gotthelf<br>Seyburn, Kahn, Ginn, Bess, Deitch & Serlin,PC<br>2000 Town Center #1500<br>Southfield, Michigan 48075-1195<br>(248) 353-7620<br>FAX (248) 353-3727 |

| | |
|---|---|
| Dr. Jonathan W. Bulkley<br>1915 Scottwood<br>Ann Arbor, Michigan 48104 | Mary Rose MacMillian, Esq.<br>Wayne County<br>Department of Environment<br>415 Clifford, 5th Floor<br>Detroit, Michigan 48226<br>(313) 224-6678<br>FAX (313) 237-1183 |
| William J. DeBiasi, Esq.<br>DeBiasi & Associates, P.C.<br>24825 Eureka Road<br>Taylor, Michigan 48180-5159<br>(734) 946-7430<br>FAX (734) 946-4710 | Kurt L. Heise<br>Administrative Assistant to the Mayor<br>City of Dearborn Heights<br>6045 Fenton<br>Dearborn Heights, Michigan 48127<br>(313) 277-7413<br>FAX (313) 274-8865 |
| Randall A. Pentiuk, Esq.<br>Pentiuk, Couvreur & Kobiljak, P.C.<br>Suite 230, Superior Place<br>20300 Superior Street<br>Taylor, Michigan 48180-6303<br>(734) 374-8930<br>FAX (734) 374-8930 | David A. Bower, Esq.<br>10454 West Jefferson<br>River Rouge, Michigan 48218-1334<br>(313) 842-1292<br>FAX (734) 842-5290 |
| Victor T. Mitea, Esq.<br>Horizon Building<br>20600 Eureka Road, Suite 717<br>Taylor, Michigan 48180<br>(734) 284-7550<br>FAX (734) 282-9505 | Patrick B. McCauley, Esq.<br>Sommers, Schwartz, Silver & Schwartz, P.C.<br>2000 Town Center, Suite 900<br>Southfield, Michigan 48075-1100<br>(248) 355-0300<br>FAX (248) 746-4001 |
| John E. McSorley, Esq.<br>Garan, Lucow & Miller, P.C.<br>1000 Woodbridge Street<br>Detroit, Michigan 48207-3192<br>(313) 446-5511<br>FAX (313) 259-0450 | Janet Callahan Barnes<br>Secrest, Wardle, Lynch, Hampton,<br>Truex and Morley, P.C.<br>30903 Northwestern Highway<br>P.O. Box 3040<br>Farmington Hills, Michigan 48333-3040<br>(248) 851-9500<br>FAX (248) 851-2158 |
| Edward D. Plato<br>Secrest, Wardle, Lynch, Hampton,<br>Truex and Morley, P.C.<br>30903 Northwestern Highway<br>P.O. Box 3040<br>Farmington Hills, Michigan 48333-3040<br>(248) 851-9500<br>FAX (248) 851-2158 | Honorable Christine Todd-Whitman,<br>Administrator<br>Environmental Protection Agency<br>Headquarters<br>Ariel Rios Building<br>1200 Pennslyvania Ave. N.W. / 1101A<br>Washington, D.C. 20460<br>Tel: 202-260-2090<br>Fax 202-501-1450 |

F:\4-R-Z\Clients\RVWVIB\USA_WAYN\SERVICE.LST.wpd