UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RACHAEL LESSARD, et al

          Plaintiffs,

v.

CITY OF ALLEN PARK, et al

          Defendants,

v.

WAYNE COUNTY, et al.

          Third-Party Defendants.

_____/

*87·70992* (handwritten)

U.S.D.C. No. ~~00-74306~~
Hon. John Feikens

MACUGA & LIDDLE, P.C.
PETER W. MACUGA, II (P 28114)
Liaison Counsel for Plaintiffs
975 E. Jefferson Avenue
Detroit, MI 48207

BODMAN, LONGLEY & DAHLING, LLP
R. CRAIG HUPP (P 36254)
Liaison Counsel for Defendant Wayne County
100 Renaissance Center, 34th Floor
Detroit, MI 48243
(313) 259-7777

SECREST, WARDLE, LYNCH,
HAMPTON, TRUEX AND MORLEY
EDWARD D. PLATO (P 29141)
JANET CALLAHAN BARNES (P 29887)
Liaison Counsel for Defendant Municipalities
30903 Northwestern Highway
Farmington Hills, MI 48333-3040
(248) 851-9500

_____/

**DEFENDANT MUNICIPALITIES' RESPONSE TO
PLAINTIFFS' MEMORANDUM OF LAW REGARDING COURT'S JULY 15, 2002,
MEMORANDUM AND CONCURRENCE AND SUPPLEMENTAL BRIEF
IN SUPPORT OF WAYNE COUNTY'S MOTIONS FOR SUMMARY JUDGMENT
REGARDING TRESPASS NUISANCE, GOVERNMENTAL IMMUNITY AND
TAKINGS CLAIMS**

FILED 2002 OCT 24 P 3:19 U.S. DIST. COURT CLERK EAST. DIST. MICH. DETROIT

**STATEMENT OF ISSUES:**

I.     Is there a trespass-nuisance exception to governmental immunity applicable to these cases under M.C.L. 691.1407(1)?

II.    Is the Michigan Supreme Court's decision in *Pohutski* applicable to these cases pursuant to federal law?

      A.    Did the Michigan Supreme Court's *Pohutski* opinion answer the question that this Court certified to the Michigan Supreme Court?

      B.    Whether the Michigan Supreme Court's ruling regarding prospective application of *Pohutski* has its genesis in and is founded upon federal law?

      C.    Is this Court empowered to apply M.C.L. 691.1407(1) in this case as correctly interpreted by the Michigan Supreme Court in *Pohutski* because to do otherwise conflicts with due process and the federal retroactivity doctrine as expressed in *Harper v Virginia Dep't of Taxation?*

III.   Is there municipal liability for an "unconstitutional taking" under the Michigan Constitution for basement flooding?

IV.    Can there be any liability imposed on the unnamed "John Doe" defendants, as individual government employees, based upon the gross negligence exception to governmental immunity under M.C.L. 691.1407(2)?

i

## CONTROLLING AUTHORITIES:

Ashley v Port Huron,
35 Mich 296 (1877)

Baird v United States
5 CL CT, 324, 329 (1984)

Buckeye Union Fire Ins Co v Michigan,
383 Mich 630; 178 NW2d 476 (1970)

Columbia Basin Orchard v United States
132 CT CL 445, 450 (1955)

Defnet v Detroit,
327 Mich 254; 41 NW2d 539 (1948)

Ferris v Bd of Ed,
122 Mich 315; 81 NW2 98 (1899)

Hadfield v Oakland County Drain Comm'r,
430 Mich 139; 422 NW2d 205 (1988)

Harper v. Dep't of Taxation,
509 U.S. 86 (1993).

Herald Co v Bay City,
463 Mich 111; 614 NW2d 873 (2000)

Herro v Chippewa Co Road Comm'rs,
368 Mich 263; 118 NW2d 271 (1962)

Holmberg v Armbrecht,
327 U.S. 392 (1946).

In the Matter of Acquisition of Land-Virginia Park,
121 Mich App 153; 328 NW2d 602 (1982)

Internat'l Union v. Hoosier Cardinal Corp,
383 U.S. 696 (1966).

Jones v Powell,
462 Mich 329; 612 NW2d 423 (2000)

Loretto v Teleprompter Manhattan CATV Corp
458 US 419 (1982)

SECREST, WARDLE, LYNCH, HAMPTON, TRUEX AND MORLEY

Moviecolor Limited v Eastman Kodak Co,
288 F.2d 80, 83 (2nd Cir. 1961).

National By-Prods, Inc v United States
186 CT CL 546, 577 (1969)

Pearsall v Bd of Supervisors of Eaton County,
74 Mich 558 (1889)

Peterman v DNR,
446 Mich 177; 545 NW2d 657 (1994)

Peters v Dept' of Corrections,
215 Mich App 485; 546 NW2d 668 (1996)

Pohutski v City of Allen Park and Jones v. City of Farmington Hills,
465 Mich. 675; 641 N.W.2d 219 (2002).

Robinson v City of Detroit,
462 Mich 439; 613 NW2d 307 (2000)

Sanguinetti v US
264 US 146 (1924)

Seaman v City of Marshall,
116 Mich 327; 74 NW 484 (1898)

Teegarden v United States
42 F CL, 252 (1998)

Thun v U.S.
41 F CL 49 (1998)

Trout Unlimited, Muskegon-White River Chapter v City of White Cloud
209 Mich App 452; 532 NW2d 192 (1995)

## STATUTES

MCL 691.1407; MSA 3.996(107)

MCL 691.1407(1); MSA 3.996(107)(1)

MCL 691.1407(2); MSA 3.996(107)(2)

SECREST, WARDLE, LYNCH, HAMPTON, TRUEX AND MORLEY

## I.    STATEMENT OF FACTS

The Plaintiffs have filed these proposed class action and subrogation cases against Wayne County and numerous downriver communities (the Defendants) alleging that they  were all residents of the Defendant municipalities and County whose basements flooded on or about September 11, 2000, as a result of the Defendants' alleged improper constructing, maintaining, controlling, operating, designing and engineering the Downriver Sewer System.  The Plaintiffs allege various theories of liability including trespass, nuisance, trespass/nuisance, negligence and/or gross negligence and an unconstitutional taking of Plaintiffs' property under the Michigan Constitution.

The Defendant municipalities and Wayne County in these basement flooding cases are also Defendants in United States of America, et al v Wayne County, et al, Civil Action No. 87-70992, hereinafter referred to as the "Downriver Sewer Case".  The Downriver Sewer Case was brought against the numerous municipalities, Wayne County and two drainage districts, for the purpose of enforcing the Clean Water Act, 33 USC § 1251 et seq., the Natural Resources and Environmental Protection Act, MCL 324.3101 et seq., and the terms and conditions of the National Pollutant Discharge Elimination System, Permit No. MI0021156.

The Defendant municipalities and Wayne County are subject to the Consent Decrees, the 1994 Final Judgment and the Final Order entered in the Downriver Sewer Case by the Honorable John Feikens in that federal litigation.  As a result of those Consent Decrees, Judgments and Orders, the Defendant municipalities have been ordered to undertake and finance a variety of projects and construction to bring the sewer and drainage systems into compliance with the Clean Water Act, 33 USC § 1311 et seq.  As part of the Downriver Wastewater Control Project, the Defendant municipalities and Wayne County have completed over 200 million dollars in

local sanitary sewer improvements, including the construction of relief sewers and retention basins to alleviate basement flooding in areas where it has occurred.

As a result of this Court's long supervision of the proceedings in the Downriver Sewer Case, a comprehensive plan was developed in compliance with the federal Clean Water Act and the conditions of the National Pollutant Discharge Elimination System Permit.  That plan was thereafter incorporated into a Consent Decree as issued by the Honorable John Feikens, District Court Judge, on February 15, 1994.  That Consent Decree, provides in part, at § XXIII, that:

> "The court shall retain jurisdiction for the purpose of ruling on any motion by any party to enforce the terms and conditions of this Decree."

The 1994 Final Judgment entered in the Downriver Sewer Case states at § 21 that the U.S. District Court, Eastern District of Michigan, Southern Division, retained jurisdiction:

> "With respect to any matter which may arise which may involve the interpretation of the terms of this 1994 Financing Plan and Final Judgment or affect the rights of any party arising out of this 1994 Financing Plan Judgment and Final Judgment."

The Final Order of May 12, 1994 in the Downriver Sewer Case, provided that the District Court would, "enjoin the parties and their citizens from instituting, appearing in or carrying on any litigation or any administrative proceeding in any court, tribunal, or administrative agency which would have the effect of preventing or delaying compliance with the 1994 Financing Plan and Final Judgment."

The Plaintiffs in the basement flooding cases allege that, during the extremely heavy rain storm on September 11, 2000, the sewer lines backed up and flooded their residences as a result of Wayne County's and/or the downriver municipalities' ownership, control and/or operation of the sewer system serving their residences.  As a result, the Plaintiffs seek millions of dollars in

2

monetary damages from the municipalities and Wayne County as well as injunctive relief to alter or modify the operation of the sewer system.

The relief requested in Plaintiffs' Complaint directly conflicts with the provisions of the U.S. District Court's Consent Decree, its 1994 Final Judgment and its Final Order as entered in the Downriver Sewer Case. If any of the allegations in Plaintiffs' Complaint are proved, they raise the issue of whether the basement flooding arose out of sewer system capacity and operating practices which are governed by the Consent Decrees and the Orders entered by the District Court for the purpose of complying with the Clean Water Act. Furthermore, any liability that would be imposed against the Defendant municipalities and County, would expose these Defendants to inconsistent obligations and liabilities arising under federal environmental law and under Michigan's state tort law.

## II.   THERE IS NO TRESPASS-NUISANCE EXCEPTION TO GOVERNMENTAL IMMUNITY APPLICABLE TO THESE CASES UNDER M.C.L. 691.1407(1).

On April 2, 2002, the Michigan Supreme Court released its Opinion in *Pohutski v. City of Allen Park* and *Jones v. City of Farmington Hills*, 465 Mich 675 (2002). The Supreme Court in *Pohutski* specifically held:

> "That the plain language of the governmental tort liability act does not contain a trespass-nuisance exception to governmental immunity. Trespass-nuisance simply is not one of the five exceptions to immunity set forth in the governmental tort liability act. . . . although governmental agencies have many duties regarding the services they provide to the public, a breach of those duties is compensible under the statute only if it falls within one of the statutorily created exceptions." *Pohutski, at 689.*

M.C.L. 691.1407(1), enacted on July 1, 1965, was given immediate effect. Under the clear terms of the statute, as properly determined by the *Pohutski* Supreme Court, municipal corporations are immune from tort liability for any common law claims of trespass-nuisance. Accordingly, if *Pohutski v. City of Allen Park* is applicable to the present flooding lawsuits, the Defendant municipalities and Wayne County are entitled to

3

governmental immunity under M.C.L. 691.1407(1).

As set forth below, this Court is empowered to apply M.C.L. 691.1407(1), as interpreted in *Pohutski*, to these cases because, to do otherwise, conflicts with the due process and the federal retroactivity doctrine.

## III. THE MICHIGAN SUPREME COURT'S DECISION IN *POHUTSKI* IS APPLICABLE TO THESE CASES PURSUANT TO FEDERAL LAW AND MUST BE APPLIED.

### A. The Michigan Supreme Court did not resolve the issue of whether its ruling in *Pohutski* and *Jones* applies retroactively in these federal cases.

Before the Michigan's Supreme Court's issued its decisions in *Pohutski v. City of Allen Park and Jones v. City of Farmington Hills*, 465 Mich. 675; 641 N.W.2d 219 (2002) ("*Pohutski*"), this Court certified the following question to that Court:

> Whether political subdivisions as defined under the governmental tort liability immunity act, M.C.L.A. §§ 691.1401 et seq., . . . are absolutely immune under the act from tort liability when engaged in the exercise or discharge of a governmental function, except as provided in the five . . . statutory exceptions . . . Certification of Question to the Michigan Supreme Court, United States v Wayne County, Case No. 87-70992 (E.D. Mich. 1/9/01). (Plaintiff's Appendix Exhibit E.)

By order dated May 15, 2001, the Michigan Supreme Court held the certified question in abeyance pending that Court's decision in *Pohutski* because "the decision in those cases <u>may resolve</u> the [certified question.]" (Emphasis added.) (Plaintiff's Appendix Exhibit 7.)

On May 21, 2002, the Michigan Supreme Court issued the following order regarding the certified question:

> By order dated May 15, 2001, the question certified by the United States District Court for the Eastern District of Michigan was held in abeyance pending the decision in *Pohutski v City of Allen Park* (Docket No. 116949) and *Jones v City of Farmington Hills* (Docket No. 117935). On order of the Court, the decision having been issued on April 2, 2002, 465 Mich 675 (2002), **the certified question is again considered and, the subject of the such certified question having been addressed in such decision, the Court respectfully declines the request to answer it.** (Emphasis added.) (Plaintiff's Appendix Exhibit 13.)

Thus, while the Michigan Supreme Court found that "the subject of the certified question" was "addressed" in its *Pohutski* decision, that Court expressly declined to answer the certified question. Therefore, the Michigan Court did not determine that its *Pohutski* decision answered the certified question. If the Michigan Court had determined that it did, instead of stating that the subject of the question "was addressed" in *Pohutski*, that Court would have stated the certified question "was answered" by *Pohutski*. In addition, this Court's certified question did not ask the Michigan Court to determine whether its answer to it should be applied retroactively in the cases before this federal court.

Therefore, while the Michigan Supreme Court's *Pohutski* decision provides guidance to this Court in interpreting M.C.L. 691.1407(1) to determine if there is a trespass-nuisance exception to Michigan's governmental immunity act, *Pohutski* does not resolve the issue of whether the Michigan Court's correction of its prior erroneous construction of M.C.L. 691.1407(1) should apply in these federal cases.

**B.    The Michigan Supreme Court's ruling regarding prospective application of *Pohutski* has its genesis in and is founded upon federal law.**

As the Michigan Supreme Court recognized in *Pohutski, supra* at 696, the general rule is that judicial decisions are given full retroactive effect. However, the Michigan Court, citing *Lindsey v. Harper Hospital*, 455 Mich. 56, 68; 564 NW2d 861 (1997), stated that "a more flexible approach is warranted where injustice might result from full retroactivity."[1] 465 Mich. at 696.

*Pohutski* cited *Lindsey* for the proposition that "[p]rospective application of a holding is appropriate when the holding overrules settled precedent or decides an 'issue of first impression

whose resolution was not clearly foreshadowed.'" *Lindsey* cited *People v. Phillips*, 416 Mich. 63, 68; 330 N.W.2d 366 (1982), which, in turn, cited the U.S. Supreme Court's opinion in *Chevron Oil Co v. Huson,* 404 U.S. 97, 106; (1971), for that proposition. *Lindsey* also cited *Tebo v. Havlik*, 418 Mich. 350, 360; 343 N.W.2d 181 (1984), which, in turn, cited *Williams v. Detroit*, 364 Mich. 231, 265-266; 111 NW2d 1 (1961). The opinion in *Williams* regarding prospective application of the court's judicial decision relied primarily on the U.S. Supreme Court's opinion in *Great Northern R. Co. v. Sunburst Oil & Refining Co*, 287 U.S. 358, 364-366. (1932).

The Michigan Supreme Court concluded in *Pohutski* that the issue of whether a judicial decision is to be given full retroactive effect presents an equitable question. That Court weighed three factors that it had previously adopted in *People v. Hampton*, 384 Mich. 669, 674; 187 N.W.2d 404 (1971), but which were derived from the U.S. Supreme Court's opinion in *Linkletter v. Walker*, 381 U.S. 618 (1965). 465 Mich. at 696. Those factors are:  (1) the purpose to be served by the new rule; (2) the extent of reliance on the old rule; and (3) the effect of retroactivity on the administration of justice. The *Pohutski* Court held that, "[a]pplication of the three-part [*Linkletter*] test leads to the conclusion that prospective application is appropriate here."

The *Pohutski* Court also explained that a plurality of the Michigan Supreme Court, in *Riley v. Northland Geriatric Center (After Remand)*, 431 Mich. 632, 645-646; 433 N.W.2d 787 (1988) (Griffin, J.), had noted that, "[i]n the civil context, a plurality of this Court noted that *Chevron Oil v. Huson*, 404 U.S. 97, 106-107 . . . (1971), recognized an additional threshold question whether the decision clearly established a new principle of law." 465 Mich. at 696.

---

[1] The Michigan Court did not apply its decision in *Lindsey* prospectively.  455 Mich. at 69.

6

Thus, while the *Pohutski* Court cited to prior Michigan Supreme Court opinions that would appear to allow that Court to apply its judicial decisions prospectively based upon equitable considerations, those opinions have their genesis in, and are founded upon, *federal law* and not upon an independent state basis.

C.   **This Court is empowered to apply M.C.L. 691.1407(1) in this case as correctly interpreted by the Michigan Supreme Court in *Pohutski* because to do otherwise violates due process and conflicts with the federal retroactivity doctrine as expressed in *Harper v Virginia Dep't of Taxation***

In *Pohutski*, the Michigan Supreme Court held that prior decisions of that Court erroneously concluded that there was a trespass-nuisance exception to the governmental immunity afforded governmental agencies in M.C.L. 691.1407(1).   465 Mich. at 690.   In reaching this conclusion, that Court recognized that, "we are bound by the clear and unambiguous statutory text; we lack constitutional authority to impose on the people of this state our individual policy preferences regarding the availability of lawsuits arising from the operation of a sewage system." *Id.* The Michigan Court also stated that the lack of constitutional authority precluded it from continuing to apply its prior erroneous interpretation of M.C.L. 691.1407(1) under the doctrine of stare decisis, explaining as follows:

> [I]t is well to recall in discussing reliance, when dealing with an area of the law that is statutory, . . . that it is the words of the statute itself that a citizen first looks for guidance in directing his actions.  This is the essence of the rule of law:  to know in advance what the rules of society are.  Thus, if the words of the statute are clear, the actor should be able to expect, that is, rely, that they will be carried out by all in society, including the courts.  In fact, should a court confound those legitimate citizen expectations by misreading or misconstruing a statute, it is that court itself that has disrupted the reliance interest.  **When that happens, a subsequent court, rather than holding to the distorted reading because of the doctrine of stare decisis, should overrule the earlier court's misconstruction. The reason for this is that the court in distorting the statute was engaged in a form of judicial usurpation that runs counter to the bedrock principle of American constitutionalism, i.e. that the lawmaking power is reposed in the**

SECREST, WARDLE, LYNCH, HAMPTON, TRUEX AND MORLEY

7

**people as reflected in the work of the Legislature, and, absent a constitutional violation, the courts have no legitimacy in overruling or nullifying the people's representatives. Moreover, not only does such a compromising by a court of the citizen's ability to rely on a statute have no constitutional warrant, it can gain no higher pedigree as later courts repeat the error.** (Emphasis added.)  465 Mich. at 695, citing *Robinson v. Detroit*, 462 Mich. 439, 467-468; 613 N.W.2d 307 (2000).

Thus, the Michigan Supreme Court initially concluded that it had no constitutional authority to misread or misconstrue M.C.L. 691.1407(1) or to repeat that error.  But then the Michigan Court allowed its error to continue when it applied its *Pohutski* decision prospectively, which allows the Court's previous erroneous interpretation of M.C.L. 691.1407(1) to be repeated in state cases brought before April 2, 2002, the date of the *Pohutski* decision.

Ignoring its previous statements regarding its lack of constitutional authority to continue to misapply a state statute, the Michigan Court concluded that the U.S. Supreme Court's decision in *Great Northern R. Co v. Sunburst Oil & Refining Co.,* 287 U.S. 358 (1932) gave it authority to do so temporarily.   The Michigan Court cited *Great Northern*, a 1932 opinion, for the proposition that "the federal constitution does not preclude state courts from determining whether their own law-changing decisions are applied prospectively."  The Michigan Court did not cite any independent Michigan authority for that proposition.

The Michigan Supreme Court's decision that it had federal constitutional authority to apply its now-correct interpretation of M.C.L. 691.1407 prospectively conflicts with the current federal constitutional law and policy expressed by the U.S. Supreme Court in *Harper v. Virginia Dept. of Taxation*, 509 U.S. 86 (1993.)

The U.S. Supreme Court, which, as indicated by its decision in *Linkletter, supra,* previously adhered to the view that equitable considerations allowed federal judicial decisions to

8

be applied prospectively in light of equitable considerations, but the U.S. Supreme Court has

now rejected that view. In *Harper*, 509 U.S. at 97, the U.S. Supreme Court held:

> When this Court applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate our announcement of the rule. This rule extends *Griffith's* ban against 'selective application of new rules.' 479 U.S. at 323 . . . Mindful of the 'basic norms of constitutional adjudication' that animated our view of retroactivity in the criminal context, *id*., at 322, . . . **we now prohibit the erection of selective temporal barriers to the application of federal law in noncriminal cases In both civil and criminal cases, we can scarcely permit 'the substantive law [to] shift and spring' according to 'the particular equities of [individual parties'] claims of actual reliance on an old rule and of harm from a retroactive application of the new rule.** *Beam, supra*, 501 U.S. at 543 . . . (opinion of Souter, J.) **Our approach to retroactivity heeds the admonition that '[t]he Court has no more constitutional authority in civil cases than in criminal cases to disregard current law or to treat similarly situated litigants differently.'** *American Trucking, supra*, 496 U.S. at 214 . . . (Stevens, J, dissenting). (Emphasis added.)

In *Harper*, the Virginia Supreme Court concluded that a decision of the U.S. Supreme

Court, *Davis v. Michigan Dept. of Treasury*, 489 U.S. 803 (1989), should be applied

prospectively. The U.S. Supreme Court held that this was error and that its application of a rule

of federal law to the parties before the Court requires every court to give retroactive effect to that

decision. 509 U.S. at 89. As noted in the language quoted above, the rationale for the *Harper*

Court's decision is that courts are without constitutional authority to disregard current law, to

allow substantive law to shift and spring according the particular equities of individual parties, or

to treat similarly situated litigants differently. 509 U.S. at 97. The *Harper* Court also noted that:

> The Supremacy Clause, U.S. Const., Art. VI, cl. 2, does not allow federal retroactivity doctrine to be supplanted by the invocation of a contrary approach to retroactivity under state law. Whatever freedom state courts may enjoy to limit retroactive operation of their own interpretations of state law, see *Great Northern R. Co. v. Sunburst Oil & Refining Co*, 287 U.S. 358, 364-366 . . . (1932), cannot extend to their interpretations of federal law. 509 U.S. at 100.

SECREST, WARDLE, LYNCH, HAMPTON, TRUEX AND MORLEY

Thus, the Supremacy Clause, U.S. Const., Art. VI, cl. 2, does not allow a Michigan Court to supplant the federal retroactivity doctrine, which precluded prospective application of judicial decisions, in cases that involve federal questions.

The flooding cases before the Court present a federal question. In 1987, the United States Environmental Protection Agency (EPA) and the State of Michigan brought suit against Wayne County and the downriver communities who are part of the Downriver Sewer System for alleged violations of federal and state water quality laws. *United States of America, et al v. Wayne County, et al, Case No. 87-70992.* Specifically, the Complaint alleged violations of and sought compliance with the federal Clean Water Act (the Federal Water Pollution Control Act, 33 USC Section 1251 et seq); the terms of the National Pollution Discharge Elimination system Permit; the Michigan Environmental Protection System Act and the Michigan Water Resources Commission Act. As a result of that federal lawsuit, a Consent Judgment was entered by this Court in May of 1994. That Consent Judgment mandated the Defendants in this action, Wayne County and the downriver communities, to develop and implement a plan to bring the Downriver Sewer System into compliance with both federal and state law.

As this Court recognized in its July 15, 2002 Memorandum, the 1987 EPA case against Wayne County and the downriver communities and resulting 1994 Consent Judgment are based on federal statutes such as the Clean Water Act. As this Court further explained:

> Wayne County and the downriver communities are bound by the 1994 Consent Judgment, which requires them to work together to execute a careful balancing of the flow of sewage that goes into the system and to the Wyandotte Waste Water Treatment Plant. The consent judgment recognizes that wet weather events may create an imbalance in the system and cause sewage flow to exceed the capacity of the sewer system. To address this problem, the Consent Judgment allows Wayne County and the downriver communities to 'bypass' the system and open gates to release excess flows into the Detroit and Rouge Rivers from the system during 'emergency wet weather events' until autumn 2002. In accordance with the consent decree, the defendants have agreed in documents to guidelines and an

overall plan as to how the necessary balancing should be achieved. . . .

The defendant communities face extraordinary costs should they be found liable to the plaintiffs. The number of cases before me arising out of the September 10-12, 2000, rainstorm numbers thirty-four. At the time that I certified the question, plaintiff's lawyers advised me that these cases would in fact be class actions. Although I have not yet certified a class, almost all of the cases before me are pleaded as class actions and involve over 10,000 individual homeowners. Any money damage awards distributed to the plaintiffs will deplete the funds available to the defendants for improvements in the sewer system and may impair compliance with the consent decree and the federal statutes such as the Clean Water Act. (Court's July 15, 2002 Memorandum, pp 2-3.)

Applying the Michigan Supreme Court's conclusion in *Pohutski* (that there is no trespass-nuisance exception under of M.C.L. 691.1407), prospectively, would certainly interfere with this Court's ability to enforce the *federal* rights and equities at issue in these cases. As this Court concluded in its July 15, 2002 memorandum, "any money damage awards distributed to the plaintiffs will deplete the funds available for improvements in the sewer system [which will benefit all of the citizens in Wayne County and the surrounding communities] and may impair compliance with the consent decree and the federal statutes such as the Clean Water Act." It would also require this Court to prospectively apply a judicial decision, which, according to the U.S. Supreme Court's opinion in *Harper*, this Court lacks constitutional authority to do. See, *Harper*, 509 U.S. at 97. It would also require this Court to ignore the plain and unambiguous language of M.C.L. 691.1407(1), which precludes any exceptions to a governmental agencies' immunity from tort liability, which are not expressed in the five statutory exceptions to such immunity.

As noted, the Michigan Supreme Court relied upon the U.S. Supreme Court's opinion in *Great Northern R. Co., supra*, as its basis for concluding that it had constitutional authority to apply it current interpretation of M.C.L. 691.1407 prospectively. However, the U.S. Supreme

11

Court's rationale and decision in *Great Northern* cannot be reconciled with the rationale in that Court's more recent decision in *Harper*.

In *Great Northern*, the Montana statute at issue empowered the Board of Railroad Commr's to fix rates of carriage for intrastate shipments. 287 U.S. at 349. The board could change the rates if either a shipper or carrier filed a complaint and the board found that they are unreasonable. *Id.* A court could also change the rates or set them aside in an action against the board if the court found them to be unreasonable. *Id.*

In 1921, the Montana Supreme Court issued an opinion, which held that a shipper could not bring suit against a carrier to recover alleged unreasonable charges, without first making application to the board to modify the charges. *Id.* Subsequently, the Montana Supreme Court held that its previous decision was erroneous and would not be followed in the future. *Id.* at 360. The Montana Court also held that its prior decision "was the law until reversed and would constitute the governing law for shippers and carriers, who during the period of its reign, had acted on faith on it." *Id.* at 361.

The U.S. Supreme Court was then asked to determine if the Montana Court's prospective application of its disavowment of its prior opinion impaired a federal right. *Id.* The U.S. Supreme Court held that it did not, stating:

> We think the Federal Constitution has no voice upon the subject. A state in defining the limits of adherence to precedent may make a choice for itself between the principle of forward operation and that of relation backward. It may say that decisions of its highest court, though later overruled, are law none the less for intermediate transactions. *Id.* at 364.

The U.S. Supreme Court's reasoning in *Great Northern* is contrary to its reasoning approximately 61 years later in *Harper*, *supra* at 97, where, as noted, that Court held that "courts are without constitutional authority to disregard current law or to treat similarly situated litigants

differently." This is true whether state law or federal law is at issue. Therefore, this Court should conclude that, if the issue in *Great Northern* were presented to the U.S. Supreme Court today, the Court would reach a contrary result based upon its rationale in *Harper*.

Plaintiffs may claim that *Harper* acknowledged the existence of *Great Northern*; and, thus, implicitly approved of it. This Court should reject that argument because the *Harper* Court began its reference to *Great Northern* by stating, "[w]hatever freedom state courts may enjoy to limit the retroactive operation of their own interpretations of state law, . . . cannot extend to their interpretations of federal law." (Emphasis added.) 509 U.S. at 100. Thus, instead of concluding or reaffirming that state courts have freedom to limit retroactive operation of their interpretations of state law, *Harper* merely stated that if state courts have such freedom, it cannot extend to their interpretations of federal law. Harper did not say that, "state courts have the freedom to limit the retroactive operation of their own interpretations of state law." *Harper* did not review the issue of whether a state court has constitutional authority to make its decisions prospective. Instead, *Harper* appears to question that authority, but left it open because that issue was not before the Court.

*Great Northern* cannot be reconciled with *Harper*. this Court should apply the U.S. Supreme Court's rationale from *Harper*, 509 U.S. at 97, 100, and conclude that it is not required to apply the Michigan Supreme Court's prospective application of its now-correct interpretation of M.C.L. 691.1407. To do so would violate *Harper* and the federal due process concerns that led the U.S. Supreme Court to hold that courts have no constitutional authority in civil cases to disregard current law or to treat similarly situated litigants differently. To do so would also violate the express language of M.C.L. 691.1407(1).

Moreover, *Great Northern* did not present the same situation that is at issue in this case. As explained, in *Great Northern*, the U.S. Supreme Court reviewed the Montana Supreme Court's decision to apply its interpretation of a state statute <u>in state actions</u> prospectively. The question here is whether a federal court, must apply a state court's decision to apply its interpretation of a state statute prospectively in state cases, in a federal case that presents a federal question where to do so would violate federal constitutional protections and federal rules regarding retroactivity. This Court should answer that question in the negative, because, as explained, to apply the Michigan Supreme Court's *Pohutski* decision prospectively in these cases would violate the due process and the federal retroactivity doctrine as espoused in *Harper*.

In addition, there is authority for the proposition that a federal court is not required to apply state law if it would be contrary to federal policy or federal equitable or legal rights. This rule has been generally applied to determine if a state statute of limitation should apply in a federal action that does not have federally prescribed statute of limitation.

The general rule is that when Congress created a federal right but did not prescribe a period of enforcement, federal courts borrow the period of limitations prescribed by the state where the court sits. *Moviecolor Limited v. Eastman Kodak Co*, 288 F.2d 80, 83 (2nd Cir. 1961). However, in *Holmberg v. Armbrecht*, 327 U.S. 392, 393 (1946), the U.S. Supreme Court refused to apply New York statute of limitations, because it conflicted with federally-created equitable rights. 288 F.2d at 84.

*Holmberg* arose out of a federal suit by the petitioners on behalf of themselves and all other creditors of the Southern Minnesota Joint Stock Land Bank to enforce liability imposed upon shareholders of the Bank by the Federal Farm Loan Act. The Bank closed its doors in May 1932. *Id*. A prior suit was dismissed on procedural grounds. *Id*. In 1942, the petitioners alleged

14

that they learned that Bache had concealed his ownership of 100 shares of the Bank stock under the name of Armbrecht. In 1943, the petitioners commenced the suit at issue. *Id.* The respondents argued that the action was barred by the New York statute of limitations, which did not include a discovery rule. *Id.*

Under federal law, but not New York law, where fraud injures a plaintiff and he remains in ignorance without fault or want of diligence or care on his part, the statutory bar does not begin to until the fraud is discovered. *Id.* at 397, citing *Bailey v. Glover*, 21 Wall. 342; 22 L.E. 636. 327 U.S. at 397. Because the action at issue in *Holmberg* case involved a federally-created right with a federal equitable remedy, the U.S. Supreme Court held that it was not bound to apply the state statute of limitations; and, instead, applied the federal discovery rule set forth in *Bailey*. The Court reasoned as follows:

> we have the duty of federal courts, sitting as national courts throughout the country, to apply their own principles in enforcing an equitable right created by Congress. When Congress leaves to the federal courts the formulation of remedial details, it can hardly expect them to break with historic principles of equity in the enforcement of federally-created equitable rights. *Id.* at 395.

In *Moviecolor Limited v. Eastman Kodak Co*, *supra* at 85, the Second Circuit interpreted *Holmberg* as applying in a federal action at law as well as in equity. See also, *Internat'l Union v. Hoosier Cardinal Corp*, 383 U.S. 696, 701, 706 (1966).

Thus, where a federal court is called on to determine a federal law or equitable issue, a federal court can refuse to apply a state statute of limitation on the ground that to do so would interfere with the federal's ability to enforce the federal rights. Similarly, as here, where a federal court is called on to determine *federal* rights and equities concerning the litigants in cases that present a *federal* question under *federal* statutes such the Clean Water Act, the federal court

SECREST, WARDLE, LYNCH, HAMPTON, TRUEX AND MORLEY

15

has authority to refuse to apply a state court's equitable ruling that a state statute should be applied prospectively only.

Applying the Michigan Supreme Court's conclusion (there is no trespass-nuisance exception under of M.C.L. 691.1407) prospectively only would interfere with this Court's ability to enforce the federal rights and equities at issue in these cases because, as this Court concluded in its July 15, 2002, memorandum, "any money damage awards distributed to the plaintiffs will deplete the funds available for improvements in the sewer system [which will benefit all of the citizens in Wayne County and the surrounding communities] and may impair compliance with the consent decree and the federal statutes such as the Clean Water Act." Accordingly, this Court has the authority to disregard the state court's equitable ruling and apply federal law of retroactivity.

Moreover, as explained, *infra*, the Michigan Supreme Court determined that the issue of whether its decision in *Pohutski* should be applied prospectively was a matter of weighing equities. 465 Mich. at 696. As also explained, the Michigan Supreme Court did not accept the certified question or otherwise weigh the equities involved in this federal case, which affects all the citizens of Wayne County and the downriver communities and not just the plaintiffs who are seeking damages for sewer backups. Thus, even if this Court is required to apply the Michigan Supreme Court's determination that the issue of whether its *Pohutski* opinion applies retroactivity issue implicates equitable considerations, this Court should conclude that the Michigan Supreme Court did not make the equitable inquiry at issue in this case and that the equities in this federal case present a federal question. Under Federal law, this Court must apply the *Pohutski* opinion retroactively. See, *Harper*, *supra* at 97, 100.

16

In summary, the Michigan Supreme Court declined to answer the certified question. In addition, even assuming that equitable considerations are relevant in determining whether a judicial decision correcting a misconstruction of a statute can be applied prospectively, the Michigan Supreme Court was not asked to weigh the equities of applying *Pohutski* retroactively to the situation involved in these federal cases, which present a federal question. Thus, the Michigan Supreme Court's opinion in *Pohutski* does not preclude this Court from applying *Pohutski* retroactively.

Moreover, for this Court to do other than applying *Pohutski* retroactively, would contravene the federal constitutional rationale for the U.S. Supreme Court's opinion in *Harper*, *supra*. In other words, if this Court applies *Pohutski* prospectively, it would be doing so without constitutional authority to disregard current Michigan law (as found in M.C.L. 691.1407(1) and the Michigan Supreme Court's correct interpretation of that statute in *Pohutski*), or to treat similarly situated litigants differently. Therefore, this Court should interpret M.C.L. 691.1407(1) as the Michigan Supreme Court did in *Pohutski,* and conclude that there is no trespass-nuisance exception to Michigan's governmental immunity act. This Court should also conclude that its interpretation of M.C.L. 691.1407(1) applies in the cases presently before this Federal Court.

## IV.   THERE IS NO MUNICIPAL LIABILITY FOR AN UNCONSTITUTIONAL TAKING" UNDER THE MICHIGAN CONSTITUTION FOR BASEMENT FLOODING.

Despite  the close link between the trespass nuisance exception to the government immunity and the takings clause, the two actions are separate and distinct. As Justice Brickley noted in *Hadfield v Oakland Co Drain Comm'r,* 430 Mich 139, 155; 422 NW 2d 205 (1988), liability was imposed for trespass, which stopped short of being "takings of property." Id. At 155.

17

**A.     To constitute a taking, there must be an intention to take or at a minimum, the taking must be the direct, natural result of a governmental action.**

An accidental or negligent impairment of a property right is not a taking.  The Plaintiff must establish that the government intended to take his property, or at a minimum that the taking was the direct and natural result of the government's action.  *Teegarden v United States,* 42 Fed. CL, 252 (1998) and *Columbia Basin Orchard v United States*, 132 CT CL 445, 450 (1955).  In *Columbia Basin Orchard*, the Court explained that an accidental or negligent impairment of the value of private property is not a taking, but, at most, a tort.

Takings involve the government's intention to take the property of another for a governmental purpose.  *Baird v United States*, 5 CL CT, 324, 329 (1984), *National By-Prods, Inc v United States*, 186 CT CL 546, 577 (1969).

Likewise, damages caused by faulty, negligent, or improper implementation of a governmental project is a tort but does not constitute a taking.  *Thun v U.S.,* 41 Fed. CL 49 (1988).

It is clear any taking analysis requires an affirmative or intentional act on the part of the governmental defendant that resulted in an intended or designed intrusion on and consumption of the Plaintiff's property.

The Defendant municipalities and Wayne County certainly did not design the downriver sewer system with the intended, expected, and/or natural result of flooding Plaintiffs' properties.

Absent evidence of "intent" on the part of the government to take Plaintiffs' property, Plaintiffs' claims fall short of unconstitutional taking and are, at best, theories of liability sounding in tort.

**B.     To constitute a taking there must be a permanent invasion of property which is the direct result of government action.**

In cases involving a physical invasion onto property, the Courts have required evidence of a "permanent" as opposed to "temporary" invasion, which is the direct result of a governmental action and evidence that the property owner has been deprived of all or most of its interest in the property.

In *Loretto v Teleprompter Manhatten CATV Corp*, 458 US 419 (1982), the U.S. Supreme Court noted that it "has consistently distinguished between flooding cases involving a permanent physical occupation, on the one hand, and cases involving a more temporary invasion, or

18

governmental action outside the owner's property that causes consequential damages within, on the other. A taking has always been found *only* in the former situation. *Id.*, at 428.

The court in *Loretto*, also noted that temporary invasions like intermittent flooding are treated differently because "they do not absolutely dispossess the owner of his rights to use, and exclude others from, his property." *Id.*

In *Sanguinetti v US*, 264 US 146 (1924), the court concluded that a mere temporary invasion of property resulting in a temporary injury did not constitute a taking. In *Sanguinetti*, the plaintiff's land was allegedly flooded by a government canal project.

The application of these principles of law clearly demonstrates that no taking occurred in the instant case. Water from the sewer back-up entered and remained on Plaintiffs' property for only minutes and not days, weeks or months. The water caused personal property damage only. It did not dispossess Plaintiffs on the property. These allegations and undisputed facts reveal that no taking occurred.

**C.    Governmental liability for trespass-nuisance is tort liability, not liability for an unconstitutional taking in violation of the "Takings Clause" of the Michigan Constitution.**

Justice Brickley undertook an historical analysis of governmental liability for trespass-nuisance in his plurality opinion in *Hadfield v Oakland County Drain Comm'r*, 430 Mich 139 at 154-169. Justice Brickley explained that the earliest cases to recognize governmental liability involved some type of direct invasion by the government entity of the plaintiff's land and were characterized either as trespass or nuisance. *Id.* at 155.

Justice Brickley noted that the primary rationale for imposing liability on governmental agencies for trespass-nuisance was the "Takings Clause" of the Michigan Constitution. But he also noted that liability was imposed for "[t]respassory invasions that stopped short of being 'takings' of property." *Id.* at 155.

As Justice Brickley's opinion accurately explained, "direct reliance on" [the Takings Clause of the Michigan Constitution] should not be confused with the assertion of the trespass-

19

nuisance exception. . ."  As he noted, other than the case of *Buckeye Union Fire Ins Co v Michigan*, 383 Mich 630 (1970), which involved a claim against the state and not against a municipality and which is discussed *infra*, "the other trespass-nuisance cases that cited the taking provision of the constitution merely employed that provision as a rationale for the judicially-created rule that would impose liability in a tort setting involving governmental immunity." *Hadfield*, 430 Mich at 165, n 10.

Thus, while the "Takings Clause" formed the policy basis for governmental liability for trespass-nuisance, historically, tort liability was imposed as opposed to liability for a constitutional violation.  This conclusion is evident from the language used or the conclusion reached in several of the earlier opinions.

For example, in *Ashley v Port Huron*, 35 Mich 296, 301 (1877) the Michigan Supreme Court reasoned as follows:

> The right of an individual to the occupation and enjoyment of his premises is exclusive, and the public authorities have no more liberty to trespass upon it than has a private individual.  If the corporation send people with picks and spades to cut a street through it without first acquiring the right of way, **it is liable for a tort**; but it is no more liable under such circumstances than it is when it pours upon his land a flood of water by a public sewer so constructed that the flooding must be a necessary result.

Thus, while the *Ashley* Court employed a "takings" rationale, it recognized that liability sounded in tort.

In *Defnet v Detroit*, 327 Mich 254, 258 (1948), the Michigan Supreme Court determined that the maintenance of a sewer under the plaintiff's property, without permission to do so, constituted a trespass and created a "continuing tort." Again, the Court determined that the government was liable in tort.  The Court did not find the government liable for an unconstitutional taking of private property.

20

SECREST, WARDLE, LYNCH, HAMPTON, TRUEX AND MORLEY

In *Seaman v City of Marshall*, 116 Mich 327, 330 (1898), the Michigan Supreme Court held that the defendant city could be held liable in tort for its alleged negligence for damages resulting from an allegedly inadequate sewer or drain tile. In *Ferris v Bd of Ed*, 122 Mich 315, 319 (1899), and *Herro v Chippewa Co Road Comm'rs*, 368 Mich 263, 265-267 (1962), the Michigan Supreme Court found that governmental agencies could be liable for personal injuries that resulted from trespass-nuisances that involved negligence by the governmental agency. Liability for negligence and for personal injury sounds in tort. Thus, again, the Court did not premise liability upon a theory of violation of constitutional rights.

As Justice Brickley noted, the one exception to applying tort liability is found in the Michigan Supreme Court's opinion in *Buckeye*, *supra*, which involved the liability of the state and not a subordinate governmental agency, and the Supreme Court found liability for a nuisance owned by the state based upon an unconstitutional "taking."

In *Buckeye*, deteriorated buildings on property that the State of Michigan owned caught fire and the fire spread to neighboring properties. *Buckeye*, 363 Mich at 632. The Michigan Supreme Court found that the condition of the state's property was a nuisance. *Id.* at 636.

After noting that the Legislature had reinstated sovereign immunity for claims against the state, the Supreme Court undertook an analysis under the "Takings Clause" of the Michigan Constitution of 1908. *Id.* at 641.

The first step in the Court's analysis after reviewing the Takings Clause was to define a taking. *Id.* at 641-642. The Supreme Court cited *Pearsall v Bd of Supervisors of Eaton County*, 74 Mich 558, 561, 562 (1889) for the proposition that a governmental "taking" included absolute conversion of property, destruction of the value of property, serious injury inflicted to the property, or exclusion of the owner from its enjoyment. *Buckeye*, 383 Mich at 641-641. The

SECREST, WARDLE, LYNCH, HAMPTON, TRUEX AND MORLEY

Court also quoted with approval opinions of other courts, including the United States Supreme Court that held that "[a] partial destruction or diminution in value is a taking." (Emphasis added) *Id.* at 642. The Court also quoted the Oregon Supreme Court, which had explained that "a taking occurs whenever government acts in such a way to deprive an owner of useful possession of that which he owns, either by repeated trespasses or by repeated non-trespassory invasions called 'nuisance.' *Id.* at 643. In other words, the Court explained that a "taking" results when there is substantial interference with an owner's useful possession of his or her property. In the case of trespassory invasions, the Court approved of the view that a "taking" would occur when there were repeated trespasses.

The Supreme Court went on to conclude in *Buckeye* that, "[t]here was no sovereign immunity applicable to a situation of nuisance as we have in this case." *Id.* at 644. As explained previously, the nuisance at issue was the fire hazard on the state's property that ignited and spread to plaintiff's property.

The Court limited its "taking" analysis to the specific nuisance at issue in *Buckeye*. Therefore, the Court did not find that every nuisance allegedly maintained by the state was a "taking" for which there is no sovereign immunity.

The factual circumstances in the cases before the Court and the other pending sewer backup cases caused by extraordinary rainfall events are distinguishable from the factual circumstances in *Buckeye*. In *Buckeye*, the state maintained its property in a condition that was a nuisance. In the cases pending before this Court and at issue in *United States v Wayne County, et al*, the city sewers were not maintained in a condition that was a nuisance. It was not until extraordinary rain fell that there was flooding and backup on the Plaintiffs' properties. The

22

claims at issue in this case are the classic tort claims of "intruding nuisance" or trespass-nuisance. Thus, an unconstitutional taking is not at issue in these cases.

Moreover, under similar circumstances, the Michigan Court of Appeals has held there is no liability for trespass-nuisance either by finding that the intrusion on plaintiff's property was not "set in motion" by the governmental agency or by employing an "act of God" defense. See, e.g. *Peters v Dep't of Corrections*, 215 Mich App 485; 546 NW2d 668 (1996). *Trout Unlimited, Muskego-White River Chapter v City of White Cloud*, 209 Mich App 452, 456-457; 532 NW2d 192 (1995). In *Trout v City of White Cloud*, the Court of Appeals found that the defendant city was not liable for trespass-nuisance even though the city intentionally breached its dam after heavy rains in the area endangered the dam and the surrounding areas. *Trout*, 209 Mich App at 456-457.

*Buckeye* is at odds with the rest of the Court's opinions regarding trespass-nuisance liability, which recognized such liability as sounding in tort and as an exception to the governmental immunity from tort liability legislation and merely borrowed the rationale of the "Taking Clause" to recognize the trespass-nuisance exception to governmental immunity.

Furthermore, only the state's liability was at issue in *Buckeye*. The Court did not apply its analysis to municipalities or other political subdivisions. Moreover, as Justice Brickley pointed out, as follows, the Supreme Court apparently resorted to liability for an unconstitutional taking because the state was the defendant in *Buckeye* instead of a municipality:

> Commentators have postulated that the Court in *Buckeye* would have found a trespass-nuisance had the defendant been a subordinate governmental unit, rather than the state. Cooperrider, [*The court, the legislature, and governmental tort liability in Michigan*, 72 Mich L R 187 (1973), p 248. See De Mars, [*Intentional Nuisance in fact: Should it be a bar to a governmental function defense in Michigan*?, 1981 Det C L R 771], p 780 ('[T]he court apparently believed that it could not assess liability against the state solely on the nuisance classification which derived from case law rather than statutory fiat'). *Hatfield*, 430 Mich at

23

168, n 12.

As explained, with the limited exception recognized in *Buckeye* based upon distinguishable facts, historically, the "Taking Clause" has been viewed merely as providing the rationale for recognizing a trespass-nuisance exception to governmental immunity from tort. Because the alleged trespass-nuisances have not reached the level of an unconstitutional taking, the governmental agencies have not been held liable based upon a constitutional violation.

Similarly, as explained in the Appellants' briefs in *Jones v Farmington Hills* and *Pohutski v Allen Park*, the trespass-nuisances alleged in those cases do not reach the level of an unconstitutional taking. The municipalities had no intent to take the Plaintiffs' properties. The alleged taking was not the direct, natural and probable consequence of the government's action in maintaining the sewer systems, and instead was caused by a random event induced by a natural phenomenon, record-breaking rainfall and not by government interference. In addition, the alleged trespass-nuisances did not constitute an actual permanent invasion of the land, amounting to an appropriation of and practical ouster of possession, and not merely injury, to the property. Nor did Plaintiffs come forward with any evidence that the alleged trespass-nuisances substantially contributed to any decline in their property values or that the government "abused its legitimate powers in affirmative actions directly aimed at" their properties, which they were required to do in order to avoid summary disposition. See, *In the Matter of Acquisition of Land – Virginia Park*, 121 Mich App 153, 161; 328 NW2d 602 (1982) Thus, the alleged liability for Plaintiffs' claims properly sounds in tort, not in an unconstitutional "taking."

Recently, this Court reaffirmed that an intruding nuisance or trespass-nuisance is not an unconstitutional taking, and, in *Peterman v DNR*, held that:

> While '[t]he Taking Clause of the constitution rests at the foundation of the trespass-nuisance exception,' *Li, supra* at 594, n 10, . . . the two actions are

24

distinct and the constitutional provision should not be confused with the assertion of the trespass-nuisance exception. *Peterman v DNR*, 446 Mich 177, 206-207; 545 NW2d 657 (1994). See also, Li v Feldt (After Remand), 434 Mich at 602, n 12, Opinion of Griffin, J, dissenting, where Justice Griffin accurately observed that the question of whether a governmental agency enjoys immunity for a violation of the "Takings Clause" is a separate question from the issue of the liability of a governmental agency in tort.

Thus, this Court should not allow Plaintiffs to mischaracterize their tort claims as constitutional claims to avoid the immunity for tort liability afforded to governmental agencies by the governmental immunity act. While the "Takings Clause" may have provided the rationale for recognition of a judicially created trespass-nuisance exception to governmental immunity from tort liability, the courts' utilization of such rationale cannot transform the tort claim of trespass-nuisance into a constitutional violation.

**D.    Michigan does not recognize a damage remedy against a municipality for a violation of the Michigan Constitution.**

A claim asserting a violation of the Michigan Constitution, including a claim for an "unconstitutional taking", can only be made against the State of Michigan. In *Jones v Powell*, the Michigan Supreme Court held that there is no damage remedy for violation of the Michigan Constitution against a municipality or other political subdivision. *Jones v Powell*, 462 Mich 329, 333, 335, 337; 612 NW2d 423 (2000).

In *Jones*, this Court agreed with the Michigan Court of Appeals' analysis of this Court's opinion in *Smith v Dep't of Public Health*, 428 Mich 540 (1987), aff'd sub nom *Will v Dep't of State Police*, 491 US 58;109 S Ct 2304 (1989), which was as follows:

> [W]e read *Smith* as recognizing a narrow remedy against the state where none otherwise would have existed. Conversely, we believe that none of the concerns identified in *Smith* that support a damage remedy for violations of the state constitution are applicable when the party that is alleged to have violated a plaintiff's state or federal constitutional rights is a municipality or an individual municipal employee rather than the state.

> In cases involving entities other than the state as a party defendant, the plaintiffs have available a number of alternative remedies. This is because municipalities, unlike states and state officials sued in an official capacity, are not protected by the Eleventh Amendment, which, of course, safeguards the state's sovereignty in

our federal system of government. . . *Jones*, 462 Mich at 333-334.

This Court concluded, in *Jones*, that it "agree[d] with the Court of Appeals' majority that our decision in *Smith* provides no support for inferring a damage remedy for a violation of the Michigan Constitution in an action against a municipality or an individual governmental employee." *Id.* at 335.  In reaching that conclusion, this Court noted that its review in *Smith* "focused on whether such a remedy should be inferred against the state. . ." *Id.* at 335-336.  This Court explained further that:

> *Smith* only recognized a narrow remedy against the state on the basis of the unavailability of any other remedy.  Those concerns are inapplicable in actions against a municipality or an individual defendant.  Unlike states and state officials sued in an official capacity, municipalities are not protected by the Eleventh Amendment.  * * *  A plaintiff may sue a municipality in federal or state court under 42 USC 1983 to redress a violation of a federal constitutional right.  *Id.* at 337.

Thus, neither this Court's opinion in *Smith* nor its opinion in *Jones*, supports the conclusion that the Plaintiffs have a damage remedy available under the "Takings Clause" of the Michigan Constitution for the alleged trespass-nuisances on their property.  Similarly, as discussed previously, this Court's opinion in *Buckeye Fire Ins Co v State of Michigan*, *supra*, did not recognize a damage remedy against a municipality or other political subdivision based upon that Takings Clause, because the Buckeye Fire Insurance Company's nuisance claim was brought against the State of Michigan.

Therefore, the Plaintiffs do not have a damage remedy against municipalities for violation of the Michigan Constitution.  Thus, they do not have a remedy under the "Taking Clause" of the Michigan Constitution, which arises out of the alleged trespass-nuisances on their property.

**V.    THERE CAN BE NO LIABILITY IMPOSED ON THE UNNAMED "JOHN DOE" DEFENDANTS, AS INDIVIDUAL GOVERNMENT EMPLOYEES, BASED UPON THE GROSS NEGLIGENCE EXCEPTION TO GOVERNMENTAL IMMUNITY UNDER M.C.L. 691.1407(2).**

Some of the Plaintiffs' Complaints also allege gross negligence against "John Doe" Defendants, as individual government employees.    Pursuant to M.C.L. 691.1407(2), governmental employees are immune from tort liability for injuries to persons or damages to property caused in the course of employment while the governmental agency is engaged in the exercise or discharge of a governmental function, unless the employee's conduct amounts to "gross negligence that is *the* proximate cause of injury or damage."  MCL 691.1407(2) goes on to define "gross negligence" as "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results."

The Michigan Supreme Court in *Robinsin v. City of Detroit*, 462 Mich 439, 613 NW2d 307 (2000), addressed the phrase "the proximate cause" in the statute.  In *Robinson*, the Supreme Court held that individual employees of a governmental agency are immune from liability unless their actions were "**the** proximate cause of the Plaintiff's injuries."   The Supreme Court specifically differentiated between conduct that is "**a** proximate cause", as opposed to conduct which is "**the** proximate cause of an injury".  It is only the later that will give rise to an exception to governmental immunity against employees of a governmental agency.   Furthermore, to be "**the** proximate cause" of the Plaintiff's injury, it must be "the one most immediate, efficient and direct cause of the Plaintiff's injury."  *Robinson at 462, 463 and 469.  (Emphasis added)*

The *Robinson* court went on to note that the rules of statutory construction that they employed in that case, "are especially germane in the cases now before us because Michigan strictly construes statutes imposing liability on the state in derogation of the common law rule of soverign immunity . . . This court has repeatedly acknowledged that the governmental immunity legislation 'evidences a clear legislative judgment that public and private tortfeasors should be treated differently.'"  Robinson, at 459.

Clearly, "the one most immediate, efficient, and direct cause" of the damages to the Plaintiffs in the basement flooding cases, was the torrential rainfall that occurred in the downriver communities on September 11, 2000.  As set forth in Exhibit B and C to Wayne County's Brief in Support of Motion for Summary Judgment with Regard to Takings and Trespass-Nuisance Claims, the downriver communities all received a minimum of two inches of

rain over a three hour period and the Cities of Taylor and Allen Park both received three and one-half inches of rain in a three hour period, an amount greater than a 100 year rain storm event. The resulting flooding and associated property damage was so significant that the federal government declared the downriver area an "emergency disaster area" for which funding through the Federal Emergency Management Administration was made available. Clearly, the direct and most immediate cause of the flooding of the Plaintiffs' basements was the 100-year rain storm event and not any negligence on the part of any individual employee of the Defendant governmental agencies.

Furthermore, for the individual employees to have any liability, as an exception to governmental immunity, Plaintiffs would have to show not only that those individual employees were grossly negligence, as defined in M.C.L. 691.1407(2), but also that the individual employees' gross negligence was the "one most immediate, efficient, and direct cause of the injury or damage."

Plaintiffs cannot, and will not, be able to establish any gross negligence on the part of any individual government employee under these standards.

Furthermore, Plaintiffs have named only "John Doe" defendants in their Complaints. None of the "John Doe" defendants have been identified nor named in the Complaint. As set forth in *Bufalino v. Michigan Bell Telephone Co.*, 404 F2d 1023, at 1028 (6th Cir. 1968), Cert Denied, 394 U.S. 987 (1969), an action is not commenced against "John Doe" defendants, named in the original Complaint, unless and until the John Doe defendants are identified and served with process. That has not been accomplished in this case and, accordingly, the claims against the John Doe defendant can be similarly dismissed as no action has been commenced against them.

28

## RELIEF REQUESTED

The Defendant municipalities respectfully request dismissal of each of the Plaintiffs' Complaints, for the reasons set forth above, together with an award to these Defendants of their costs and attorneys fees.

SECREST, WARDLE, LYNCH, HAMPTON,

TRUEX AND MORLEY

BY: *Edward D Plato*

EDWARD D. PLATO (P 29141)
JANET C. BARNES (P 29887)
Liaison Counsel for Defendant Municipalities
30903 Northwestern Highway
P.O. Box 3040
Farmington Hills, MI 48333-3040
(248) 851-9500

Dated: October 16, 2002

## PROOF OF SERVICE

On the date below, I delivered a copy of **DEFENDANT'S RESPONSE TO PLAINTIFFS' MEMORANDUM OF LAW REGARDING COURT'S JULY 15, 2002, MEMORANDUM and SUPPLEMENTAL BRIEF** to the attorneys listed on the attached Service List:

By: __X__ Regular First Class Mail with proper postage
_____ Registered Mail with return receipt requested
_____ Certified Mail with return receipt requested
_____ Fax Machine
_____ Personal service

I declare that the statements above are true to the best of my information, knowledge and belief.

DATED: Oct. 16, 2002 *Sherri A. Kirby*

Sherri A. Kirby

## SERVICE LIST

R. Craig Hupp, Esq.
G. Christopher Bernard, Esq.
34th Floor, 100 Renaissance Center
Detroit, MI  48243

Kurt Heise, Esq.
Cummings, McClorey, Davis & Acho, P.L.C.
33900 Schoolcraft Road, #G-1
Livonia, MI  48150

James T. Mellon, Esq.
Mellon, McCarthy & Van Dusen
2301 W. Big Beaver Rd., Ste. 500
Troy, MI  48084

Floyd Virant, Esq.
Patrick, Johnson & Mott, P.C.
27777 Franklin Rd., Ste. 1100
Southfield, MI  48034

Kerry L. Morgan, Esq.
Pentiuk, Couvreur & Kobiljak, PC
20300 Superior St.
Ste. 230 Superior Place
Taylor, MI  48180-6303

Lucy Ford, Esq.
UAW-Ford Legal Services Plan
20600 Eureka Rd., Ste. 620
Taylor, MI  48180

Kenneth A. Slusser, Esq.
Marcia Howe, Esq.
Johnson, Rosati, et al
34405 W. Twelve Mile Rd.
Ste. 200
Farmington Hills, MI  48331-5627

John J. Gillooly, Esq.
Garan Lucow Miller, PC
1000 Woodbridge St.
Detroit, MI  48207

Timothy S. Ferrand, Esq.
Cummings, McClorey, Davis & Acho, P.L.C.
25509 Kelly Road, Ste. C.
Roseville, MI  48066

Patrick McCauley, Esq.
Sommers, Schwartz, Silver & Schwartz, PC
2000 Town Center, Ste. 900
Southfield, MI  48075

Peter W. Macuga, Esq.
Steven D. Liddle, Esq.
Macuga & Liddle, PC
975 East Jefferson
Detroit, MI  48207

Ronald Haystead, Esq.
Law Offices of R. Thomas Bidari
3035 Biddle Ave.
Wyandotte, MI  48034

Alyssa J. Enchnan, Esq.
Grotefeld & Denenberg
30800 Telegraph Road
Ste. 3858
Bingham Farms, MI  48025

William Colovos, Esq.
13400 Dix-Toledo Road
Southgate, MI  48195

Gregory S. Pierce, Esq.
Ava Ortner, Esq.
Kotz, Sangster, Wysocki & Berg, PC
400 Renaissance Center
Ste. 2555
Detroit, MI  48243-1602

Christopher C. Hunter, Esq.
Randy J. Martinek, Esq.
Coticchio & Assoc.
19678 Harper Ave.
Grosse Pointe Woods, MI  48236

SECREST, WARDLE, LYNCH, HAMPTON, TRUEX AND MORLEY

C:\NrPortbl\Secrest\KIRBYS\434599_1.DOC