# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT
100 EAST FIFTH STREET, ROOM 532
POTTER STEWART U.S. COURTHOUSE
CINCINNATI, OHIO 45202-3988

LEONARD GREEN
CLERK

BRYANT CRUTCHER
(513) 564-7013
www.ca6.uscourts.gov

Filed: April 23, 2004

Pamela J. Stevenson
Office of the Attorney General
Environment, Natural Resources Division
P.O. Box 30217
Lansing, MI 48909

Kerry L. Morgan
Pentiuk, Couvreur & Kobiljak
2915 Biddle Avenue
Suite 200, Edelson Building
Wyandotte, MI 48192

Kathryn E. Kovacs
U.S. Department of Justice
Environment Division Appellate Section
L'Enfant Plaza Station
P.O. Box 23795
Washington, DC 20026

FILED
MAY - 3 2004
CLERK'S OFFICE
DETROIT

RE: 02-2245
USA vs. Wayne Cnty
District Court No. 87-70992

Enclosed is a copy of an order which was entered today in the above-styled case.

Very truly yours,
Leonard Green, Clerk

Bryant L. Crutcher

Case Manager

Enclosure

cc:
    Honorable John Feikens
    Mr. David J. Weaver

FILED
APR 2 3 2004
LEONARD GREEN, Clerk

NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

No. 02-2245

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
Sixth Circuit Rule 28(g) limits citation to specific situations. Please see Rule 28(g) before citing in a proceeding in a court in the Sixth Circuit. If cited, a copy must be served on other parties and the Court.
This notice is to be prominently displayed if this decision is reproduced.

| | |
|---|---|
| UNITED STATES OF AMERICA; MICHAEL A. COX, Attorney General for the State of Michigan, *ex rel* MICHIGAN NATURAL RESOURCES COMMISSION; DIRECTOR OF THE MICHIGAN DEPARTMENT OF NATURAL RESOURCES,<br><br>    Plaintiffs-Appellees,<br><br>v.<br><br>WAYNE COUNTY, MICHIGAN, et al.,<br><br>    Defendants,<br><br>CITY OF RIVERVIEW,<br><br>    Defendant-Appellant. | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN |

FILED
MAY - 3 2004
CLERK'S OFFICE
DETROIT

Before: SILER, MOORE and SUTTON, Circuit Judges.

SUTTON, Circuit Judge. On May 24, 1994, the United States and the State of Michigan negotiated a consent decree with Wayne County, Michigan and several communities in the area that deliver sewage to a Detroit-area wastewater collection system and wastewater treatment plant. The consent decree resolved a 1987 action under the Clean Water Act regarding sewage discharges into the Detroit River, and sought significant improvements to the collection system and the treatment plant. Under the consent decree, the parties agreed that only eight of 24 bypasses—points at which

raw sewage is discharged into the Detroit River during storms that overload the waterway—would be necessary to handle emergency rainfall situations on the waterway and that all other bypasses would be sealed by October 1, 2002.

In April 2001, one of the parties to the consent decree, the City of Riverview, filed a motion to amend the decree to permit the City to keep its bypass open permanently. The City claimed that severe storms in 1998 and 2000 proved that its bypass needed to remain open because the storms caused extensive basement flooding in the homes of its residents. The district court denied this motion, and we affirm.

I.

Wayne County owns the Wyandotte Wastewater Treatment Plant, which is located on the Detroit River, and the Downriver Wastewater Collection System, which carries sewage from communities in the area to the treatment plant. Wayne County lets local communities purchase capacity on the collection system, allowing each community to discharge a specified amount of sewage into the pipes leading to the treatment plant. Communities bear responsibility for regulating their own flow levels so as not to exceed their purchased capacities. In normal weather conditions, that task raises few challenges. When extreme rainfall occurs, however, effective operation of the wastewater collection system requires a balance between controlling flows to the treatment plant and sanitary sewer overflow on the one hand and bypass discharges to the Detroit River on the other.

When this balance is compromised, one of two things happens: Too much sewage is discharged into the Detroit River or too much basement flooding occurs.

In 1987, the United States and the State of Michigan filed an action against Wayne County, alleging that it had violated the federal Clean Water Act, the Michigan Water Resources Commission Act and the National Pollutant Discharge Elimination System permit that it had been issued under those acts. The complaint was amended in 1988 to add a violation of the Michigan Drain Code as well as to add claims against several communities and drainage districts delivering sewage to the system (the "downriver communities"), including the City of Riverview. The amended complaint alleged that Wayne County and the downriver communities violated the Clean Water Act by exceeding the effluent limitations for discharges into the Detroit River and had failed to construct necessary additional treatment facilities required by the discharge permit. The amended complaint also alleged that the downriver communities "caused or contributed" to Wayne County's violations. First Amended Complaint at 11. Plaintiffs asked that the defendants be enjoined from continuing to violate the Clean Water Act, various Michigan water laws and the permit, and be ordered to develop a plan for improving the system to avoid future impermissible discharges into the Detroit River.

On May 24, 1994, Wayne County and the downriver communities entered into a consent decree designed to bring all defendants into compliance with federal and state law. The consent decree required Wayne County and the downriver communities to expand the wastewater treatment facility and to improve the regional wastewater transport system. The defendants also agreed to

reduce their use of the system's bypasses and to seal all but eight of them by October 1, 2002. The bypass operated by the City of Riverview was not among the eight bypasses that were allowed to remain open.

On April 13, 2001, roughly a year and a half before the remaining bypasses were to be sealed, the City of Riverview filed a motion to modify the consent decree so that its bypass could be left open permanently. Riverview claims that the motion became necessary in the aftermath of three related events: (1) unanticipated severe storms, one in 1998 and two in 2000, which produced extreme rain, (2) a lightning strike that disabled the power grid supplying voltage to the system's pump stations and (3) a raft of lawsuits arising from residential basement flooding caused by the two storms. The district court denied the motion without prejudice, reasoning that it was premature because system improvements contemplated by the consent decree had not yet been completed.

On June 5, 2002, Wayne County and the downriver communities filed a motion to modify the consent decree by extending the deadline for sealing the bypasses one year (until October 1, 2003). They hoped the extension would allow for adequate time to collect additional data to determine "the future importance of certain bypasses." Wayne County Mot. to Amend, at 3. On July 1, 2002, the City of Riverview renewed its own motion to amend the consent decree to allow it to keep its bypass open permanently. The United States and Michigan opposed both motions. Consistent with the consent decree, they noted, the defendants had completed a study of the system capacity needed to handle various rainfall events, had proposed a system that could handle those events and were still in the process of constructing the new system. On top of this, the governmental

plaintiffs argued, the defendants' study confirmed that the eight bypasses remaining open under the consent decree would adequately handle extreme rainfalls.

On August 30, 2002, the district court conducted a hearing on the motion filed by Wayne County and the downriver communities. At that hearing, the City of Riverview's counsel also addressed the court on the merits of the City's motion, which was scheduled for a hearing on September 24, 2002. The district court officially denied the motion of Wayne County and the downriver communities on September 20, 2002. And on September 24, 2002, it convened a hearing on the City of Riverview's motion, and denied the motion that day. The City of Riverview, but not the other defendants, appeal the district court's refusal to modify the consent decree.

## II.

We review a district court's denial of a motion to modify a consent decree for abuse of discretion. *Lorain NAACP v. Lorain Bd. of Educ.*, 979 F.2d 1141, 1147–48 (6th Cir. 1992). "A district court abuses its discretion when it relies on clearly erroneous findings of fact, or when it improperly applies the law or uses an erroneous legal standard." *Id.* at 1148 (quotation and citation omitted).

### A.

No. 02-2245
*United States, et al. v. Wayne County, et al.*

The City of Riverview first raises a procedural challenge to the district court's ruling. In the City's view, the court abused its discretion by failing to conduct a formal hearing regarding the motion. We disagree.

The *modification* of a consent decree by a court without the consent of all parties to the agreement is indeed a signal event that requires a material change in circumstances that only a formal hearing and appropriate findings of fact can demonstrate. Traditionally,

> courts have []considered the modification of a consent decree to be serious, leading to "perhaps irreparable" consequences. . . . As a contract, a decree . . . reflects a compromise or agreement negotiated *between parties* who each have a purpose. Judicial approval of a settlement agreement places the power and prestige of the court *behind the compromise struck by the parties.* The standard for justifying the modification of a decree is a *strict* one and a consent decree is, after all, a judgment entitled to a presumption of finality.

*United States v. Michigan*, 940 F.2d 143, 150 (6th Cir. 1991) (internal citations and quotations omitted). Recognizing the significance of modifying the terms of a consent decree over the objection of one of the parties, this Court has required district courts to hold "a complete hearing" and to make appropriate findings of fact before making such modifications. *Vanguards of Cleveland v. City of Cleveland*, 23 F.3d 1013, 1017 (6th Cir. 1994); *see also Gonzales v. Galvin*, 151 F.3d 526, 535 (6th Cir. 1998) (noting that "a 'complete hearing' of an issue does not necessarily require a full-blown evidentiary hearing").

No. 02-2245
*United States, et al. v. Wayne County, et al.*

That a formal hearing should be held before a court alters a consent decree, however, does not mean that a court must hold a formal hearing before it refuses to modify a consent decree. When a motion does not raise a serious challenge to the consent decree and merely appears to be "a post-judgment attempt by a party to escape from obligations it had voluntarily assumed," *Delaware Valley Citizens' Council for Clean Air v. Pennsylvania*, 674 F.2d 976, 981 (3d Cir. 1982), it may well be appropriate for a trial court to reject the motion without holding a formal hearing.

In this instance, the district court scheduled two pertinent hearings—one for August 30, 2002 on the motion filed by Wayne County and the downriver communities to keep the bypasses open for another year, and one for September 24, 2002 on the motion by the City of Riverview to keep its bypass open indefinitely. Counsel for the City attended the August hearing as an observer. At one point during that proceeding, counsel for the City on "his own initiative [,] . . . approached the podium and asked . . . for permission to address" the court. Appellant's Br. at 20. He explained that he was concerned that the district court could rule against the current motion, then rely on that ruling as precedent for rejecting the City's motion in September. The district court did not disagree and explained that "whatever is done today would affect that [September] motion." Trans. of Mot. Hr'g on 8/30/02 at 21. As a result, counsel for the City made the most of his "opportunity" to "make a few statements to the Court" about the City's independent motion. *Id.*

The court ultimately rejected Wayne County's motion. And in September, the City claims, the court abused its discretion by merely "rehash[ing] the August 30, 2002 hearing, and conclud[ing]

- 7 -

No. 02-2245
*United States, et al. v. Wayne County, et al.*

without foundation that [it] had already 'denied a series of motions. one of which was' Riverview's." Appellant's Br. at 21–22 (quoting Trans. of Mot. Hr'g on 9/24/02 at 8).

In registering this procedural objection to the court's ruling, however, the City fails to offer a tenable explanation why it should have received a formal hearing in September or for that matter what it would have done differently had such a hearing occurred. The City's counsel attended the August hearing, was given an opportunity to participate in that hearing and acknowledged that the two motions were related, which in fact they were. At the September 24th hearing, moreover, counsel for the City of Riverview acknowledged that (1) "this matter has been briefed, and the Court is well familiar with the bypass situation" and (2) "there have been . . . maybe a half-dozen or so pleadings and supplemental pleadings on this subject. We would submit that to the Court for its consideration, and the basis thereof is stated well in our pleadings." Trans. of Mot. Hr'g on 9/24/02 at 5.

To the extent the City means to argue that it not only should have been given a more formal hearing but also should have been given an opportunity to present evidence as well, that too is wrong. "Evidentiary hearings are not necessary," we have held, "where the parties' briefs clearly set forth the relevant facts and arguments of a case such that a hearing would not add anything to the briefs, and where the court has sufficient evidence before it to make detailed factual findings." *Gonzales*, 151 F.3d at 535. And that is particularly true in this setting—where the City's motion was filed before the October 1, 2002 deadline and where the motion concerned events (severe storms in

- 8 -

No. 02-2245
*United States, et al. v. Wayne County, et al.*

1998 and 2000) that took place before Wayne County and the downriver communities (including the City of Riverview) had completed their modifications to the collection system and treatment plants.

Nothing in the record, moreover, indicates that the City sought to proffer any evidence at the September hearing. Aside from what the district court was told in the August hearing (including statements made by the City's counsel) and what was contained in the pleadings and briefs submitted with the City's motion, the City has offered no indication that it formally or informally sought to present more evidence at the September hearing. Under these circumstances, the district court acted well within its discretion in choosing not to hold a more formal hearing, including an evidentiary hearing, before denying the City's motion to keep open its bypass permanently.

### B.

The City next challenges the merits of the district court's decision. Relying on material changes in fact (the unanticipated storms in 1998 and 2000) and in Michigan law that occurred after the parties entered into the consent decree in 1994, it argues that the consent decree should be modified because compliance with the decree is no longer possible for the City and is no longer in the public interest. We disagree.

*Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367 (1992), sets forth the standards for modifying a consent decree. When obligations under a consent decree "become impermissible under federal law" or "when the statutory or decisional law has changed to make legal what the decree was designed to prevent," a district court may modify the decree and may do so over the objection of one

No. 02-2245
*United States, et al. v. Wayne County, et al.*

of the parties. *Id.* at 388; *see also Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). However, a judicial decision that clarifies the law does not, of itself, support modification, unless "the parties had based their agreement on a misunderstanding of the governing law." *Rufo*, 502 U.S. at 390. If the moving party demonstrates a significant change in factual circumstances, the court must consider "whether the proposed modification is tailored to resolve the problems created by the change." *Id.* at 391. By contrast, when a party seeks to modify a consent decree based "upon events that actually were anticipated at the time it entered into a decree," the modification should be denied. *Id.* at 385; *see Vanguards of Cleveland*, 23 F.3d at 1018.

In seeking a modification, the City initially invokes changed factual circumstances. While weather and collection system projections in 1994 assured the City that sealing its bypass in 2002 would be feasible, the City claims that it could not account for factual circumstances arising after the parties signed the consent decree. Torrential downpours in 1998 and 2000, the City explains, and a lightning strike on the wastewater collection system's power grid (rendering its pumps inoperable) were not anticipated and created widespread residential basement flooding that eventually led to "34 class action lawsuits and over 10,000 plaintiffs." Appellant's Br. at 24.

As the City acknowledges, however, "basement flooding was discussed" by the parties when they negotiated the consent decree and determined the number of bypasses that could remain open. *Id.* Prior severe storms—including an historic July 11, 1979 storm that produced three inches of rain in two hours—were a not-too-distant memory when the parties negotiated the consent decree and were well known by the participants to the negotiations. More significantly, the cause and effect

No. 02-2245
*United States, et al. v. Wayne County, et al.*

between extreme weather and sewage discharges into the Detroit River was a significant reason, if not the primary reason, for the filing of the lawsuit by the United States and the State of Michigan in the first instance. When severe rain overloads a collection system and puts a local community to the choice of discharging excess water (and sewage) into a river or into its residents' basements, one need not be an expert in the environmental problem of externalities to predict the choice that will often be made in the absence of regulation by the State or the National Government. *See Solid Waste Agency v. United States Army Corps of Eng'rs*, 531 U.S. 159, 195 (2001) (noting that many environmental problems are created by actions "in which the benefits . . . are disproportionately local, while many of the costs . . . are widely dispersed. . . . [and that] in such situations, described by economists as involving 'externalities,' federal regulation is both appropriate and necessary"). To the ends of ensuring that this local choice complied with the Clear Water Act and Michigan law, the United States and Michigan filed this lawsuit. Severe weather, plainly, was one of the items the parties contemplated in negotiating the retention capacity of the new system's pipes and the treatment plant, as well as the location and number of bypasses on the system permitted to remain open. The City in the end seeks to modify the consent decree on the basis of "events that actually were anticipated" when it signed the consent decree, which is classically a reason for denying a modification. *Rufo*, 502 U.S. at 385.

Finally, when the basement flooding that sparked the City's motion occurred in 1998 and 2000, system improvements under the consent decree were not yet complete. In other words, this modification request turns on a problem that not only had been anticipated but that the new system

No. 02-2245
*United States, et al. v. Wayne County, et al.*

had not yet been given a chance to correct. In denying a request to modify a consent decree under these circumstances, the district court did not abuse its discretion.

In addition to relying on changed factual circumstances, the City claims that changes in Michigan statutory and decisional law after 1994 support its motion. In 1994, municipalities could be held liable for basement flooding under the trespass-nuisance exception to governmental immunity. *See Pohutski v. City of Allen Park*, 641 N.W.2d 219, 227–28 (Mich. 2002) (noting two 1998 cases in which defendant communities were held liable under the trespass-nuisance exception). Since then, the law has changed. In 2001, the Michigan legislature amended the statutes regarding governmental tort liability for sewer-system overflow, making it more difficult to hold a municipality liable for basement flooding and hampering homeowners' ability to obtain recoveries from their municipality after basement flooding. *See, e.g.*, Mich. Comp. Laws §§ 691.1415 (2001) *et seq.* In 2002, the Michigan Supreme Court decided *Pohutski*, which also makes it harder for residents to hold municipalities liable for residential basement flooding and which gives these limitations on municipal liability a prospective application. 641 N.W.2d at 233–34. In the City's view, these changes materially altered the legal circumstances surrounding the consent decree because in 1994 the parties "did not agree to willy-nilly sacrifice their residents' property if their cause of action disappeared." Appellant's Br. at 26.

This argument has an assortment of flaws. First, the changes in Michigan law purport to help the City (or at least its treasury) rather than hurt it. The whole point of the legislation after all is to *limit* municipal liability for basement flooding caused by torrential rain. The new case law is to the

- 12 -

No. 02-2245
*United States, et al. v. Wayne County, et al.*

same effect. Second, to the extent the City of Riverview does not support these limitations on liability, it of course need not enforce them. Nothing in the new legislation bars a city from waiving these limitations on its liability. Third, these legal developments do not permit the modification of a consent decree. These changes in law, for example, do not "make legal what the decree was designed to prevent" and do not make obligations under the consent decree "impermissible under federal law." *Rufo*, 502 U.S. at 388. Likewise, neither the statutory amendments nor the Michigan Supreme Court opinion shows that the parties based the consent decree on a "misunderstanding of the governing law." *Id.* at 390. In accordance with the Clean Water Act and Michigan law, the consent decree required the City of Riverview to seal its bypass so untreated sewage would not be discharged into the Detroit River. Michigan's new statutes and case law concerning reduced municipal liability do not legalize those discharges, do not make closing the Riverview bypass impermissible and do not establish that the consent decree was based on a legal misunderstanding of any kind. The City, in short, has not shown that the district court abused its discretion in rejecting these changes in law as a basis for modifying the consent decree under *Rufo*.

C.

The City, lastly, argues that the district court ignored findings from studies defendants had conducted and incorporated into the Emergency Operations Plan, which the district court then adopted. "For rainfall events approaching and above the 4.42 inch design storm," the Plan says, "surcharging within local systems may occur as a result of local capacity limitations, regardless of whether [] flow levels are maintained at acceptable elevations." Emergency Operations Plan at 17.

- 13 -

No. 02-2245
*United States, et al. v. Wayne County, et al.*

The Plan also acknowledges that "[e]mergency conditions may be extremely rare, but without the capability to bypass significant surcharging and flooding could result in the lower reaches of the system should an emergency occur." *Id.* at 19.

As the City sees it, the district court failed to acknowledge the possibility that extreme weather could cause system surcharging, then compounded the error by prohibiting the City from utilizing its bypass as a way to avoid the possible residential basement flooding that could result. Once again, we cannot agree.

The consent decree obligated the defendants to design a system that could handle extreme rainfall. The defendants' own hydraulic modeling study predicted that during a centennial rainstorm—4.42 inches of rain in 24 hours that is likely to occur just once every 100 years—the wastewater collection system could handle the resulting flow without using any bypasses. The study also predicted that even if a more extreme rainstorm (six inches in 24 hours) occurred, only four of the eight bypasses that remained open after October 1, 2002 would have to be used. These findings were incorporated into the Emergency Operations Plan adopted by the district court. Contrary to the City's suggestion, the Emergency Operations Plan did contemplate surcharges during severe rainfalls, and found that only a few of the bypasses needed to remain unsealed to alleviate overflow. At no point did the Plan conclude that more than eight bypasses would be needed to account for extreme rainfall.

No. 02-2245
*United States, et al. v. Wayne County, et al.*

What is more, the system improvements required by the consent decree had not been completed when the basement flooding that sparked this motion occurred in 1998 and 2000. During those storms, in other words, the City of Riverview's bypass was open and apparently did not help prevent the flooding. Now that the system is complete, the comprehensive study predicts that the new system will handle extreme storms like those in 1998 and 2000, a conclusion that the City has nowhere contradicted. In fact, the City has not offered any proof that (1) the completed system is inadequate and actually will result in future residential basement flooding, (2) its compliance with the consent decree either caused past residential basement flooding or will cause residential basement flooding in the future, or (3) a decision relieving it from its obligations under the consent decree will prevent flooding in the future. For these reasons, the City has also failed to satisfy its duty under *Rufo* of showing that its recommendation to keep its bypass open is tailored to addressing the very problem upon which this motion is premised. *See Rufo*, 502 U.S. at 391. No abuse of discretion occurred.

**III.**

For the foregoing reasons, we affirm.