# EXHIBIT 1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA and FRANK
J. KELLEY, ATTORNEY GENERAL FOR THE
STATE OF MICHIGAN, EX REL, MICHIGAN
NATURAL RESOURCES COMMISSION, AND
DIRECTOR OF THE MICHIGAN
DEPARTMENT OF NATURAL RESOURCES,

      Plaintiffs,

         v.

WAYNE COUNTY, MICHIGAN; CITY OF ALLEN
PARK; CITY OF BELLEVILLE; TOWNSHIP OF
BROWNSTOWN; CITY OF DEARBORN HEIGHTS;
CITY OF ECORSE; CITY OF LINCOLN PARK;
CITY OF RIVER ROUGE; CITY OF ROMULUS;
CITY OF SOUTHGATE; CITY OF TAYLOR;
TOWNSHIP OF VAN BUREN; CITY OF WYANDOTTE;
CITY OF RIVERVIEW; SOUTHGATE-WYANDOTTE
RELIEF DRAINAGE DISTRICT; AND
ECORSE CREEK POLLUTION ABATEMENT DRAIN,

      Defendants.

Civil Action No.
87-70992
HON. JOHN FEIKENS

**CONSENT DECREE**

# TABLE OF CONTENTS

WHEREAS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

I.    JURISDICTION AND VENUE . . . . . . . . . . . . . . . . . 4

II.   APPLICABILITY . . . . . . . . . . . . . . . . . . . . . . . . 5

III.  DEFINITIONS . . . . . . . . . . . . . . . . . . . . . . . . . 6

IV.   COMPLIANCE PROGRAM . . . . . . . . . . . . . . . . . 9

V.    STIPULATED PENALTIES . . . . . . . . . . . . . . . . . 29

VI.   CIVIL PENALTY . . . . . . . . . . . . . . . . . . . . . . 35

VII.  REPORTING REQUIREMENTS . . . . . . . . . . . . . . 37

VIII. SUBMITTALS . . . . . . . . . . . . . . . . . . . . . . . . 40

IX.   FORCE MAJEURE . . . . . . . . . . . . . . . . . . . . . 43

X.    DISPUTE RESOLUTION . . . . . . . . . . . . . . . . . . 46

XI.   RIGHT OF ENTRY . . . . . . . . . . . . . . . . . . . . . 47

XII.  DIVISION OF RESPONSIBILITY AMONG DEFENDANTS . . . . . . . . . 48

XIII. APPROVAL AND FACILITY CONSTRUCTION . . . . . . . . . . 48

XIV.  FUNDING . . . . . . . . . . . . . . . . . . . . . . . . . . 49

XV.   ACCESS . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

XVI.  FAILURE OF COMPLIANCE . . . . . . . . . . . . . . . . 50

XVII. NOT A PERMIT . . . . . . . . . . . . . . . . . . . . . . 50

XVIII. NON-WAIVER PROVISIONS . . . . . . . . . . . . . . . . 51

XIX.  CONTINGENT LIABILITY OF STATE OF MICHIGAN . . . . . . . . . 52

XX.   RESOLUTION OF COUNTERCLAIMS . . . . . . . . . . . . . 53

XXI.  COSTS OF SUIT . . . . . . . . . . . . . . . . . . . . . . 53

XXII. MODIFICATION . . . . . . . . . . . . . . . . . . . . . . 53

XXIII. EFFECTIVE DATE AND CONTINUING JURISDICTION OF THE COURT . . . . . . . . . . . . . . . . . . . . . . . . . . . 54

XXIV. TERMINATION . . . . . . . . . . . . . . . . . . . . . . 54

XXV.  PUBLIC COMMENT . . . . . . . . . . . . . . . . . . . . 56

WHEREAS, Plaintiffs, the United States of America, on behalf of the United States Environmental Protection Agency ("EPA"), and Frank J. Kelley, the Attorney General for the State of Michigan, ex rel, Michigan Natural Resources Commission, et al., filed the Complaint herein on March 18, 1987, against Defendant Wayne County, Michigan (the "County"), alleging that the County has violated the Clean Water Act, 33 U.S.C. § 1251 et seq. (the "Act"), the Michigan Water Resources Commission Act ("WRCA"), MCL 321.1 et seq., and the terms and conditions of National Pollutant Discharge Elimination System ("NPDES") Permit No. MI0021156. WHEREAS, on October 26, 1988, Plaintiffs filed the First Amended Complaint ("Complaint"), which added claims alleging violations of the Act, 33 U.S.C. § 1251 et seq., the WRCA, MCL 321.1 et seq., and the terms and conditions of NPDES Permit No. MI0021156, against the City of Allen Park, City of Belleville, Township of Brownstown, City of Dearborn Heights, City of Ecorse, City of Lincoln Park, City of River Rouge, City of Riverview, City of Romulus, City of Southgate, City of Taylor, Township of Van Buren, and City of Wyandotte (hereinafter referred to collectively as the "Downriver Communities"), and against the Southgate-Wyandotte Relief Drain Drainage District and the Ecorse Creek Pollution Abatement Drain Drainage District (hereinafter referred to collectively as the "Drainage Districts").

WHEREAS, Defendant Wayne County is a Charter County Corporation organized and existing under the laws and constitution of the State of Michigan.

3

WHEREAS, Defendant Wayne County owns and operates a wastewater treatment facility located at 797 Central Ave., in Wyandotte, Michigan known as the Wayne County-Wyandotte Wastewater Treatment Plant (the "WWTP" or the "plant") pursuant to a contract entered into by the Defendants dated March 1, 1962, under Act 185, 1957.

WHEREAS, each of the other Defendants is either a municipal corporation in Wayne County, Michigan, which collects and delivers sewage to the plant or is a public corporation in Wayne County which collects and delivers sewage to the plant.

WHEREAS, the United States, the State of Michigan, and all Defendants consent to the entry of this Consent Decree in full and final settlement of this action, without the adjudication of any issue or the taking of any testimony.

NOW, THEREFORE, and upon consent of the parties hereto, it is hereby ORDERED, ADJUDGED AND DECREED as follows:

## I. JURISDICTION AND VENUE

1. This Court has jurisdiction over the parties and the subject matter of this action under 28 U.S.C. §§ 1331, 1345 and 1355, and Section 309 of the Act, 33 U.S.C. § 1319. The Court has pendent jurisdiction over the State's claims under the WRCA, since the alleged violations of the WRCA arise from a common nucleus of operative facts shared with the Federal claims. The Complaint states claims against the Defendants upon which the Court can grant relief under the Act and the WRCA.

## II.   APPLICABILITY

2.   A.   This Consent Decree shall apply to and be binding upon the United States, on behalf of EPA, the State of Michigan, on behalf of the Michigan Natural Resources Commission and the Michigan Department of Natural Resources ("MDNR"), and the Defendants and their agencies, officers, directors, agents, servants, employees, successors and assigns, and all persons, firms and corporations in active concert or participation with them.

B.   Nothing contained in this Consent Decree shall be construed as a prohibition against transfer of the Downriver Collection and Treatment System from the County of Wayne to the Downriver Communities or to another entity, including an authority created for that purpose, for the construction, operation and maintenance of said System. Any such transferee of the Downriver System will be a successor of the County of Wayne for the purposes of this Consent Decree and the obligations issued thereunder.

C.   Transfer by All Defendants. If the Downriver Communities create an entity to undertake the County's obligations under the Decree, and the County transfers its obligations under this Decree to any such new entity or by any other method, the Downriver Communities (a/k/a "transferrors"), as well as the transferee, must certify to Plaintiffs that such entity or other transferee possesses the technical, managerial, and financial resources and expertise needed to comply with the terms of this Decree. Such certifications shall be enforceable by either

5

Plaintiff under this Decree and failure to provide required certification or failure in fact by any transferee to comply with this Decree shall remain a violation of the Decree by the transferror(s) except the County of Wayne which would no longer be liable under this Decree and either Plaintiff may pursue the transferror(s) for any relief, penalty, or enforcement allowed under the Decree.

D.   The undersigned signatories for each Party certify that, together, they: (1) are fully authorized to bind legally such Party to the terms and conditions of this Consent Decree, and (2) had the benefit of legal counsel in the course of deciding to sign this Decree.

## III.   DEFINITIONS

3.   Unless otherwise defined herein, terms used in this Consent Decree shall have the meanings given them in the Clean Water Act and the Michigan Water Resources Commission Act, in the regulations promulgated thereunder, and in NPDES Permit No. M10021156, including any revisions, modifications and successors thereto.

For purposes of this Consent Decree the following definitions shall apply:

A.   "Bypass" means the intentional diversion of waste streams from any portion of a sewage collection or treatment system, except as authorized by an applicable NPDES Permit.

B.   "Complaint" means the Amended Complaint filed in this action on October 26, 1988.

6

C.   "Combined sewage" means a combination of wastewater from residences, businesses, institutions and industries to which is (by design) intentionally added surface or storm waters.

D.   "Defendants" means Wayne County and the Downriver Communities.

E.   "Downriver Collection and Treatment System" means the pipes and structures, including channels, conduits, manholes, pumping stations and appurtenances, and treatment facilities, required to collect, transport and treat domestic and industrial wastes of the Downriver Communities that are tributary to the WWTP, and including the WWTP as well as the "Local Sewer System."

F.   "Downriver Communities" means the following thirteen communities or entities, plus the two following drainage districts, all of which are Defendants in this action: the City of Allen Park, City of Belleville, Township of Brownstown, City of Dearborn Heights, City of Ecorse, City of Lincoln Park, City of River Rouge, City of Riverview, City of Romulus, City of Southgate, City of Taylor, Township of Van Buren, City of Wyandotte, Southgate-Wyandotte Relief Drainage District, and Ecorse Creek Pollution Abatement Drain.

G.   "Dry weather flows" means wastewater flows (domestic, industrial, commercial and institutional), including infiltration, except those defined as wet weather flows under this Decree.

H.   "Enhanced primary treatment" means primary treatment enhanced through preaeration or mechanical flocculation with chemical addition.

I.   "Excessive", when used in reference to infiltration and inflow, means the quantities of infiltration/inflow which can be economically eliminated from a sewer system by rehabilitation, as determined by a cost-effectiveness analysis that compares the costs of correcting the infiltration inflow conditions with the total costs of transportation and treatment of the infiltration/inflow.

J.   "Headworks" means wastewater treatment plant preliminary treatment works, including pumping, screening and grit removal.

K.   "Infiltration" means the water entering a sewer system and service connections from the ground, through such means as, but not limited to, defective pipes, pipe joints, connections, and manhole walls.

L.   "Inflow" means the water discharged into a sewer system, including service connections, from such sources as, but not limited to, roof leaders, cellars, yard and area drains, foundation drains, cooling water discharges, drains from springs and swampy

7

areas, manhole covers, cross connections from storm sewers and combined sewers, catch basins, storm waters, surface run-off, street wash waters, and drainage.

M.   "Infiltration/Inflow" and "I/I" mean the total quantity of water from both infiltration and inflow.

N.   "Local Sewer System" means the portion of the Downriver Collection and Treatment System including pipes and structures, channels, conduits, manholes, pumping stations and appurtenances, for the collection and transport of domestic and industrial wastewaters that are tributary to the Downriver Collection and Treatment System, but which are owned and operated by entities other than Wayne County.

O.   "NPDES Permit" means National Pollutant Discharge Elimination System Permit No. MI0021156, issued to Wayne County in its own right and as agent for the Downriver Communities, and any NPDES permit issued to any other party Defendant to this civil action concerning treatment or discharge of wastewater in the Downriver Collection System, and all revisions, modifications and successors to any of the NPDES permits covered by this definition.

P.   "Operational" means the stage where construction has been completed and facilities have been put into operation and are meeting their design standards and any applicable effluent or other limitations.

Q.   "Overflow", "Combined Sewer Overflow", and "CSO", each means the discharge of combined sewage to a surface water, or the discharge of water from a pipe or conduit used for transporting combined sewage for treatment.

R.   "Plaintiffs" means the United States, on behalf of EPA, and the State of Michigan, on behalf of the Michigan Natural Resources Commission and the Michigan Department of Natural Resources ("MDNR").

S.   "Primary treatment" means the quiescent sedimentation of wastewater with skimming, collection, and removal of settled sludge, floating debris and grease.

T.   "SSES" means Sewer System Evaluation Survey, a report specifying the elimination of infiltration and inflow that is cost-effective, and the sewer rehabilitation and other improvements necessary to eliminate this infiltration and inflow.

U.   "Secondary treatment" means biochemical treatment of wastewater after primary treatment using bacteria to consume the organic waste as set forth in 40 CFR Part 133.

8

V.    "Unpermitted", when used in reference to bypass and overflow, means bypass and overflow events that are not expressly allowed under a NPDES permit or under 40 CFR 122.41(m).

W.    "Upset" means an exceptional incident in which there is unintentional and temporary non-compliance with technology based permit effluent limitations because of factors beyond the reasonable control of the permittee.  An upset does not include non-compliance to the extent caused by operational error, improperly designed treatment facilities, inadequate treatment facilities, lack of preventive maintenance, or careless or improper operation. See 40 CFR Section 122.41(n).

X.    "Wayne County" means the County of Wayne, a Michigan Charter County Corporation acting pursuant to the authority of the Wayne County Charter and applicable State law.

Y.    "Wet weather flows" means wastewater flows (domestic, industrial, commercial and institutional), including infiltration and inflow, that occur as a result of a precipitation or snow melt event.  For purposes of this Decree, wet weather flow shall include the period of time after the end of the rainfall event during which the system continues to transport or treat rainfall induced flows.

## IV. COMPLIANCE PROGRAM

4.    <u>Completion of all Planning, Design, Construction, and Performance Activities Specified in Attachment A.</u>  The facilities recommended in the multi-volume, project plan dated May 1, 1993, titled "Wayne County Downriver Collection System," in combination with Riverview's separately-submitted plan, entitled "Project Plan for Sanitary Sewer Improvements, City of Riverview" (collectively known as the "Project Plan"), are deemed submitted to Plaintiffs and hereby approved by Plaintiffs, and Defendants shall, as set forth herein, take all measures necessary to assure compliance with the Project Plan and this Consent Decree.  Defendants acknowledge that this approval does not constitute approval for State Revolving Fund ("SRF") loan assistance under Act 317, 1988, or approval of

9

plans and specifications under Act 98, 1913, and Defendants acknowledge that this approval, like all others under the Decree, is governed by paragraph no. 51 herein. Defendants shall commence and complete all activities -- including but not limited to planning, design, rehabilitation, contracting, construction, and performance certification -- listed in Attachment A hereto (a/k/a "Wayne County Downriver Collection and Treatment System: Engineering Project Schedule; December 15, 1993,") and, except as specified differently in the text of this Decree, Defendants shall commence and complete all the activities listed in Attachment A by the deadlines set in Attachment A. In some instances items listed in Attachment A are described in more detail in the Consent Decree. In those instances, Defendants shall commence and complete all activities by the deadlines established in this Decree. If in any instance a deadline imposed in the text of this Decree conflicts with a deadline established by Attachment A, the date set in the text of this Decree shall control. If in any instance Attachment A provides for some activity not only a "start" or "finish" date but also a "late start" or "late finish" date, the earlier date shall be deemed the deadline imposed by the Decree, unless the text of the Decree provides otherwise.

5.   <u>Sewer Rehabilitation and Elimination of I/I</u>

A.   <u>Sewer System Evaluation Surveys (SSES) and F. I. Monitoring Reports</u>. Pursuant to paragraph no. 11 below, Plaintiffs shall review all SSES's submitted by Defendants, all of which have been submitted.

10

B.   <u>After SSES Approval</u>.  Within 180 days after approval of the SSES's, Defendants shall submit to Plaintiffs proposed Rehabilitation Plans and Specifications for Wayne County and the following Downriver Communities: City of Allen Park, City of Belleville, Township of Brownstown, City of Dearborn Heights, City of Ecorse, City of Romulus, City of Southgate, City of Taylor, and Township of Van Buren.  The Rehabilitation Plans and Specifications shall be consistent with the recommendations set forth in the approved SSES Reports, and shall eliminate excessive I/I.

C.   On or before October 1, 1995, Defendants shall complete the facilities and measures described in the approved Rehabilitation Plans and Specifications, and shall provide to the Plaintiffs, for each Defendant listed in subparagraph B of this paragraph, (1) a written certification by a Professional Engineer that all the facilities and measures contained in the Rehabilitation Plans and Specifications have been completed in accordance with the provisions of the Plans and Specifications and this Consent Decree and, (2) upon request, supporting documentation.

D.   On or before April 1, 1995, Defendants shall submit to Plaintiffs a proposed Project Certification Flow Monitoring Program ("FMP"), including a cost estimate and schedule for implementation of the FMP.  The FMP shall be developed to measure remaining flows and provide input to the Downriver Hydraulic Model

11

to verify or refine the proposed size of the Storage-Transport System (paragraph no. 7 below). Upon approval by Plaintiffs, Defendants shall implement the FMP.

E.   On or before April 1, 1996, Defendants shall submit to Plaintiffs a Report identifying in detail the findings of the completed FMP and making recommendations as to the sizes necessary for the Storage-Transport System to, at a minimum, transport all wastewater up to the design flow of the Downriver Collection and Treatment System for treatment without bypass or overflow to achieve and maintain continuous compliance with NPDES Permits, Clean Water Act and WRCA.

6.   Upgrade of Wayne County-Wyandotte Treatment Plant ("WWTP")

A.   Wayne County shall, on or before February 1, 1994, submit to Plaintiffs a proposed Wayne County-Wyandotte WWTP Improvement/Expansion Program ("WWTP Improvement/Expansion Program") which shall set forth how Wayne County shall achieve, among other things, the following:

      (i)   Installation of improvements to the high purity oxygen system so as to meet final NPDES dissolved oxygen (DO) and phosphorus limits by May 1, 1994. To accomplish this requirement, Wayne County shall, at a minimum, renovate the existing pressure swing absorption system by May 1, 1994.

      (ii)   An evaluation of the new chlorine flash mix eductor system and a determination of the effectiveness of the mixer on disinfection and total residual chlorine (TRC) to be completed and submitted to Plaintiffs in a report by January 31, 1994. (See subparagraph 6.B below.)

12

(iii)    At a minimum, completion of installation of WWTP Dechlorination Facilities for TRC by June 1, 1996, and achievement of a TRC of 0.5 mg/l by June 1, 1996. Commencing June 1, 1996, the period of disinfection specified in the final NPDES permit limits shall be in effect.

(iv)    Improvements to the chlorine contact tank to meet final NPDES limits for TRC by October 1, 1999.

(v)    Improvements to the WWTP to increase reliability and performance of the facilities. Wayne County shall meet final CBOD & TSS NPDES permit effluent limits on or before October 1, 1997. Wayne County shall complete construction of WWTP improvements to the existing facilities on or before October 1, 1997 to increase the performance reliability of the WWTP. These improvements shall, at a minimum, include improvements to the headworks, solids handling facilities, and maintenance facility.

(vi)    Establish secondary treatment capacity to provide secondary treatment to a minimum of 100 MGD, with the goal of 115 MGD, by October 1, 1999. To achieve this requirement, on or before October 1, 1994, Wayne County shall, at a minimum, conduct a field stress test of the secondary treatment facilities at the WWTP for purposes of determining the existing secondary system capacity. Following these tests, a basis of design shall be prepared recommending any necessary modification to the Project Plan.

(vii)    Provide WWTP facilities expansion including Chemically Enhanced Primary Treatment (C.E.P.T.) facilities to achieve final NPDES limits by October 1, 1999, and an overall treatment capacity for flows up to 146.5 MGD by October 1, 1999. To achieve this requirement, on or before October 1, 1999 Wayne County shall, at a minimum, construct the expansion to the WWTP needed consistently provide chemically enhanced primary treatment of flows up to 146.5 MGD. Further, by October 1, 1999, Defendants shall, at a minimum, construct chemically enhanced treatment facilities, yard piping, pump station renovation, chemical feed equipment and an additional primary clarifier.

13

(viii)   Provide for preliminary treatment (screening, grit removal and disinfection) of all flows over 146.5 MGD, and meet all NPDES permit limits and conditions, by October 1, 1999. To achieve this requirement, on or before October 1, 1999, Wayne County shall, at a minimum, construct measures to provide such preliminary treatment and discharge of flows in excess of 146.5 MGD. Further, Wayne County shall, at a minimum, construct a headworks facility, and yard piping in accordance with required approvals, and make changes in plant operation so that only discharges permitted under its NPDES permit occur. Wayne County shall construct an outfall to the Detroit River, as described in Section Four of the Project Plan, unless an alternative solution is proposed by all the Defendants and the Plaintiffs then approve the proposed alternative solution.

In the WWTP Improvement/Expansion Program, Wayne County also shall include a schedule for completion of each measure and each component within each measure, and shall also include detailed cost estimates.

B.   Wayne County shall complete the chlorine report referenced in paragraph 6.A(ii) above and submit it to Plaintiffs by January 31, 1994. The report also shall include a comparative analysis of the disinfection provided by the contact in the outfall pipe, and of a sample held in the laboratory for the similar contact period. The sampling procedures for determining compliance with final permit limits for fecal coliform shall be determined by Plaintiffs. In addition, in this report Wayne County shall propose for approval by Plaintiffs an interim total residual chlorine (TRC) limit, which Defendants shall comply with commencing May 1, 1994, and continuing until the Dechlorination Facilities are completed.

14

C.   Within thirty (30) days following the fixed deadline for each required submission or activity as described in the WWTP Improvement/Expansion Program, Defendants shall provide to Plaintiffs (1) a written certification by a Professional Engineer that all provisions specified in subparagraph nos. 6.A (i), (ii), (iii), (iv), (v), (vi), (vii), and (viii) above herein have been completed and, (2) upon request by Plaintiffs, supporting documentation.   Written Certification shall include the dates of completion of each requirement in the WWTP Improvement/Expansion Program.

D.   On or before October 1, 2000, Defendants shall complete all construction and improvements set forth in the WWTP Improvement/Expansion Program and provide to Plaintiffs written certification by a Professional Engineer of this fact.

7.   <u>Regional Storage – Transport System</u>

A.   Defendants shall design and build a regional storage-transport system and various local collection system relief sewer facilities in accordance with the approved FMP Report and the provisions specified below.   The storage-transport system and relief facilities shall be of sufficient capacity such that the sewage will be transported for treatment in compliance with the requirements of any applicable NPDES permits, the Act, and the WRCA.

B.   On or before October 1, 1996, Defendants shall submit to Plaintiffs a Basis of Design for the final design of the Wayne County Storage-Transport System Improvement and Local Relief Program ("STP"), consistent with the approved FMP Report. The plan for the final design of the STP shall include a cost estimate. A

15

detailed description of each component, and a schedule to complete each measure.   The schedule shall provide for commencement of construction on or before October 1, 1998, and completion of construction by no later than October 1, 2001.   The STP shall be consistent with the conclusions set forth in the FMP, including any modifications directed by Plaintiffs, and shall identify STP facilities to be constructed including:

      (i)     Storage tunnel pipe, sewers, diversion structures from the existing collection systems and flushing mechanisms for solids removal;

    (ii)     On-line detention basins;

   (iii)     Local collection system relief sewers where necessary; and

    (iv)     New Pump Station at the terminus of the storage tunnel pipe.

      C.    Within one year after completion of construction required under subparagraph A above, Defendants shall provide to Plaintiffs written certification, by a Professional Engineer, that construction of the STP improvements has been completed and that the collection and storage-transport systems are completely operational and perform as designed.   Written certification shall include the dates of completion of each requirement in the STP and any supporting documentation requested by Plaintiffs.


      8.    **Final Project Certification or CAP**.   On or before October 1, 2002, Defendants shall provide written certification (reviewed and approved by a Certified Professional Engineer) that all construction and other improvements required by this Consent Decree have been completed, are fully operational, and that Defendants can

now achieve full compliance with the final effluent limits in the NPDES Permit, and all other provisions of the NPDES permit, the Clean Water Act and the Water Resources Commission Act.    If Defendants cannot certify such full compliance, Defendants shall, on or before October 1, 2002, propose a Corrective Action Program (CAP) which identifies the additional facilities, equipment, and improvements, with associated costs and an expeditious implementation schedule, which Defendants will undertake to achieve full compliance.    In the proposed CAP Defendants shall indicate which final effluent limits are not as yet achievable and propose interim limits (if necessary) until the CAP is completed.    Upon approval of the CAP by the Plaintiffs, Defendants shall implement the CAP pursuant to the approved schedule.

9.    Effluent Discharge Limits

A.    Interim. Commencing upon effective date of this Decree and continuing through the deadlines for meeting final limits as specified in paragraph no. 6, Defendants shall comply with the interim effluent limits specified in Attachment B hereto, which is incorporated herein by reference.  As to any parameters listed in Attachment B but not specifically addressed in paragraph no. 6, Defendants shall comply, upon the effective date of this Decree, with the interim effluent limits specified in Attachment B.

B.    Final Limits. Commencing on the deadlines specified in paragraph 6 for DO, phosphorus, CBOD, TSS and TRC, and

17

commencing October 1, 2002, for all other parameters (or earlier or later as modified by paragraph 8), Defendants shall maintain compliance with all final effluent limits then in place under any NPDES Permit applicable to the WWTP. In the case of NPDES permit limits that have been appealed under any applicable provision of federal or state law where such law allows such appeal, and where the result of such appeal is imposition of a stay of the effluent limit(s) by a court or administrative agency jurisdictionally competent to issue such stay, the stayed limit(s) shall not be considered final for purposes of this Decree until such stay has been lifted or otherwise dissolved. In such a situation, Defendants shall continue to comply with the applicable interim effluent limit. Pursuant to paragraph 8, the October 1, 2002, date for compliance with all other final effluent limits (i.e., other than DO, phosphorus, CBOD, TSS and TRC) is revised to the date when the Final Project Certification is submitted if such submission occurs prior to October 1, 2002; the October 1, 2002, compliance date shall be extended pursuant to the terms of any approved CAP.

10.  <u>Wastewater Treatment Bypasses and Their Elimination</u>

A.  <u>No Dry Weather Bypasses</u>. Immediately upon lodging of this Consent Decree, Defendants are prohibited from any and all bypassing of any aspect of the Downriver Collection and Treatment System during dry weather periods.

B.  <u>Best Efforts to minimize interruption of WWTP operations and any potential or resulting, bypass, overflow, effluent exceedance or other harm</u>. In conducting the work required by this Decree, Defendants may from time to time find it necessary

18

to interrupt WWTP operations.  Defendants shall make their best efforts to schedule any necessary interruptions in order to minimize the possibility and extent of any bypass or overflow, any exceedance of effluent limitations, and any adverse environmental impacts.  This subparagraph does not authorize or excuse any bypass, overflow, or exceedance of effluent limits.

C.  <u>Bypass Points through September 30, 2002: Elimination of Points, Limits on Use and Duty to eliminate or reduce bypasses, and Right of Defendant to maintain and use particular bypass points under conditions and limits</u>.  Beginning upon entry of this Consent Decree and through September 30, 2002, Defendants shall eliminate or reduce all bypasses to the "maximum extent practicable," including but not limited to diversions of flow at the 8th Street gate to the Southgate-Wyandotte CSO facility.  For purposes of this paragraph "maximum extent practicable" means that Defendants shall at all times use the available capacity of the WWTP and, as necessary, utilize all available collection and storage capacity.  Notwithstanding the foregoing mandate of this subparagraph to eliminate bypass points, Defendants may maintain and use the bypass points listed in Attachment C to the Decree as nos. 1.0, 2.1, 3.0., 3.1, 3.2, 3.3, 3.4, 3.5, 4.0, 4.1, 4.2, 4.3, 5.1, 6.1, 6.2, 8.0, and 10.1, up to but not including October 1, 2002, unless the defendant responsible for such bypass point has agreed or otherwise stated in writing to MDNR or EPA that such bypass would be eliminated by a date prior

19

than October 1, 2002, -- in which case such bypass must be eliminated by that earlier date and failure to do so shall constitute violation of this Decree.   For those bypass points allowed under this subparagraph, Defendants must to the "maximum extent practicable" minimize bypasses from these bypass points.

D.   Bar on Bypasses After September 30, 2002: Commencing October 1, 2002, and at all times thereafter, Defendants shall not allow any bypass of any untreated wastewater, except for emergency bypasses allowed pursuant to 40 C.F.R.   Section 122.41(m), or as further specified in subparagraphs F.(i), F.(ii), or F.(iii), and subject to the conditions and entitlements contained in those subparagraphs or elsewhere in this paragraph 10.   The decision to allow an emergency bypass shall be made only by the central authority pursuant to subparagraph G. below.

E.   Duty to Remove or Seal Bypass Points.   On or before October 1, 2002, Defendants shall remove or seal all unpermitted bypass points in the Downriver Collection and Treatment System except those bypass points allowed under the requirements, conditions, and entitlements of subparagraph F. below.

F.   Bypass Points Allowed and Conditions for Allowance and Use After September 30, 2002, Per Subparagraph 10.D.   Subject to the conditions set out herein, Defendants may leave in place emergency bypass points on the Downriver Collection and Treatment System.   The conditions and requirements for selection of these bypass points are set out herein:

20

(i)   <u>Bypass Points to Protect Treatment Plant and Downriver Collection and Treatment System</u>.   Based on flow data and any other technically pertinent information (either extant or developed by Defendants for purposes of this Decree), Defendants may use as emergency bypass points on the Downriver Collection and Treatment System the discharge points identified as nos. 8.0 and 10.1 in Attachment C to the Decree.   These two bypass points may be used for the exclusive purposes of saving human life, protecting public health, or mitigating severe damage to the Downriver Collection and Treatment System, in the event of inflows in excess of the capacities for which the Downriver Collection and Treatment System will be upgraded by the design and construction provided for under paragraph numbers 4 through 7 of this Decree.   Any bypass using any of the bypass points specified in this subparagraph F.i constitutes a bypass entitling Plaintiffs to stipulated penalties under the stipulated penalty provisions set out in the Decree, including but not limited to Paragraph 19.

(ii)  **Nothing in this Decree shall be construed to require Defendants to seal any of the emergency, sanitary equalization basin bypasses identified in Attachment** C to **the Decree as location nos. 2.0, 3.5, 4.0, and 9.0 so long as such bypass point has been or is approved in the**

21

course of issuing the necessary Act 98 construction permit for the sanitary equalization basin that contains the bypass.

(iii) The emergency relief bypass points identified in Attachment C to the Decree as location nos. 2.1, 3.0, and 3.1 may be maintained and used on the terms set forth in Paragraph 10 of the Decree, including the following: these bypass points may be used for the exclusive purposes of saving human life, protecting public health, or mitigating severe damage to property. Any bypass using any of the bypass points specified in this subparagraph F.iii constitutes a bypass entitling plaintiffs to stipulated penalties under the stipulated penalty provisions set out in the Decree, including but not limited to Paragraph 19.

(iv) Any emergency bypass point allowed under subparagraph F must be monitored, operated, and otherwise handled in compliance with subparagraph G below.

G.   On or before October 1, 2002, Defendants shall complete and implement the following requirements, and submit a report detailing the achievement of these items:

(i)   Designate a (single) central authority to make the determination to operate any and all bypasses;

(ii) Implement real time monitoring to display the status of the Downriver Tunnel Sewer System to the central authority; and

22

(iii)   Prepare an evaluation of new and innovative technology which could be implemented in order to eliminate or further reduce the need for maintaining emergency bypasses.

H.   Nothing in this Decree shall be construed to require that Defendants seal any Combined Sewer Overflow ("CSO") point including those identified in Attachment C to this Decree as Nos. 1.0, 1.1, 6.0, 7.3, 10.0, 10.2, and 11.0, during any time such point is permitted under a final, effective, and valid NPDES Permit issued to any of the Defendants, nor shall anything in the Decree be construed to alter any independent requirement of law, regulation, order, or permit directed at the control, operation, use, or closure of any CSO.

11.   <u>Review of Plans and Reports</u>

A.   Plaintiffs shall review as expeditiously as practicable all plans submitted by Defendants and shall approve, or disapprove and recommend modifications and/or make comments, to each.  Such plans and reports to be reviewed, include, but are not limited to: SSES's, to ensure that they, <u>inter alia</u>, address the results of the I/I Flow Analyses that Defendants previously submitted to the State, including the identification of locations and sources of I/I, and the most cost-effective means to eliminate excessive I/I; Rehabilitation Plans and Specifications; Certifications of Completion of Implementation of Rehabilitation Plans; the FMP; FMP Reports; the proposed Sewer Improvement/Expansion Program; the STP Plan; and any Corrective Action Plan.  MDNR shall have lead responsibility for providing

23

Defendants with comments from the Plaintiffs on such plans, and unless indicated otherwise by MDNR or in a separate written response from EPA, MDNR's response shall be construed as reflective of the Plaintiffs' response. After receipt of any comments, modifications or notification of reasons for disapproval by Plaintiffs, and except as provided in paragraph D below, Defendants shall expeditiously submit to Plaintiffs revised plans or other documents which incorporate the modifications and address the comments received from Plaintiffs.

B.  Defendants shall submit these revised plans and other documents by the date set forth in Plaintiffs' comments or notification. If Defendants believe that the specified time frame is insufficient, they may seek from Plaintiffs additional time, based on a showing that such additional time will provide for completion as expeditiously as practicable under the circumstances.

C.  When each plan is approved, Defendants shall carry out each and every provision of such plan in accordance with the schedule therein. To the extent authorized in writing by Plaintiffs, Defendants may complete any portions of the plans approved by Plaintiffs prior to approval of the full plan.

D.  If Defendants object to any disapproval, comment or recommended modification by Plaintiffs to any plan or other document required pursuant to this Consent Decree, then within thirty (30) days of receipt of a Plaintiff's comment or recommended modification, Defendants may propose to Plaintiffs an alternative.

If Plaintiffs reject the proposed alternative, then Defendants shall either incorporate Plaintiffs' modification or other change or, within twenty (20) days of such rejection, file with the Court a petition for dispute resolution pursuant to Section X. below to determine the appropriate revision to the plan. In any such dispute, Defendants shall bear the burden of establishing that their proposed alternative should be adopted instead of Plaintiffs' position.

12.  Operation and Maintenance

A.    The Defendants shall maintain and operate the WWTP and the Downriver Collection and Storage System to minimize equipment breakdowns, interruptions of treatment, and bypasses and overflows.

B.    The parties recognize that interruptions in the operation of the plant may be necessary during the period when improvements to the plant are being made. Wayne County shall make best efforts to schedule any necessary interruptions to minimize the possibility and extent of any bypass, overflow, exceedances of effluent limitations, and adverse environmental impacts.

C.    Not later than ninety (90) days after the award of contracts for construction on the WWTP Improvements under paragraph no. 6 above, the County shall submit to Plaintiffs for their approval a Plan for Construction. That Plan shall identify the interruptions in treatment anticipated throughout the construction activities, and measures to minimize the number and duration of an,

25

interruptions and any adverse impact of any interruption. Defendants shall modify the Plan to address any comments received from Plaintiffs.

D.   During construction, the County shall give at least five (5) days notice to the MDNR of all planned interruptions of plant operations, by telephone call to the MDNR Southeast Michigan District Office at (313) 953-1451, or, in the alternative, at (313) 953-0241, or, in the event neither of the preceding numbers effects the necessary communication, at any alternate number specified for that purpose by the MDNR from time to time.   A written report confirming the interruption shall be delivered to EPA and MDNR within ten (10) days of any bypass or interruption.

E.   Nothing in this Section, including notification under this Section, will excuse any failure by Defendants to comply with any requirement of this Decree.

F.   Defendants shall submit to Plaintiffs for their approval proposed Operation and Maintenance ("O & M") Manuals in accordance with the following schedule:

> (i)   October 1, 1999: O & M Manual for the Wayne County-Wyandotte WWTP; and
>
> (ii)  July 1, 1998: O & M Manuals for the Local Sewer System and all other portions of the Downriver Collection and Treatment System.

G.   Each of the O & M Manuals shall include, but not be limited to, the following: mandatory training, routine inspections, replacement of parts, and operation procedures.

H.   Upon approval or modification by Plaintiffs, Defendants shall implement the O & M manuals in accordance with the schedules and other provisions therein.

I.   Within thirty (30) days after approval of an O & M Manual, Defendants shall submit to Plaintiffs for their approval O & M Work Plans.  In addition, on or before October 1 of each year, Defendants shall submit to Plaintiffs for approval updated Work Plans containing the plan for implementation of the O & M program during the following calendar year.

J.   The Work Plans shall include, <u>inter alia</u>, the following:

(i)     a schedule for the systematic and regular inspection of the Downriver Sewage Collection and Transport System, to ensure that the integrity of the system is maintained and that it is operated in optimal conditions;

(ii)    a schedule and method for rehabilitation to remove all excessive infiltration/inflow sources found during the inspections;

(iii)   identification of the mechanism that will be used to ensure that sufficient funds are available at all times to correct excessive I/I sources and/or structural defects within the sewage collection and transport system;

(iv)    development of a projected annual O & M budget for the next five years including projected funding sources; and

(v)     development of an operational plan which includes a system inventory, administrative controls, system maintenance, and operational control strategy.

K.   Upon approval by Plaintiffs, Defendants shall implement the O & M Work Plans in accordance with the schedules and other provisions therein.

L.    On or before October 1, 1996, Defendants shall develop and submit to Plaintiffs a proposed System Monitoring Program (SMP).  The purposes of the SMP include but are not limited to:

(i)      Providing means to measure individual community flow contributions and to monitor community flows with respect to allocated capacities in the facilities;

(ii)     Providing means to measure flow and provide input to the Downriver Hydraulic Model on an annual basis to verify and ensure the effectiveness of the sewer rehabilitation program;

(iii)    Providing means to alert the WWTP operators of levels which indicate a potential for system overflows/bypasses;

(iv)     Providing means to correlate climatological data and the systems' responses to wet weather events, including events involving an overflow or bypass; and

(v)      Providing means to track individual community and County flow contributions for issuance of Act 75 sewer construction permits.

M.    Defendants shall submit to Plaintiffs a summary report of the SMP data annually or at such other intervals as the parties determine necessary.  Upon completion of the construction required under paragraph nos. 5 - 7, Defendants shall submit to Plaintiffs a summary report of the SMP data at least once per month.  If any bypass occurs, an Event Report shall be prepared summarizing the reasons for the occurrence and supporting climatological and other documentation.  Submittal of a report shall not excuse any bypass or overflow in violation of any NPDES permit, this Consent Decree, the Clean Water Act or the Water Resources Commission Act.

## V.   STIPULATED PENALTIES

13.   <u>Accrual, Demand, and Timing of Payment</u>.  Within 45 days of receiving a written demand from either Plaintiff, Wayne County shall pay stipulated penalties imposed under this Decree and addressed by the written demand.  Stipulated penalties under this Decree begin to accrue on the first day of violation, and accrue regardless of whether or when Plaintiffs demand payment, but become due only upon written demand by either Plaintiff as specified above.   Any written demand by either Plaintiff for stipulated penalties shall be sent to each person or office listed in Attachment D to this Decree.

14.   <u>Interim Effluent Limits</u>. Commencing on the lodging of this Consent Decree for all parameters except fecal coliform and TRC, and commencing July 1, 1996 for fecal coliform and TRC, if Defendants fail to comply with any effluent limitation set forth by this Consent Decree in Attachment B hereto, Wayne County shall pay stipulated penalties as set forth in the table below for violation of each parameter.

| VIOLATION FOR EACH PARAMETER | 5 TO 25% OVER INTERIM LIMIT | 26 to 99% OVER INTERIM LIMIT | %100 or more OVER INTERIM LIMIT |
|---|---|---|---|
| Daily Effluent | $400 per day | $1,500 per day | $2,000 per day |
| 7-day average | $1,000 per week | $4,000 per week | $5,000 per week |
| 30 day average | $2,000 per month | $7,500 per month | $10,000 per month |

29

15.  <u>Final Effluent Limits</u>.  If Defendants fail to comply with any final effluent limitations by the dates set forth in Paragraph 9, Wayne County shall pay stipulated penalties as follows for violation of each parameter:

| <u>Violation of Each Parameter</u> | <u>Penalty</u> |
|---|---|
| Daily Effluent Limitation | $ 2000 per day |
| 7-Day Average Limit | $ 5000 per week |
| 30-Day Average Limit | $10,000 per month |

16.  <u>Deadlines Related to Paragraph 7 Regional Storage - Transport Obligations that are Subject to Stipulated Penalties</u>.  If Defendants fail to meet the deadlines set forth below that relate to the obligations of paragraph 7 of this Decree, Wayne County shall pay stipulated penalties as follows:

A.  For failure to initiate "Segment 1, Community Sewer Rehabilitation, Certification Flow Monitoring Program, pursuant to paragraph 5 requirements on or before September 1, 1995, stipulated penalties shall apply as follows for each day such initiation was delayed or untimely:

| <u>Period of Failure to Comply</u> | <u>Penalty Per Day of Noncompliance</u> |
|---|---|
| 1st to 15th day | $ 1500 per day per violation |
| 16th to 30th day | $ 2500 per day per violation |
| After 30 days | $ 4000 per day per violation |

B.  For each day after October 1, 1998, on which the physical, on-site construction required under paragraph 7 has not commenced, stipulated penalties shall apply as follows:

| <u>Period of Failure to Comply</u> | <u>Penalty Per Day of Noncompliance</u> |
|---|---|
| 1st to 15th day | $ 1500 per day per violation |
| 16th to 30th day | $ 2500 per day per violation |
| After 30 days | $ 4000 per day per violation |

C.  For each day after October 1, 2001, on which all construction called for under paragraph 7 has not been in all respects completed, stipulated penalties as follows

30

| Period of Failure to Comply | Penalty Per Day of Noncompliance |
|---|---|
| 1st to 15th day | $ 1500 per day per violation |
| 16th to 30th day | $ 2500 per day per violation |
| After 30 days | $ 4000 per day per violation |

17.   Deadlines Related to WWTP Obligation (Paragraph 6 of this Decree) that are Subject to Stipulated Penalties.   If Defendants fail to meet the deadlines set forth below, Wayne County shall pay stipulated penalties as follows:

A.   If defendants fail to submit to plaintiffs completed, substantively adequate documents called for under Paragraph 6.A, 6.B, or 6.C, stipulated penalties shall apply as follows for each day such document was submitted untimely or remains in an substantively inadequate state:

| Period of Failure to Comply | Penalty Per Day of Noncompliance |
|---|---|
| 1st to 15th day | $ 1500 per day per violation |
| 16th to 30th day | $ 2500 per day per violation |
| After 30 days | $ 4000 per day per violation |

B.   For each day after October 1, 1997, on which the physical, on-site construction required by the approved WWTP Improvement/Expansion Program has not commenced, stipulated penalties as follows:

| Period of Failure to Comply | Penalty Per Day of Noncompliance |
|---|---|
| 1st to 15th day | $ 1500 per day per violation |
| 16th to 30th day | $ 2500 per day per violation |
| After 30 days | $ 4000 per day per violation |

C.   For each day after October 1, 2000, on which all construction set out in the approved WWTP Improvement/Expansion Program has not been completed in all aspects, stipulated penalties shall apply as follows:

| Period of Failure to Comply | Penalty Per Day of Noncompliance |
|---|---|
| 1st to 15th day | $ 1500 per day per violation |
| 16th to 30th day | $ 2500 per day per violation |
| After 30 days | $ 4000 per day per violation |

31

18.  Incomplete, Inadequate, and/or Untimely Submittal of Reports Under Paragraph No. 30. If any report or other submittal required under Paragraph 30 is improper, either because the report or other submittal is untimely or because such submittal fails to meet the substantive requirements of that paragraph, Wayne County shall pay stipulated penalties for each day such submittal was untimely or substantively incomplete or inadequate, or remained incomplete or inadequate, pursuant to the stipulated penalty schedule set out below:

| Period of Failure to Comply Either in Substance or Schedule for Submission | Penalty Per Day of Noncompliance |
|---|---|
| 1st to 15th day | $ 250 per day per violation |
| 16th to 30th day | $ 500 per day per violation |
| After 30 days | $ 1000 per day per violation |

19.  Bypasses.  If there are any bypasses in violation of subparagraph 10.A, 10.D, 10.E, 10.F, as well as any bypasses under subparagraph 10.F entitling Plaintiffs to stipulated penalties, Wayne County shall pay stipulated penalties as follows:

| Number of Days of Any Bypass | Penalty Per Day of Noncompliance |
|---|---|
| 1st to 20th day | $ 2000 per day per violation |
| 21st to 35th day | $ 4000 per day per violation |
| After 35th day | $ 5000 per day per violation |

For counting the number of days of bypass for stipulated penalty purposes, each location where a bypass occurs shall be considered as a separate and distinct bypass. For counting "days" of bypasses, twenty-four hour periods (where the twenty-four hour period is triggered by time at which a bypass commences at any location) shall be used rather than calendar days. For purposes of calculating stipulated penalties, the number of days of all bypasses shall accumulate under one running tally for the life of the Decree.

32

20. If Defendants fail to complete the certification requirement set forth in paragraph 8 or to submit a completed, substantively adequate Corrective Action Plan by October 1, 2002, Wayne County shall pay a stipulated penalty of $1,500 per day until such time that the obligation is fully satisfied.

21. Within thirty (30) days after any violation or potential violation for which stipulated penalties accrue or may accrue under this Decree (regardless of whether Defendants believe that no stipulated penalty is due), Defendants shall provide Plaintiffs written notification of the violation or potential violation, and the stipulated penalties accrued or potentially accrued (including a citation to the Decree paragraph violated or potentially violated). Written notification under this paragraph shall be independent of and in addition to any other reporting requirement under this Decree.

22. All stipulated penalties due and payable under this Consent Decree shall be paid by cashier's or certified check, or by electronic fund transfer in accordance with the procedures set out paragraph 29 below. Of the payment, fifty percent shall be paid the State of Michigan, and fifty percent to the United States.

23. Payments to the State shall be in the manner set forth paragraph no. 27, but provided that no installment or time payment options apply to payment of stipulated penalties and any untimely payment of stipulated penalties shall accrue interest under U.S.C. Section 1961 for period from the date the penalties were until the time of actual payment.

33

24. Payments to the United States shall be payable in the manner set forth in paragraph 27 below, but provided that no installment or time payment options apply to payment of stipulated penalties and any untimely payment of stipulated penalties shall accrue interest under 28 U.S.C. Section 1961 for period from the date the penalties were due until the time of actual payment.

25. The stipulated penalties provided for in this Decree shall be in addition to any other remedies or sanctions available to Plaintiffs by reason of Defendants' failure to comply with the requirements of this Decree, any applicable NPDES Permit, the Clean Water Act, the WRCA, or the regulations promulgated under the Act or the WRCA. The United States and the State each reserve, without limitation, their rights to seek monetary and injunctive relief pursuant to the Act, the WRCA, or the contempt powers of the Court. However, in any instance where the United States has demanded and timely received payment of stipulated penalties so demanded, the United States will not then seek additional civil penalty for that same violation under the civil penalty provision of the federal Clean Water Act. Similarly, in any instance where the State of Michigan has demanded and timely received payment of stipulated penalties so demanded, the State will not then seek additional civil penalty for that same violation under the civil penalty provision of the WRCA or the federal Clean Water Act. Prior to either Plaintiff's issuing a written demand for stipulated penalties, that Plaintiff considering issuing such a demand shall first consult with its Co-Plaintiff to decide whether such stipulated penalty demand should be issued. Neither Plaintiff

34

shall issue such a demand unless Plaintiffs decide that it shall be issued on behalf of both.

## VI.   CIVIL PENALTY

26.   Wayne County shall pay a civil penalty of $413,000.00, in resolution of the Plaintiffs' civil judicial claims for penalties as alleged in the Complaint.   The civil penalty shall be paid in one of the two options set forth in the following Subparagraphs 28.A and 28.B, and Defendants are deemed to elect between them by their actions.

27.   Split of Payment Between Plaintiffs.   Payment of fifty percent of the civil penalty (either of each installment or of a one-time payoff) shall be to the United States, by cashier's or certified check (except as otherwise specified in Section VI of this Decree) made payable to the "Treasurer of the United States of America," and tendered to the Office of the United States Attorney for the Eastern District of Michigan, 231 West Lafayette St., Detroit, Michigan 48226.   The check shall bear a notation to the civil docket number of this action.   Concurrently with sending the check, a copy of the check shall be sent to the EPA Region V Water Division, and to the United States Department of Justice, at the addresses specified in Section VIII of this Consent Decree. Payment of fifty percent of the civil penalty (either of each installment or of one-time payoff) shall be to the State of Michigan, by cashier's or certified check made payable to the "State of Michigan," and tendered to the Assistant-in-Charge, Environmental Protection Division, Office of the Attorney General, P.O. Box 30212, Lansing, Michigan 48909.   The check shall bear a notation of

the civil docket number of this action. Concurrently with sending the check, a copy of the check shall be sent to the Michigan Department of Natural Resources, Surface Water Quality Division, Compliance and Enforcement Section, at the address specified in Section VIII.

28. _Options for Payment_. Defendants must pay the civil penalty by either one or the other of the options specified in this paragraph.

A. _Payment Option One_. Defendants may pay the civil penalty ($413,000) to Plaintiffs in lump sum (fifty percent of the lump sum to each Plaintiff) within sixty days of the entry of the Decree, and if Defendants make such payment within that time period, where "making payment" means receipt of the checks by Plaintiffs and / or confirmation of electronic fund transfer, then Defendants are not obligated to pay any interest on the civil penalty. If Defendants do not make payment within the time described in this Subparagraph 28.A, then they shall be deemed to have selected Payment Option Two, below, including all terms and conditions of Payment Option Two, including but not limited to payment of interest.

B. _Payment Option Two_. Consistent with the installment schedule and acceleration provision set out in this Subparagraph 28.B, Defendants shall have through December 31, 1995 to pay the total civil penalty, with interest running on any and all unpaid balances that exist after January 1, 1994,

36

and interest shall accrue at the rate set out in 28 U.S.C. Section 1961. Defendants may pay any or all penalty amounts in advance of the schedule set out herein without suffering any additional penalty as a result of such early payment. The schedule for installment payments is as follows: one-half of the civil penalty, with any and all accrued interest, shall be paid on or before December 31, 1994; and one-half of the civil penalty, with any and all accrued interest, shall be paid on or before December 31, 1995. If any installment payment is not received by Plaintiffs within 21 calendar days after its due date (as set by the installment payment dates established in this subparagraph), all remaining civil penalty installments (including any and all interest) shall be immediately due, owing, and paid to plaintiffs.

29. If Defendants elect to pay by electronic fund transfer any portion of the civil penalty owed to the United States or the State of Michigan, Defendants may do so. Upon request, the United States and the State will supply Wayne County with any coding or address information needed by Defendants to effect an electronic fund transfer.

## VII.   REPORTING REQUIREMENTS

30. Reporting on Compliance Activities:

A. Beginning with the first full calendar quarter after entry of this Consent Decree, and for every calendar quarter

37

thereafter until termination of this Consent Decree in accordance with Section XXIV. below, Defendants shall submit to Plaintiffs a written progress report.  Each quarterly report shall be submitted no later than the last day of the month following the close of the quarterly reporting period.   Each report shall contain the following information for that quarter:

      i.    the status and progress of the preparation of plans and construction of improvements required under Section IV above;

      ii.   a projection of the work to be performed under Section IV during the next two calendar quarter; and

     iii.   identification of any items that might affect timely completion of requirements under Section IV above.

Notification pursuant to this paragraph shall not excuse any failure to timely perform any requirement of this Decree.

    B.   Within ten (10) days following the deadline for any requirement under Section IV of this Consent Decree, Defendants shall submit to Plaintiffs written notice that the action has been taken or completed, as required.  If the action has not been taken or completed as required, Defendants shall submit written notice to Plaintiffs stating the reasons for any failure to timely complete a requirement, and the probability of meeting the next deadline in the schedule.  The notice shall also describe the actions to be taken or that are being taken to return the program to schedule. Notification pursuant to this paragraph shall not excuse any failure to timely perform any requirement of this Consent Decree.

38

31.   <u>Reporting on Discharges</u>

A.   Defendants shall submit to Plaintiffs, postmarked on or before the tenth day of each month, a Daily Discharge Monitoring Report ("Daily Report") for the plant containing analytical test results obtained during the previous monthly monitoring period, and Discharge Monitoring Reports ("DMR") for that period, as required in the NPDES Permit.  The Reports shall be in the format required by MDNR, and shall contain data on the analysis of samples taken at the frequency and location specified in the NPDES Permit.

B.   In  accordance  with  40  C.F.R.  Section  122.41(m), Defendants shall immediately notify the State and EPA-Region V, in writing, whenever a bypass of the WWTP collection system, the storage-transport  system,  or  the  WWTP  occurs,  including  the requirement  to  submit,  within  five  (5)  days  after  any  such incident, a written report describing the duration, volume and exact location of the incident, an explanation of conditions which resulted in the bypass, steps taken to stop it, measures taken to eliminate further occurrence, and the results of any sampling and monitoring requirements undertaken in response to the incident.

C.   Requirements concerning bypass incident reporting set forth in the preceding paragraph do not affect and shall not serve as a justification for not complying with requirements concerning bypass incidents as set forth in the NPDES Permit.

D.   Nothing in this Consent Decree affects the reporting requirements set forth in the NPDES Permit. Defendants' compliance

39

with reporting requirements set forth in this Consent Decree shall
not serve as a justification for not complying with any reporting
requirement set forth in the NPDES Permit.


## VIII.  SUBMITTALS

32.  Reports, plans, notices, approvals, modifications and
comments required pursuant to this Consent Decree shall be
submitted to the following persons at the addresses below:

For Plaintiff the United States:

>      U.S. Environmental Protection Agency, Region V
>      Water Division
>      Compliance Section 5WCC-15J
>      77 West Jackson Blvd.
>      Chicago, Illinois  60604,

>      U.S. Department of Justice
>      Environment and Natural Resources Division
>      Environmental Enforcement Section
>      P.O. Box 7611, Ben Franklin Station
>      Washington, D.C. 20044
>      DJ # 90-5-1-1-2766;

For Plaintiff State of Michigan:

>      Michigan Department of Natural Resources
>      District Supervisor, Surface Water Quality
>           Division
>      Southeast Michigan District Headquarters
>      39000 Seven Mile Road
>      Livonia, Michigan  48152,

with a copy of the cover letter to

>      Assistant-in-Charge
>      Natural Resources Division
>      Office of the Attorney General
>      Stevens T. Mason Building, 8th Floor
>      P.O. Box 30028
>      Lansing, Michigan 48909,

40

and submittals under paragraph nos. 23, 27, 30, & 31 to

Michigan Department of Natural Resources
Surface Water Quality Division
Compliance and Enforcement Section
P.O. Box 30273
Lansing, Michigan 48909, and

Assistant-in-Charge
at address above;

For the Defendants:

County of Wayne
Department of Corporation Counsel
415 Clifford
Detroit, MI   48226;

William J. DiBiasi, Esq.
Attorney for Brownstown Township
24825 Eureka Road
Taylor, MI   48180-5159;

Daniel J. Misteravich, Esq.
Attorney for Lincoln Park
2933 Fort Street
Lincoln Park, MI   48146;

Charles Brian James, Esq.
Attorney for Southgate
8623 N. Wayne Road, Suite 200
Westland, MI   48185-1137;

Allen J. Kovinsky, Esq.
Attorney for City of Taylor
2000 Town Center (Suite 900)
Southfield, MI   48076-1100;

Randall A. Pentiuk
Attorney for City of Riverview
230 Superior Place (Suite 320)
20300 Superior Road
Taylor, MI   48180; and

Randy L. Kalmbach
Attorney for Wyandotte
2241 Oak Street
Wyandotte, MI   48192-5317.

41

To substitute a recipient or change address information set out in this paragraph, a party must serve on all parties and file with the Court the name and address of the person or office to be removed from this paragraph, as well as the name and address of the person or office that is to be added to this paragraph. Such changes shall be effective thirty days after service to all parties and filing of proof of service with the Clerk of the Court.

33. Unless otherwise specified in this Consent Decree, reports, approvals, modifications, comments and notices shall be given in writing, and shall be considered delivered on the day postmarked by the U.S. Mail, with proper postage affixed. If another means is used to deliver a report or notice, it shall be considered delivered upon the date received at the MDNR or EPA office or at the above addresses for defendants.

34. All requirements in plans, reports and other submittals that have been approved by Plaintiffs, including schedules therein, shall be enforceable requirements of this Consent Decree, except to the extent the performance of such requirement is delayed by a finding of force majeure under Section IX of the Decree or altered by agreement of the parties or judicially under Section X (Dispute Resolution) of the Decree, in which case the revised provisions will become enforceable requirements of the Decree.

35. Appointment of Technical Coordinators. Within 21 days after the entry of this Consent Decree, each of the following shall appoint a Technical Coordinator: Wayne County, MDNR, U.S. EPA, and

one coordinator for all other defendants. All parties shall advise all Technical Coordinators of any matter any party believes to involve a technical resolution or problem, and all Technical Coordinators designated under this paragraph shall be invited to participate in any technical discussion commenced by any party to this Decree. The sole purpose of this paragraph is to encourage early, coordinated participation of all parties on all technical matters. Nothing in this paragraph is intended to or shall be interpreted as delegations of settlement or approval authority by any party or as a deviation of the rights or obligations otherwise established for the parties by applicable law or this Consent Decree. As counsel for any party deems appropriate, such counsel may attend any meeting involving the Technical Coordinators. If any party changes its Technical Coordinator, it shall promptly notify all of the other parties.

## IX.  FORCE MAJEURE

36. A "force majeure" event for purposes of this Consent Decree is any event that is caused by circumstances beyond the reasonable control of the Defendants that delays or prevents the Defendants from complying with the terms of this Decree in a time fashion including completing any studies, programs plans, designs or failure to timely construct the facilities as scheduled. Such events could include by way of illustration and not limitation delays due to fires, strikes, labor disputes, unforeseeable delays

in transportation, unusually adverse weather conditions or unanticipated changed site conditions encountered in the course of construction also delays caused by the failure of the Plaintiffs to respond promptly and comment on submittals made by the Defendants as required by the terms of this Consent Decree. To the extent any such noncompliance with the terms of this Consent Decree is due to a force majeure event, the Defendants shall not be liable for any stipulated penalties set forth in this Decree and the time for performance or compliance with the terms of this Decree shall be extended by the Plaintiffs to the extent appropriate. An extension of one (1) compliance date due to a particular force majeure event will not necessarily result in an extension of a subsequent compliance date or other unrelated compliance date or dates.

37. Nothing in this section is intended to relieve Defendants of their duty to use all due diligence to complete the requirements of this Consent Decree in a timely matter. Further, unanticipated or increased costs or expenses associated with compliance of this Consent Decree including change in financial circumstances on behalf of the Defendants shall not constitute a force majeure event; provided further, however, that nothing in this paragraph is otherwise intended to preclude Defendants from applying to the Court for a specific enlargement of time under the provisions of Sections IX, X and/or XXII of this Decree -- to the extent the allegations and proofs supporting Defendants' application to the Court for the specific enlargement of time are relevant to the provisions of Section IX, X, and/or XXII -- so long as: (a) Defendants first requested the United States and the State for the

specific enlargement of time (and provided therewith the allegations and proofs supporting the request) and (b) Plaintiffs had rejected Defendants' request.

38. It shall be the duty of the Defendants to promptly notify the Plaintiffs of any occurrence or circumstance which could result in noncompliance with the terms of this Consent Decree as a result of a force majeure event which under the circumstances is beyond the Defendants' reasonable control and which could not be overcome by due diligence. Such notification shall be in writing to the Plaintiffs and shall describe the terms of this Decree that may be affected by the occurrence, the nature of the noncompliance that could result from the occurrence, the reasons for such occurrence and possible noncompliance that may, in the opinion of the Defendants, cause a violation of the terms of this Decree or result in any upset condition involving the terms of any applicable NPDES permit.

39. If the Defendants and the Plaintiffs cannot agree that the occurrence at issue is a force majeure event or cannot agree on the terms of an appropriate extension of time or other solution the dispute shall be subject to the dispute resolution procedures of Section X, infra.

40. Further, without respect to whether or not a given set of circumstance entitles the Defendants to certain protection and relief related to the force majeure event, the Defendant shall comply with the terms of this Consent Decree that are unaffected by the force majeure event, and the Plaintiffs shall retain the right to enforce the terms and obligations of this Decree that are unaffected by the force majeure occurrence.

## X.   DISPUTE RESOLUTION

41.   If in the opinion of any party there is a dispute between Plaintiffs and Defendants with respect to the interpretation of or compliance with this Consent Decree, such dispute shall in the first instance be the subject of informal negotiations between the Defendants and the Plaintiffs.   That party shall send a written notice to the other parties which outlines the nature of the dispute and requests informal negotiations to resolve the dispute. Such period of informal negotiations shall not extend beyond thirty (30) days from the date when the notice was sent, unless the parties agree otherwise.   In an emergency, either party may seek relief directly from the Court prior to expiration of the informal negotiation period, with the party moving for such relief bearing the burden of proving that an emergency exists and that the position advocated by that party should be adopted under the terms of this Decree.

42.   If the informal negotiations are not successful, Defendants shall comply with Plaintiffs' position unless Defendants file with the Court a petition for resolution of the dispute within twenty (20) days of receipt of a document setting forth the Plaintiffs' final position.   Defendants' petition shall describe the nature of the dispute and provide a proposal for its resolution.   The Plaintiffs shall have twenty (20) days to file a response with an alternate proposal for resolution.   In any dispute, the party seeking relief from the Court bears the burden of proof.

46

43.   In all disputes, the party seeking relief from the Court must demonstrate that the relief it seeks fulfills the terms and requirements of this Consent Decree.   If the dispute at issue involves a force majeure event under Section IX, supra, then the burden of going forward and the burden of proof shall be on the Defendants.   In all issues, the burden of proof shall be a preponderance of the evidence.   The Court shall finally determine any appropriate relief necessary.

44.   Invocation of the dispute resolution provisions of this Section shall not extend or postpone any deadlines affected by the dispute.

## XI.   RIGHT OF ENTRY

45.   EPA and MDNR, and their representatives, contractors and consultants and attorneys, shall have the authority to enter the plant and any other property, fixture, facility or office the operation or purpose of which is related to compliance with this Consent Decree, at all times, upon proper presentation of credentials, for the purposes of:

A.   monitoring the progress of activities required under this Decree;

B.   verifying any data or information submitted to EPA or MDNR in accordance with the terms of the Decree or the NPDES Permit;

C.   obtaining samples, and, upon request, splits of any samples taken by Defendants or their consultants; and

D.   assessing Defendants' compliance with this Decree and the NPDES Permit.

47

This Section in no way limits or otherwise affects any right of entry held by the United States or MDNR pursuant to applicable to federal or state laws, regulations or permits, including 33 U.S.C. § 1318 and Section 4 of the WRCA.

## XII. DIVISION OF RESPONSIBILITY AMONG DEFENDANTS

46. Regardless of whatever arrangements Defendants may make among themselves to allocate and undertake various tasks specified by the Decree, Wayne County is responsible to Plaintiffs for timely completion of all obligations imposed under the Decree. This paragraph does not limit the authority of the Plaintiffs to enforce this Consent Decree against any other Defendant who fails to meet any requirement of such Defendant hereunder. If the act or omission of any individual defendant community results in the imposition of a penalty under this Decree, the non-responsible defendant communities shall have the right to invoke the dispute resolution provisions of this Consent Decree to require the responsible community(s) to pay for the entire penalty. The possibility or pendency of any such dispute among the Defendants shall not relieve or delay Defendants' obligations to timely pay penalties.

## XIII. APPROVAL AND FACILITY CONSTRUCTION

47. Nothing herein shall be interpreted as relieving Defendants from the obligation to apply for and receive all permits required by law to construct the facilities required under Sect. IV hereof.

48

## XIV. FUNDING

48.   Performance of the terms of this Consent Decree by Defendants is not conditioned on the receipt of any Federal or State grant and/or loan funds.

49.   The legislative bodies of the Defendants shall adopt resolutions or ordinances to:  approve amendments or supplements to existing contracts for the Downriver System, execute new contracts or accept assessment obligations or allocations of cost, approve plans and enter into or approve construction contracts and issue and sell bonds, if needed, to acquire, finance or construct, all facilities and improvements required under this Consent Decree as approved by MDNR and U.S. EPA or required for compliance with NPDES permits, all in accordance with P.A. 320 of 1927, as amended, M.C.L.A. 123.241 et seq., P.A. 202 of 1943, as amended, M.C.L.A. 131.1 et seq. M.S.A. 5.2661 et seq., and P.A. 185 of 1957, as amended, M.C.L.A. 123.731 et seq., M.S.A. 5.570 et seq. The Court may enter as required an order pursuant to said Act 320 regarding the terms and conditions of the contracts, bonds and other documents to be executed and delivered by the legislative bodies of Defendant in accordance with this paragraph, provided such order in no way alters, modifies, or conflicts with the deadlines, obligations, or items set forth in this Decree or set forth by applicable federal or state law.

## XV.   ACCESS

50.   Defendants shall take all measures necessary to obtain access to properties as necessary to meet the requirements of this Consent Decree.


## XVI.   FAILURE OF COMPLIANCE

51.   Plaintiffs do not, by their consent to the entry of this Decree, warrant or aver in any manner that Defendants' compliance with any aspect of this Consent Decree will result in compliance with the provisions of the Clean Water Act, WRCA, or the NPDES Permit.   Notwithstanding Plaintiffs' review and approval of any plans prepared pursuant to this Consent Decree, as well as any approval given under Section IV of the Decree, Defendants shall remain solely responsible for compliance with the terms of the Act, WRCA, this Decree and the NPDES Permit.


## XVII.   NOT A PERMIT

52.   This Consent Decree is not and shall not be construed to be a permit, or a modification of an existing permit, issued pursuant to Section 402 of the Clean Water Act, 33 U.S.C. § 1341 or Section 7(1) of the WRCA, nor shall it in any way relieve Defendants of their obligation to obtain any permit and comply with all requirements of the NPDES Permit or with any other applicable Federal or State law, regulation or permit.

53. Except to the extent that this Decree specifically provides otherwise, Defendants shall comply with all conditions and effluent limitations in the NPDES Permit and any modification or renewal thereof while this Consent Decree remains in effect.

## XVIII. NON-WAIVER PROVISIONS

54. This Consent Decree in no way affects or relieves Defendants of the obligation to comply with all applicable Federal, State, and local laws and regulations and the applicable NPDES permit. This Decree shall not be construed to prevent or limit the rights of Plaintiffs to obtain penalties or injunctive relief under the Act or WRCA or other statutes or regulations, except as expressly provided herein.

55. The parties agree that Defendants are responsible for achieving and maintaining complete compliance with all applicable Federal and State laws, regulations, and permits, and that compliance, or efforts to comply, with this Decree shall not be a defense to any actions commenced pursuant to any such laws, regulations or permits.

56. By entering this Consent Decree, the Plaintiffs do not waive any rights or remedies available to them for any violation of this Consent Decree, or any past, present or future violation by any Defendant of any Federal or State laws, regulations or permit conditions other than those civil claims for violations which were alleged in the Complaint in this action, as well as for any civil

51

claim for civil penalties under the Federal Water Pollution Control Act, or the WRCA, for violations that occurred prior to the lodging of this Decree by the United States, and that arose from bypass, I/I, or operations and maintenance activities on the Downriver Collection and Treatment System.

57.  Nothing herein shall be construed to limit the authority of the Plaintiffs to undertake any action against any person, including Defendants, in response to conditions that may present an imminent and substantial endangerment to the public health, welfare or the environment.

58.  This Consent Decree does not limit or affect the rights of Defendants or of the Plaintiffs against any third parties.

59.  The Plaintiffs reserve any and all legal and equitable remedies available to enforce the provisions of this Decree.

60.  This Consent Decree does not resolve any Defendant's liability in either of the two other cases (E.D. Michigan Civ. Nos. 77-71100 -- United States v. City of Detroit, et al. -- and 89-72937 -- United States v. City of Detroit) consolidated with this action, and nothing in this Decree affects or limits the relief that Plaintiffs may recover in those cases, nor does the Decree affect any rights or remedies available to any Defendant with respect to those actions.

## XIX. CONTINGENT LIABILITY OF STATE OF MICHIGAN

61.  This Consent Decree does not resolve the contingent liability of the State of Michigan under Section 309(e) of the Act,

52

33 U.S.C. Section 1319(e).  The United States reserves, and this Decree is without prejudice to, any rights or claims that the United States has or may have against the State under Section 309(e) of the Act.  The State of Michigan reserves, and this Decree is without prejudice to, any defenses that it may have to any claim under Section 309(e) of the Act.  The State of Michigan declares that it believes there is no State law that would prevent Defendants from raising revenues needed to comply with any judgment in this action.

## XX.   RESOLUTION OF COUNTERCLAIMS

62.  This Consent Decree resolves all counterclaims against the United States and the State of Michigan that were filed in this action, or which pursuant to Rule 13 of the Federal Rules of Civil Procedure could have been filed in this action, by any Defendant. Upon entry of this Consent Decree by the Court, all counterclaims filed by any Defendant against the United States or the State of Michigan are dismissed, with prejudice.

## XXI. COSTS OF SUIT

63.  Each party shall bear its own costs and attorney's fees accrued prior to entry of this Consent Decree in this action.

## XXII.  MODIFICATION

64.  There shall be no modification of this Consent Decree without written approval of all the parties to this Consent Decree

53

and the Court.   Nothing in this provision alters whatever rights accrue to the parties under the sections of this Decree entitled "Dispute Resolution" and "Force Majeure." Further, nothing in this provision is intended to limit any right any party may have to petition the Court for modification in accordance with Rule 60(b) of the Federal Rules of Civil Procedure.

## XXIII.   EFFECTIVE DATE AND CONTINUING JURISDICTION OF THE COURT

65.   The Consent Decree shall be effective on the date, after conclusion of activities specified in Paragraph No. 70, on which this Court enters the Decree as its own order.

66.   The Court shall retain jurisdiction for the purpose of ruling on any motion by any party to enforce the terms and conditions of this Decree, under applicable law, until this Decree is terminated in accordance with Section XXIV below.

67.   Effective immediately upon entry of this Consent Decree by the Court, the Order issued by the Court in this action on July 2, 1993, is terminated.   In acknowledgement of the fact that the City of Riverview issued bonds under the Order of July 2, 1993, the Parties acknowledge that this Decree is intended to authorize and support the issuance of those bonds to at least the same extent such issuance was authorized by the now-terminated Order of July 2, 1993.

## XXIV.   TERMINATION

68.   This Consent Decree shall terminate either: (1) upon the Court's granting a motion by Plaintiffs, after Defendants have

54

completed the Sewer Rehabilitation, WWTP Improvements, and Collection and Storage-transport facilities required under paragraphs 5 - 7 above, and paid the civil penalty due hereunder; or (2) upon the Court's granting a motion by Defendants, after certification by Defendants to Plaintiffs and the Court that Defendants have completed the Sewer Rehabilitation, WWTP Improvements, and Collection and Storage-transport facilities required under paragraphs 5 - 7 above, eliminated unpermitted bypass and overflow at all points in the Downriver Collection and Treatment System, achieved and maintained compliance with the final effluent limitations specified in the NPDES permit for at least twelve consecutive months, and have paid all penalties due hereunder.

69.   <u>Automatic Termination</u>.   If not terminated previously under the terms of Par. No. 68 above this Decree shall terminate automatically on January 1, 2004, provided all stipulated penalties demanded have been fully paid, and provided further that Defendants provided timely Final Project Certification under paragraph no. 8 of the Decree.   If such certification is not timely made or if a CAP is warranted under paragraph no. 8 of the Decree, then -- if the Decree has not been terminated previously under paragraph -- 68 above -- this Decree shall terminate automatically as follows if and only if all stipulated penalties demanded have been paid in full:

> (a)  If the Project Certification in paragraph no.
>      8 has been provided and no CAP is required to
>      be developed pursuant to paragraph no. 8, the
>      Decree shall automatically terminate one year
>      after submittal of the Final Project
>      Certification under paragraph no. 8 or on
>      January 1, 2006, whichever occurs first; or

    (b)   If a CAP is required to be developed pursuant to paragraph no. 8, the Decree shall automatically terminate one year after successful completion of the activities required by the CAP.

## XXV. PUBLIC COMMENT

70. The parties agree and acknowledge that final approval by the United States and entry of this Decree is subject to the requirements of 28 C.F.R. Section 50.7, which provides for notice in the Federal Register of the lodging of this Consent Decree, an opportunity for the public to submit comments to the U.S. Department of Justice, and for the consideration by the Department of any comments.

<u>For the United States of America:</u>

United States Department of Justice
Environment & Natural Resources Division
Washington, D.C.

Date: 8/10/99

Lois J. Schiffer
Acting Assistant Attorney General


United States Department of Justice
Environment & Natural Resources Division

Thomas A. Mariani, Jr.
Environmental Enforcement Section


Office of the United States Attorney
Eastern District of Michigan

By:

    Peter Caplan
    Assistant United States Attorney

<u>United States, et al. v. Wayne County, et al.</u>, Civil No. 87-70992
(E.D. Mich.)  Signature Page of Consent Decree

United States Environmental Protection Agency
Region 5
Chicago, Illinois

Valdas V. Adamkus
Regional Administrator

Sebastian T. Patti
Associate Regional Counsel

57

<u>United States, et al. v. Wayne County, et al.</u>, Civil No.87-70992
(E.D. Mich.)   Signature Page of Consent Decree


United States Environmental Protection Agency
Office of Enforcement
Washington, D.C.

_____
Steven A. Herman
Assistant Administrator


_____
David Hindin
Attorney / Advisor

United States, et al v Wayne County, et al, Civil No. 87-70992
(E.D. Mich.)

                    FRANK J. KELLEY, ATTORNEY GENERAL FOR
                    THE STATE OF MICHIGAN, EX REL, MICHIGAN
                    NATURAL RESOURCES COMMISSION, AND
                    DIRECTOR OF THE MICHIGAN DEPARTMENT OF
                    NATURAL RESOURCES

             By: _____
                    John C. Scherbarth
                    Assistant Attorney General
                    Natural Resources Division
                    - KNAPP'S OFFICE CENTRE -
                    300 S. Washington, Suite 530
                    Lansing, MI  48913
                    Telephone:  (517) 373-8456

<u>United States, et al. v. Wayne County, et al.</u>, Civil No. 87-70992
(E.D. Mich.)  Signature Page of Consent Decree

<u>For the Defendants</u>:

County of Wayne

*Edward H. McNamara* Date: 2-11-94

Edward H. McNamara
Chief Executive Officer

60

<u>United States, et al. v. Wayne County, et al.</u>, Civil No. 87-70992
(E.D. Mich.)  Signature Page of Consent Decree

City of Allen Park

Gerald N. Richards
Mayor

<u>United States, et al. v. Wayne County, et al.</u>, Civil No. 87-70992
(E.D. Mich.)  Signature Page of Consent Decree

City of Belleville


Glenn Silvenis
Mayor

62

<u>United States, et al. v. Wayne County, et al.</u>, Civil No. 87-70992
(E.D. Mich.)  Signature Page of Consent Decree

Township of Brownstown


*W. Curt Boller*
_____
W. Curt Boller
Supervisor

United States, et al. v. Wayne County, et al., Civil No.87-70992
(E.D. Mich.)  Signature Page of Consent Decree

City of Dearborn Heights

_____
Ruth A. Canfield
Mayor

64

United States, et al. v. Wayne County, et al., Civil No. 87-70992
(E.D. Mich.)   Signature Page of Consent Decree


City of Ecorse


James Tassis
Mayor

<u>United States, et al. v. Wayne County, et al.</u>, Civil No.87-70992
(E.D. Mich.)  Signature Page of Consent Decree

City of Lincoln Park

Frank Sall
Mayor

<u>United States, et al. v. Wayne County, et al.</u>, Civil No. 87-70992
(E.D. Mich.)- Signature Page of Consent Decree


City of River Rouge


Margaret M. Watson
Mayor


Charles E. Manley
Clerk

United States, et al. v. Wayne County, et al., Civil No. 87-70992
(E.D. Mich.)  Signature Page of Consent Decree


City of Riverview

Peter Rotteveel
Mayor

United States, et al. v. Wayne County, et al., Civil No.87-70992
(E.D. Mich.)  Signature Page of Consent Decree


City of Romulus


Beverly McAnally
Mayor

<u>United States, et al. v. Wayne County, et al.</u>, Civil No. 87-70992
(E.D. Mich.)  Signature Page of Consent Decree

City of Southgate

Norma Wurmlinger
Mayor

<u>United States, et al. v. Wayne County, et al.</u>, Civil No.87-70992
(E.D. Mich.)   Signature Page of Consent Decree

Res. #2.85-94

City of Taylor

_Cameron G. Priebe_
Mayor

Date: _FEB 8, 1994_

<u>United States, et al. v. Wayne County, et al.</u>, Civil No. 87-70992
(E.D. Mich.)  Signature Page of Consent Decree

Township of Van Buren

_____                    DATE: <u>February 8, 1994</u>
David Jacokes
Supervisor

72

<u>United States, et al. v. Wayne County, et al.</u>, Civil No.87-70992
(E.D. Mich.)   Signature Page of Consent Decree


City of Wyandotte


James R. De Sana
Mayor

United States, et al. v. Wayne County, et al., Civil No. 87-70992
(E.D. Mich.)  Signature Page of Consent Decree


Southgate-Wyandotte Relief Drainage District


Name: James B. Murray
Title: Chairperson

74

<u>United States, et al. v. Wayne County, et al.</u>, Civil No. 87-70992
(E.D. Mich.)   Signature Page of Consent Decree

Ecorse Creek Pollution Abatement Drain

Name:  James E. Murray
Title:  Chairperson

United States, et al. v. Wayne County, et al., Civil No.87-70992
(E.D. Mich.)  Signature Page of Consent Decree


SO ORDERED THIS _5th_ DAY OF _February_, 1994, AT DETROIT,
MICHIGAN.


HONORABLE JOHN FEIKENS
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF MICHIGAN

h:CD-MTG(01-27-94).TOM:ljp        76