# EXHIBIT 2

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA and FRANK
J. KELLEY, ATTORNEY GENERAL FOR THE
STATE OF MICHIGAN, EX REL MICHIGAN
NATURAL RESOURCES COMMISSION, AND
DIRECTOR OF THE MICHIGAN
DEPARTMENT OF NATURAL RESOURCES,

     Plaintiffs,

v.

                                Civil Action No.
                                87-70992
                                HON. JOHN FEIKENS

WAYNE COUNTY, MICHIGAN; CITY OF ALLEN
PARK; CITY OF BELLEVILLE; TOWNSHIP OF
BROWNSTOWN; CITY OF DEARBORN HEIGHTS;
CITY OF ECORSE; CITY OF LINCOLN PARK;
CITY OF RIVER ROUGE; CITY OF RIVERVIEW;
CITY OF ROMULUS; CITY OF SOUTHGATE;
CITY OF TAYLOR; TOWNSHIP OF VAN BUREN;
CITY OF WYANDOTTE; SOUTHGATE-WYANDOTTE
RELIEF DRAIN DRAINAGE DISTRICT; AND ECORSE
CREEK POLLUTION ABATEMENT DRAIN, NO. 1
DRAINAGE DISTRICT,

     Defendants.

At a session of said court, held in the
U.S. Courthouse, City of Detroit,
State of Michigan, on _____

I hereby certify that the foregoing
is a true copy of the original on file in
this Office.

CLERK U.S. DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
By _____
                    Deputy

PRESENT: Hon. _____

U.S. DISTRICT COURT JUDGE

DOWNRIVER SEWAGE DISPOSAL SYSTEM
1994 FINANCING PLAN AND FINAL JUDGMENT
RE: 1994 COURT-ORDERED IMPROVEMENTS

WHEREAS, this matter having been brought on for hearing on notice of this Court and this Court being fully advised in the premises; and

WHEREAS, the County of Wayne, Michigan ("Wayne"), acting by and through its then Board of Supervisors and pursuant to the authority conferred upon it by Act 185, Public Acts of Michigan, 1957, as amended ("Act 185"), did, by resolution duly adopted by a two-thirds (2/3) vote of the Board of Supervisors, establish a Department of Public Works, now known as the Department of Public Services, Division of Public Works, in and for Wayne for the administration of the powers conferred upon Wayne by Act 185; and

WHEREAS, Wayne is now a Charter County with all powers provided under Act 293, Public Acts of Michigan 1966, as amended, including the powers conferred by statute and charter on its County Executive (the "CEO"); and

WHEREAS, pursuant to Section 16 of Act 261, Public Acts of Michigan 1966, as amended, all references to county supervisors or county boards of supervisors in any act are deemed to mean county commissioners and county boards of commissioners and, in a Charter County, a county commission; and

2

WHEREAS, pursuant to Section 2(5) of Act 185 the CEO has all authority, powers, and duties conferred by Act 185 upon a department of public works and is under the general control of the County Commission; and

WHEREAS, Wayne, pursuant to the authority of Act 185 entered into a contract dated March 1, 1962, which contract has been amended from time to time, (the "Downriver Agreement"), with certain communities within Wayne County for the purposes of establishing a Wastewater Control System commonly known as the Downriver Sewage Disposal System (the "System") to address the immediate public health and welfare needs of all or a portion of the residents of those communities, namely the cities of Allen Park, Belleville, Dearborn Heights, Ecorse, Lincoln Park, River Rouge, Riverview, Romulus (then a Township), Southgate, Taylor (then a Township) and Wyandotte and the Townships of Brownstown and Van Buren (referred to collectively as the "Downriver Communities"); and

WHEREAS, in order to operate the System in accordance with law, including sewerage systems of Downriver Communities tributary to the System, it is necessary obtain a National Pollution Discharge Elimination System Permit (an "NPDES Permit) issued pursuant to the Michigan Water Resources Commission Act, Act 245, Public Acts of Michigan, 1929, as amended, and the Federal Clean Water Act, 33 USC 1251, et. seq.; and

3

WHEREAS, additional regulations and requirements have recently been enacted by the USEPA with respect to the disposition and disposal of sludge, a by-product of wastewater treatment, (the "503 Regulations") that will require additional improvements and emission control systems be planned, designed and installed at the System's sewage disposal treatment plant; and

WHEREAS, this Court noticed for entry a certain Consent Decree on February 11, 1994, (the "Consent Decree") in this action, requiring that certain improvements to the System be planned, designed, acquired, constructed and financed all in accordance with a certain schedule attached as Exhibit A and a certain Project Plan dated May 1, 1993, titled "Wayne County Downriver Collection System," which has been summarized in Exhibit B and a "Project Plan for Sanitary Sewer Improvements, City of Riverview" (collectively, the "Project Plan"). The Project Plan has been formulated by the defendants working with the assistance of the Court-Appointed Monitor, the Court-Appointed Expert Witness and Master and in consultation with the USEPA and MDNR; and

WHEREAS, it is immediately necessary and imperative for the public health and welfare of the present and future residents of Wayne and the Downriver Communities that the Improvements for the System required by the Consent Decree and the Project Plan (the "Improvements") be planned, designed, acquired, constructed and financed to service the Downriver Communities, as a part of the System; and

4

WHEREAS, the consulting engineers for Wayne estimate a total cost of approximately Two Hundred Thirty Million Dollars ($230,000,000) to plan, design, acquire, construct and finance all of the Improvements (including the 1994 Improvements and the Local Jurisdiction Improvements, as hereinafter defined) and Wayne and certain of the Downriver Communities intend to file applications with The Michigan Water Pollution Control Revolving Loan Fund Program (the "Revolving Loan Fund") and The Michigan Municipal Bond Authority (the "Authority") to finance approximately Two Hundred Million Dollars ($200,000,000) of the Improvements; and

WHEREAS, the consulting engineers for Wayne estimate a total cost of approximately Thirty Million Dollars ($30,000,000) to plan, design, acquire, construct and finance certain improvements to the System which are described in the "Bond Amount" column and included in the "Total Construction Costs" row on page 1 of Exhibit C, which includes the cost of certain of the Local Jurisdiction Improvements, as required by the Consent Decree and the Project Plan (collectively, the "1994 Improvements"), which 1994 Improvements (i) consist almost exclusively of the preparation of engineering plans and (ii) are included within, and not in addition to, the Improvements, of which it is anticipated that approximately Twenty Five Million Dollars ($25,000,000) may become eligible for financing through the Revolving Loan Fund and the Authority; and

5

WHEREAS, in order to meet the requirements of the Consent Decree, the Downriver Communities and Wayne need to plan, design, acquire and construct the 1994 Improvements and the Downriver Communities desire to have Wayne as their agent to supply the planning, designing, acquisition and construction of the 1994 Improvements required for the System and, if requested, to apply as their agent for loans from the Revolving Loan Fund and the Authority and where necessary receive the funds on behalf of the Downriver Communities; and

WHEREAS, in order to meet the requirements of the Consent Decree, certain of the Downriver Communities need to plan, design, acquire, construct and finance improvements to local sewage systems which are under the jurisdiction and control of each such Downriver Community (respectively, the "Local Jurisdiction Improvements") and in accordance with this 1994 Financing Plan And Final Judgment For 1994 Court-Ordered Improvements (the "1994 Financing Plan And Final Judgment") Wayne may contract with such Downriver Communities as their agent to supply all or part of the planning, designing, acquisition and construction of such Downriver Communities' respective Local Jurisdiction Improvements and to apply as the Downriver Communities' agent for loans from the Revolving Loan Fund and the Authority; and

WHEREAS, in order to meet the requirements of this 1994 Financing Plan And Final Judgment, the City of Wyandotte ("Wyandotte") has agreed to pay to Wayne

6

Six Hundred Sixty Six Thousand Three Hundred Eighty Three Dollars ($666,383), representing Wyandotte's estimated local share of the cost of the 1994 Improvements ("Wyandotte's Share") to be deposited by Wayne in a Construction Fund Subaccount (as hereinafter defined).

WHEREAS, in order to meet the requirements of the Consent Decree, the City of Riverview has commenced certain local improvements (the "Riverview Improvements") in accordance with the Project Plan for Sanitary Sewer Improvements, City of Riverview, and has issued its bonds to pay part of the costs of the Riverview Improvements and intends to pay further costs of the Riverview Improvements.

NOW, THEREFORE, UPON CONSENT OF THE PARTIES HERETO, IT IS HEREBY ORDERED, ADJUDGED AND DECREED AS FOLLOWS:

1.  Approval of Project Plan for the 1994 Improvements. As set forth in Paragraph 4 of the Consent Decree, the United States of America, acting through its Environmental Protection Agency ("USEPA"), and the Michigan Department of Natural Resources ("MDNR"), acting on behalf of the State of Michigan, have conceptually approved the Project Plan and hereby further approve (i) Wayne's proceeding with the funding, designing, acquisition and construction of the 1994 Improvements and (ii) Riverview Improvements as contemplated by the Project Plan. The Downriver

7

Communities approve the planning, designing, acquisition and construction of the 1994 Improvements. Wayne approves the planning, designing, acquisition, construction and financing of the 1994 Improvements.

2.   1994 Improvements Necessary for Public Health.   The 1994 Improvements to be designed will service the Downriver Communities and their residents and are hereby ordered to be immediately necessary to protect and preserve the public health.

3.   Wayne's Use of Rights-Of-Way.   The Downriver Communities hereby consent to the use by Wayne of the public streets, alleys, lands and rights-of-way in the Downriver Communities for the purpose of constructing, operating and maintaining the 1994 Improvements and in order to evidence and effectuate the foregoing consent, the Downriver Communities will execute and deliver to Wayne such grants of easement, right of way, license, permit, consent or other agreement as may be required by Wayne.

4.   Approval of the Estimated Cost for the 1994 Improvements.   Wayne and Downriver Communities hereby approve the estimated cost for the 1994 Improvements as prepared by the consulting engineers and as set forth in Exhibit C attached hereto. Such estimated costs for the 1994 Improvements may include, but not limited to, costs for all surveys, plans, specifications, acquisition of property

8

for rights-of-way, physical construction necessary to acquire and construct the 1994 Improvements, the acquisition of all materials, machinery and necessary equipment, contingency allowance, and engineering, engineering supervision, administrative and legal expenses necessary in connection with the planning, designing, acquisition and construction of the 1994 Improvements.

5. <u>Issuance of Bonds</u>. Wayne, acting solely by its County Commission, shall authorize the issuance of the bonds, in a principal amount not to exceed Thirty Million Dollars ($30,000,000), plus (i) any amount required to fund the Reserve Fund described in Section 14 and (ii) the principal amount of any bonds to be issued by Wayne for any Local Jurisdiction Improvements. The bonds issued hereunder shall be limited tax general obligations of Wayne.

In addition to bonds issued in accordance with the preceding paragraph, if the Judgment Payments (as defined in Section 8(b) hereof) and the proceeds from the sale of the bonds are not sufficient to complete the 1994 Improvements, Wayne may issue additional bonds (including any bonds sold to the Authority) in an aggregate amount sufficient to complete the 1994 Improvements.

6. <u>Wayne to Plan, Design, Acquire and Construct the 1994 Improvements</u>. Wayne will plan, design, acquire and construct the 1994 Improvements on behalf of

9

the Downriver Communities and Wayne and for that purpose will take bids and/or proposals for the planning, designing, acquisition and construction thereof.

7.  <u>Downriver Communities to be Beneficial Owners of Local Jurisdiction Improvements and 1994 Improvements</u>.  While any bonds remain outstanding which were issued by Wayne for any Local Jurisdiction Improvements, each such Downriver Community shall be a beneficial owner of its Local Jurisdiction Improvements and each such Downriver Community shall operate, maintain and administer its Local Jurisdiction Improvements as a part of its local sewage disposal system and pay all costs thereof, so as to keep all such facilities in proper repair and working order in compliance with all applicable federal, state and local regulations, and Wayne shall have the right to inspect the Local Jurisdiction Improvements at reasonable times to insure that each Downriver Community's maintenance and operation is appropriate. Each Downriver Community also shall be a beneficial owner of the 1994 Improvements to the extent of its allocable share of the cost of such 1994 Improvements.

8.  <u>Judgment Requiring Payment</u>.  Each Downriver Community is hereby ordered to pay its portion of the local-share costs of the Improvements, in accordance with the allocations as set forth in Exhibit C. Except as otherwise provided herein, each Downriver Community is hereby ordered to pay its local - share costs of the 1994 Improvements, if any, in cash, or as otherwise provided in Section 8(b), on or

10

before the closing date on the sale of the bonds described herein. Each Downriver Community shall pay its portion of the local - share costs of the Improvements (other than the 1994 Improvements) in the amounts and at the time determined by Wayne to be necessary to comply with the Consent Decree. To the extent that a Downriver Community does not pay its local - share costs of the Improvements (other than the 1994 Improvements) at the times required by Wayne, Wayne shall collect such local - share costs in a manner similar to Sections 8(a)-(c) below. Wyandotte is hereby ordered to deposit Wyandotte's Share with Wayne, to be held by Wayne in a subaccount of the construction fund (a "Construction Fund Subaccount") to be maintained by Wayne in connection with the construction of the 1994 Improvements and in accordance with Section 10(g). Wyandotte shall be deemed to have paid the Wyandotte Share in cash for purposes of this Agreement. It is the understanding of the parties that Wayne shall, where appropriate, adjust the allocations to properly reflect community cost apportionments based on data collected during the 1995 flow monitoring and after the subsequent reports have been completed. It is also the understanding of the parties that receipt of these allocations does not prevent any party from raising issues between itself and other parties as to allocations of costs related to construction. Any adjustments to the allocations described in this paragraph will be computed in accordance with the Cost Allocation Methodology attached as Exhibit D.

11

(a)    <u>Filing of Judgment Against Certain Downriver Communities</u>. With respect to any Downriver Community that does not pay its Judgment Payments (as defined in Section 8(b) hereof) in cash prior to the closing date for the sale of Wayne's bonds, a certified copy of this 1994 Financing Plan And Final Judgment shall be filed with the assessing officer of each Downriver Community that is a city, and with the supervisor of each Downriver Community that is a township (collectively, the "Assessing Officer"), pursuant to Section 6093 of Act 236, Public Acts of Michigan 1961, as amended ("Act 236"), and this 1994 Financing Plan And Final Judgment. The Judgment Payments shall be assessed by the Assessing Officer of each Downriver Community upon the taxable property of the Downriver Community in the annual amounts required to be paid hereunder; provided, however, that such annual assessment shall not be required (i) to the extent that the Downriver Community has provided to Wayne the resolution required by Section 8(c)(i) and paid the applicable Judgment Payments at least forty five (45) days prior to the Levy Date for such year or (ii) if proceeds from the issuance of a Downriver Community's bonds or other evidences of indebtedness are paid to an escrow account with terms satisfactory to Wayne and solely for purposes of paying the Judgment Payments, then to the extent that the amount in such escrow account is verified by independent certified public accountants satisfactory to Wayne to be sufficient to pay succeeding annual assessments of the Judgment Payments, then such annual assessments of the Judgment

12

Payments shall not be required. Judgment Payments received by Wayne under this subparagraph shall be held by Wayne in an interest-bearing account (subject to any restrictions imposed by state or federal law) and applied to the next Judgment Payments due by such Downriver Community, with any excess being retained in such account to be applied to the next Judgment Payments due. The treasurer or collecting officer of each Downriver Community charged with collection and payment of such Judgment Payments is specifically authorized and directed to pay said sums to Wayne, to apply on the obligations of the Downriver Community as herein set forth. In addition to the foregoing, Wayne shall have all other rights and remedies provided by law to enforce the obligations of the Downriver Community to make its Judgment Payments and other payments required hereunder in the manner and at the times required by this 1994 Financing Plan And Final Judgment. The Downriver Community will not take any action to reduce the right of Wayne to receive state-returned moneys of such Downriver Community in the event of default. It is hereby ordered that the rights of plaintiffs under Section 6093 of Act 236, to require the Assessing Officer to assess such payments on the taxable property of the Downriver Community with respect to the Improvements, are hereby assigned to Wayne and any such payments received by plaintiffs from the Downriver Communities shall be paid to Wayne. Wayne acknowledges receipt of and accepts such assignment.

(b)    <u>Judgment Payments</u>.   Each Downriver Community is hereby ordered to make the following payments to Wayne (the "Judgment Payments") severally, and not jointly:

(i)     in the case of a Downriver Community paying its local share (as determined in accordance with pages 1-5 of Exhibit C) of the cost of the 1994 Improvements in cash, such cash amount, which shall be paid to Wayne on or before the closing date for the sale of Wayne's bonds and deposited in a Construction Fund Subaccount, together with such Downriver Community's local share of all other expenses, costs and fees incurred or charged by Wayne in connection with the 1994 Improvements, at such times as Wayne shall determine, including without limitation expenses of planning, designing, acquiring and constructing the 1994 Improvements, but excluding any expenses of financing the 1994 Improvements; or

(ii)    in the case of a Downriver Community not paying its local share of the cost of the 1994 Improvements in cash, an amount equal to its local share of the cost of the 1994 Improvements sufficient to allow Wayne to pay the

14

principal of and interest when due on Wayne's bonds (including any bonds sold to the Authority), and to maintain the Reserve Fund described in Section 14, all at such times as Wayne shall determine, together with such Downriver Community's local share of all other expenses, costs and fees incurred or charged by Wayne in connection with the 1994 Improvements, at such times as Wayne shall determine, including without limitation expenses of planning, designing, acquiring, constructing and financing (including bond discount and credit enhancement) the 1994 Improvements; and

(iii)    in the case of each Downriver Community, in addition to the amounts described in Section 8(b)(i) or Section 8(b)(ii) above, if Wayne determines that the actual cost of the 1994 Improvements exceeds the estimated cost of the 1994 Improvements, an amount equal to such Downriver Community's local share of such increased costs of the 1994 Improvements within thirty (30) days after delivery by Wayne of notice of such increase or, in the event Wayne issues its bonds (including any bonds sold to the Authority)

15

for such increased costs, in  annual installments in the manner provided in Section 8(b)(ii) above.

The Downriver Communities are hereby ordered to pay the Judgment Payments to Wayne without regard to whether the 1994 Improvements are actually completed or placed in operation, and such Judgment Payments shall not be reduced by any Downriver Community for any amounts that are attributable to other claims or offsets among the parties. Notwithstanding the preceding sentence, Wayne shall apply the Judgment Payments it receives, in such manner as Wayne shall determine, to the cost of the 1994 Improvements and Wayne's expenses, costs and fees in connection with the 1994 Improvements.

(c)    Notification of Required Judgment Payments.    Wayne shall, simultaneously upon the sale of the bonds, deliver to each Downriver Community described in Section 8(a) a complete schedule of the estimated Judgment Payments due in calendar years 1994 and 1995. Within twenty-one (21) days after such delivery, each Downriver Community shall provide Wayne with a resolution of its governing body satisfactory to Wayne resolving that:

(i)    it has adequate funds available that shall be reserved to pay such Judgment Payments; and/or

16

(ii)      to the extent that it does not have adequate funds available to pay such Judgment Payments the Assessing Officer shall assess taxes on the taxable property of the Downriver Community on the Levy Date sufficient to pay such deficiency and shall direct its treasurer or collecting officer to establish an expenditure account to pay such deficiency and a revenue account to receive taxes assessed for such Judgment Payments; and

(iii)     its treasurer or collecting officer shall pay such Judgment Payments to Wayne as such amounts are collected.

The "Levy Date" for the Downriver Communities that are (i) cities shall be July 1 or December 1 of each year, upon Wayne's approval, and (ii) townships shall be December 1 of each year, unless otherwise changed by applicable Michigan law.

On March 1, 1995, and on March 1 of each succeeding year, Wayne shall deliver to each Downriver Community a complete schedule of the estimated Judgment Payments due in the following calendar year. On April 15, 1995, and on April 15 of each succeeding year, each Downriver Community shall provide Wayne with a resolution in accordance with Sections 8(c)(i)-(iii) above.

17

If any amounts due by any Downriver Community hereunder are not paid when due, the amounts not so paid shall be subject to a penalty, in addition to interest, of one percent (1%) thereof for each month, or fraction thereof, that the same remains unpaid after the due date. Failure of Wayne to notify the Downriver Communities of any such Judgment Payments shall not relieve the Downriver Communities of the obligation to make such Judgment Payments.

(d)     <u>Surplus Proceeds</u>.  After completion of the 1994 Improvements and payment of all costs thereof, any surplus remaining from the proceeds of sale of bonds and cash received from any Downriver Community on or before the closing on the sale of Wayne's bonds shall be used by Wayne pro rata on the basis of the local share allocations set forth on pages 1-5 of Exhibit C for (i) reimbursement to those Downriver Communities that paid cash on or before the closing on the sale of Wayne's bonds, such amount to include such Downriver Community's share of interest earned on such surplus or (ii) credit to those Downriver Communities described in Section 8(a) toward the Judgment Payments next due Wayne by such Downriver Communities.

9.     <u>Need for the Improvements</u>.  This Court specifically finds, based on its review of applicable law and the Project Plan, that (i) the Improvements are needed to comply with the Federal Water Pollution Control Act and Act 245; and (ii) the installation, construction, alteration, improvement and operation of the Downriver

18

Sewage Disposal System, as described with the Improvements, have been ordered in accordance with the Consent Decree, Act 320, Act 245 and the Federal Clean Water Act.

10.   <u>Actions to be Taken by Wayne</u>.  To provide for the planning, designing, acquisition and construction of the Improvements, and the financing thereof, Wayne is hereby ordered pursuant to and in compliance with Act 320, and solely by authority of its Board of Commission, to:

(a)   Submit to the Board of Commission of Wayne a resolution (the "Bond Resolution") providing for the issuance of bonds in one or more series in the amount necessary to finance the planning, designing, acquisition and construction of the 1994 Improvements, and solely the 1994 Improvements, and to pay costs of issuance of the bonds, in the aggregate principal amount not to exceed Thirty Million Dollars ($30,000,000) (except as otherwise authorized pursuant to this 1994 Financing Plan And Final Judgment). Such bonds shall be payable and have such terms as provided in the Bond Resolution and shall be secured as provided in this 1994 Financing Plan And Final Judgment. After due adoption of the Bond Resolution, Wayne will take all necessary legal procedures and steps necessary to effectuate the authorization, sale and delivery of said bonds, such legal procedures and steps to include, without limitation, the right of Wayne to (i) file with the Municipal Finance

19

Division of the Michigan Department of Treasury notices of intent to issue the bonds described herein and to pay any related fees and to request an order, if applicable, providing an exception for the bonds from prior approval by the Department of Treasury and to request such other waivers from the Department of Treasury as Wayne deems necessary and (ii) file with the Authority such documents as may be necessary to issue and sell Wayne's bonds to the Authority.

(b)     Take bids and/or proposals for and enter into and execute final contracts for the planning, designing, acquisition and construction of the Local Jurisdiction Improvements, and the financing thereof, in accordance with the plans and specifications therefor as approved by this 1994 Financing Plan And Final Judgment.

(c)     Upon request of a Downriver Community, Wayne shall permit such Downriver Community to take bids and/or proposals for and enter into and execute final contracts for the planning, designing, acquisition and construction of the Local Jurisdiction Improvements, and the financing thereof, in accordance with the plans and specifications therefor as approved by this 1994 Financing Plan And Final Judgment, subject however, to final review and approval by Wayne.

20

(d)     Require and procure from the contractor or contractors undertaking the actual construction and acquisition of the Improvements necessary and proper bonds to guarantee the performance of the contract or contracts, and such labor and material bonds as may be required by law, in such amount and such forms as may be approved by Wayne.

(e)     Require and procure from the contractor or contractors undertaking the actual construction of the Improvements insurance protecting both the Downriver Communities and Wayne from liability in connection with such construction.  The cost of such insurance shall be considered to be a part of the cost of the Improvements.

(f)     Upon receipt of the proceeds of sale of the bonds, comply with all provisions and requirements provided for in the Consent Decree, the Bond Resolution and this 1994 Financing Plan And Final Judgment relative to the disposition and use of the proceeds of sale of the bonds.

(g)     In its discretion, temporarily invest any bond proceeds or other funds held by it as permitted by law, and investment income shall accrue to and follow the fund producing such income. Neither Wayne nor the Downriver Communities shall take any act or fail to take any act which would make the interest on the bonds includible in gross income for federal income tax purposes.

21

11.   Other Means to Satisfy Final Judgment.  Nothing herein contained shall be construed to prevent the Downriver Communities from using any combination of the means and methods provided under law or other such funds lawfully at their disposal for the purpose of providing funds to meet their obligations under this 1994 Financing Plan And Final Judgment.

12.   Approval of Bonds; Use of Proceeds.  The Municipal Finance Division of the Michigan Department of Treasury ("Treasury") has approved the financing of the Improvements as contemplated by this 1994 Financing Plan And Final Judgment. Wayne, the Downriver Communities and Treasury acknowledge that pursuant to Section 8(a) hereof: (i) the Court has ordered assignments of plaintiffs' rights under Section 6093 of Act 236 to require the Assessing Officers of the Downriver Communities to assess the payments on the taxable property of the Downriver Communities to Wayne and (ii) the treasurer or collecting officer of each Downriver community charged with collection and payment of such Judgment Payments is specifically authorized and directed to pay said sums to Wayne unless the Judgment Payments are otherwise paid in accordance with Sections 8(a) or 11 hereof. Wayne and the Downriver Communities acknowledge that it is the intent of some of the Downriver Communities to treat any such assessments of taxes for the Judgment Payments as being in excess of otherwise applicable charter, statutory and constitutional limitations and have assured this Court that none of them will hereafter object to the proposed treatment of such Judgment Payments as being in excess of charter, statutory and constitutional limitations. Treasury will not object to this

22

structure or challenge it in state or federal court. Wayne, the Downriver Communities and Treasury will cooperate to the extent within their power to cause the Revolving Loan Fund and the Authority to purchase the bonds issued by Wayne and shall take all other actions and provide such other assistance as may be necessary to permit Wayne to finance the Improvements in accordance with this 1994 Financing Plan And Final Judgment.

Wayne for itself and as agent for the Downriver Communities, other than Wyandotte, is hereby authorized to submit Parts I, II and III of the Application for Assistance to the Revolving Loan Fund and the Authority with respect to the 1994 Improvements. Any proceeds received by Wayne from the sale of bonds to the Revolving Loan Fund and the Authority with respect to the 1994 Improvements shall (i) if permissible under the Revolving Loan Fund, be paid to the Downriver Communities to reimburse them for Judgment Payments made by them to Wayne in accordance with Section 8(a)(i) and directly related to the 1994 Improvements or (ii) be deposited into the debt retirement fund established for the bonds previously issued for the 1994 Improvements and used solely to redeem, at the earliest possible opportunity, the outstanding bonds directly related to those 1994 Improvements financed by such subsequent bond issue. Wayne shall, within thirty (30) days after any early redemption of bonds, furnish the Downriver Communities with a complete schedule of the known Judgment Payments due on the next succeeding due date. If any Judgment Payments are not paid when due, the Judgment Payments not so paid shall be subject to a penalty, in addition to interest, of one percent (1%) thereof for

each month, or fraction thereof, that the same remains unpaid after the due date. Failure of Wayne to notify the Downriver Communities of any such Judgment Payments shall not relieve the Downriver Communities of the obligation to make such Judgment Payments.

Wayne and the Downriver Communities each declare their official intent to issue bonds in the maximum principal amount not to exceed Two Hundred Thirty Million Dollars ($230,000,000) to finance the costs of the Improvements and each declare that they reasonably expect to be reimbursed, without interest, for advances made by them towards the cost of the Improvements. Wayne and the Downriver Communities, at the present time, each have determined that there are no funds from sources other than the bonds anticipated herein that are reasonably expected to be reserved, allocated on a long-term basis or otherwise set aside by them, or by any member of a controlled group (as defined in Treasury Regulation § 1.150-1(e)) in which they are a member, if any, pursuant to their budget or financial policies with respect to the expenditures for the Improvements expected to be reimbursed from the proceeds of the bonds. Notwithstanding the above, each Downriver Community shall not be obligated to allow Wayne to finance its share of the cost of such Improvements in the above described manner, but may elect to pay its share of the cost of such Improvements in cash.

13.   <u>Revenue Sharing</u>. To the extent permitted by law, in the event a Downriver Community described in Section 8(a) fails for any reason to pay to Wayne

at the times specified by Wayne County its Judgment Payments or any other amounts ordered to be paid by the provisions of this 1994 Financing Plan And Final Judgment (a "Default"), Wayne shall immediately give notice of such Default and the amount thereof, in writing, to the Treasurer of the Downriver Community, the Treasurer of Wayne, the Treasurer of the State of Michigan and such other officials charged with the disbursement to the Downriver Community of funds returned by the State and now or hereafter available for pledge under any applicable state law, as provided in this Section. If such Default is not corrected within ten (10) days after such notification, such official charged with disbursement to the Downriver Community of the aforesaid funds is by these presents specifically authorized by the Downriver Community to withhold from the aforesaid funds the maximum amount permitted by law and not previously pledged by such Downriver Community as is necessary to cure said Default and to pay said sums so withheld to Wayne to apply on the obligations of the Downriver Community as ordered herein.  Any such moneys so withheld and paid shall be considered to have been paid to the Downriver Community within the meaning of the Michigan Constitution of 1963, the purpose of this provision being solely to authorize and pledge voluntarily the use of said funds in such amounts as may be permitted by law owing to the Downriver Community to meet any past-due obligations of the Downriver Community due under the provisions of this 1994 Financing Plan And Final Judgment.

14.     Reserve Fund.  Wayne shall (subject to restrictions imposed by state or federal law) maintain a reserve fund in an amount determined by Wayne (the "Reserve

Fund"). Wayne shall make the initial payment to the Reserve Fund out of proceeds from the sale of Wayne's bonds. Future payments to the Reserve Fund shall be made, at such times as Wayne shall determine, by the Downriver Communities that are not paying their Judgment Payments in cash on or before the closing date on the sale of Wayne's bonds, so that each such Downriver Community will have in the Reserve Fund an amount equal to the total Reserve Fund required by the first sentence of this Section multiplied by a fraction, the numerator of which is such Downriver Community's share of the outstanding Judgment Payments and the denominator of which is the total outstanding Judgment Payments. Wayne shall withdraw from the Reserve Fund such amounts as may be necessary to meet the principal and interest payments due on Wayne's bonds if the Judgment Payments received by Wayne are insufficient to make such payments. Upon any such withdrawal from the Reserve Fund, the Reserve Fund shall be restored by Wayne and Wayne shall be reimbursed severally, and not jointly, by each Downriver Community responsible for such insufficiency to the extent of its share of such insufficiency. Notwithstanding the preceding sentence, the Reserve Fund may be used to pay the principal and interest due on Wayne's bonds in the final year of maturity.

15.   <u>Future Changes</u>.  It is ordered that the structure for Wayne's bonds in this 1994 Financing Plan And Final Judgment shall govern future financings of the improvements, except as otherwise ordered by this Court, and so long as any of such bonds shall remain outstanding and unpaid, this structure shall not be subject to any

alteration or revision which would in any manner materially adversely affect either the security of the bonds or the prompt payment of principal or interest thereon.

16.   <u>Entry of Judgment</u>.  Each Downriver Community shall adopt a resolution authorizing the entry of this 1994 Financing Plan And Final Judgment.

17.   <u>Successors and Assigns</u>.  This 1994 Financing Plan And Final Judgment shall inure to the benefit of and be binding upon the parties hereto and their respective successors and assigns. Except as expressly modified herein, the terms and conditions of the Downriver Agreement shall remain in full force and effect.

18.   <u>Riverview Improvements</u>.  The City of Riverview is ordered to construct the Riverview Improvements and to issue its bonds for that purpose.

19.   <u>Transfer of Downriver Collection and Treatment System</u>.   Nothing contained in this 1994 Financing Plan And Final Judgment shall be construed as a prohibition against the transfer of the Downriver Collection and Treatment System from Wayne to the Downriver Communities, or any other entity, including an authority created for that purpose, for the construction, operation and maintenance of said System.  Any such transferee of such System will be a successor of Wayne and will be fully bound as to the terms and conditions of this 1994 Financing Plan And Final Judgment, including any obligations issued hereunder.

27

20.     Final Order.  This 1994 Financing Plan And Final Judgment (i) shall be contingent upon entry by the Clerk of the Court of the Consent Decree and (ii) shall be a final order upon which the parties may not appeal and which covers all claims by the plaintiffs against the defendants relating to the subject matter hereof. If there is any conflict between the terms of the Consent Decree and this 1994 Financing Plan And Final Judgment, the terms of the Consent Decree shall control.

21.     Continuing Jurisdiction of Court.  This Court shall retain jurisdiction with respect to any matter which may arise which may involve the interpretation of the terms of this 1994 Financing Plan and Final Judgment or affect the rights of any party arising out of this 1994 Financing Plan and Final Judgment.

22.     Counterparts.  This 1994 Financing Plan And Final Judgment may be executed in several counterparts.

23.     MDNR is signing this 1994 Financing Plan And Final Judgment solely for purposes of effectuating the provisions of Section 1.

24.     Treasury is signing this 1994 Financing Plan And Final Judgment solely for purposes of effectuating the provisions of Sections 12 and 15.

28

IN WITNESS WHEREOF, the parties hereto have caused this instrument to be executed as of the day and year first above written.

*John Feikens*
JOHN FEIKENS
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF MICHIGAN

MICHIGAN   DEPARTMENT   OF
NATURAL RESOURCES

By: *John C. Scherbarth*

Its: *Attorney*

MICHIGAN DEPARTMENT OF TREASURY

By: *John C. Scherbarth*

Its: *Attorney*

COUNTY OF WAYNE

By: *Edward H. McNamara*
Edward H. McNamara

Its: Chief Executive Officer

29

CITY OF ALLEN PARK

By: _Gerald N. Richards_
   Gerald N. Richards

Its: Mayor

And

By: _Bernice Weiss_
   Bernice Weiss

Its: Clerk


## CITY OF BELLEVILLE


By:_____
   Glenn Silvenis

Its: Mayor

And

By:_____

Its: Clerk


## TOWNSHIP OF BROWNSTOWN


By:_____
   W. Curt Boller

Its: Supervisor

And

By:_____

Its: Clerk

CITY OF ALLEN PARK

By:_____
    Gerald N. Richards

Its: Mayor

And

By:_____

Its: Clerk


CITY OF BELLEVILLE

By:_____
    Glenn Silvenis

Its: Mayor

And

By:_____

Its: Clerk


TOWNSHIP OF BROWNSTOWN

By:_____
    W. Curt Boller

Its: Supervisor

And

By:_____

Its: Clerk


30

CITY OF ALLEN PARK

By:_____
     Gerald N. Richards

Its: Mayor

And

By:_____

Its: Clerk


CITY OF BELLEVILLE

By:_____
     Glenn Silvenis

Its: Mayor

And

By:_____

Its: Clerk


TOWNSHIP OF BROWNSTOWN

By: *W. Curt Boller*
     W. Curt Boller

Its: Supervisor

And

By: *Linda L. Smith*

Its: Clerk


30

**CITY OF DEARBORN HEIGHTS**

By: _____
  Ruth Canfield

Its: Mayor

And

By: _____

Its: Clerk

**CITY OF ECORSE**

By: _____
  James Tassis

Its: Mayor

And

By: _____

Its: Clerk

**CITY OF LINCOLN PARK**

By: _____
  Frank Sall

Its: Mayor

And

By: _____

Its: Clerk

31

CITY OF DEARBORN HEIGHTS

By:_____
   Ruth Canfield

Its: Mayor

And

By:_____

Its: Clerk


CITY OF ECORSE

By:_____
   James Tassis

Its: Mayor

And

By:_____
   ROBIN R. UNDERWOOD

Its: Clerk


CITY OF LINCOLN PARK

By:_____
   Frank Sall

Its: Mayor

And

By:_____

Its: Clerk


31

CITY OF DEARBORN HEIGHTS

By:_____

   Ruth Canfield

Its: Mayor

And

By:_____

Its: Clerk


CITY OF ECORSE

By:_____

   James Tassis

Its: Mayor

And

By:_____

Its: Clerk


CITY OF LINCOLN PARK

By: _Steven M. Brown_____
       STEVEN M. BROWN

Its: Mayor pro-tem

And

By: _Janice Sarkisian_____
    JANICE SARKISIAN

Its: Clerk Deputy

31

CITY OF RIVER ROUGE

By: _Margaret M. Watson_
    Margaret M. Watson

Its: Mayor

And

By: _Charl E. Manley_
    CHARLES E. MANLEY

Its: Clerk


## CITY OF RIVERVIEW


By:_____
    Peter Rotteveel

Its: Mayor

And

By:_____

Its: Clerk


## CITY OF ROMULUS


By:_____
    Beverly McAnally

Its: Mayor

And

By:_____

Its: Clerk


32

**CITY OF RIVER ROUGE**

By:_____
      Margaret M. Watson

Its: Mayor

And

By:_____

Its: Clerk


**CITY OF RIVERVIEW**

By:_____
      Peter Rotteveel

Its: Mayor

And

By:_____
      Marilyn Girardin

Its: Clerk


**CITY OF ROMULUS**

By:_____
      Beverly McAnally

Its: Mayor

And

By:_____

Its: Clerk

32

CITY OF RIVER ROUGE

By:_____
   Margaret M. Watson

Its: Mayor

And

By:_____

Its: Clerk


CITY OF RIVERVIEW

By:_____
   Peter Rotteveel

Its: Mayor

And

By:_____

Its: Clerk


CITY OF ROMULUS

By: *Beverley McAnally* (signature)
   Beverly McAnally

Its: Mayor

And

By: *Linda Choate* (signature)

Its: Clerk


32

**CITY OF SOUTHGATE**

By: _____
    Norma Wurmlinger

Its: Mayor

And

By: _____
    Thomas M. Alexander
Its: Clerk


**CITY OF TAYLOR**


By: _____
    Cameron G. Priebe

Its: Mayor

And

By: _____

Its: Clerk


**TOWNSHIP OF VAN BUREN**


By: _____
    David Jacokes

Its: Supervisor

And


By: _____

Its: Clerk


33

CITY OF SOUTHGATE

By:_____
   Norma Wurmlinger

Its: Mayor

And

By:_____

Its: Clerk

**CITY OF TAYLOR**
Res. #2.85-94

By:_____
   Cameron G. Priebe

Its: Mayor

And

By:_____

Its: Clerk

**TOWNSHIP OF VAN BUREN**

By:_____
   David Jacokes

Its: Supervisor

And

By:_____

Its: Clerk

33

**CITY OF SOUTHGATE**

By:_____
    Norma Wurmlinger

Its: Mayor

And

By:_____

Its: Clerk


**CITY OF TAYLOR**

By:_____
    Cameron G. Priebe

Its: Mayor

And

By:_____

Its: Clerk


**TOWNSHIP OF VAN BUREN**

By:_____
    David Jacokes

Its: Supervisor

And

By:_____
    Cindy C. King

Its: Clerk

33

CITY OF WYANDOTTE

By: *[signature]*

James R. DeSana

Its: Mayor

And

By: *[signature]*

Its: Clerk