# EXHIBIT 6

| Allen Park<br>Belleville<br>Brownstown Twp.<br>Dearborn Heights<br>Ecorse<br>Lincoln Park | **Downriver Utility Wastewater Authority**<br>25605 Northline Road<br>© Taylor, Michigan 48180 | River Rouge<br>Riverview<br>Romulus<br>Southgate<br>Taylor<br>Van Buren Twp.<br>Wyandotte |
|---|---|---|

May 11, 2016

Warren C. Evans
Wayne County Executive
500 Griswold Street #1050
Detroit, Michigan 48226

RE: Non-Binding Letter of Intent to Purchase Certain Assets
Related to the Downriver Sewage Disposal System ("DSDS" or "System")

Dear Mr. Evans:

This Non-binding Letter of Intent, follows up on prior correspondence and a meeting held on May 2, 2016 with your representatives. This letter sets forth, in general terms, the manner by which the County of Wayne (the "County") and the Downriver Utility Wastewater Authority ("DUWA") may pursue the transfer of certain assets and associated real estate in the DSDS (the "Transaction").

The Transaction is subject to certain continuing conditions including those identified in this response and the negotiation and consummation of a mutually agreeable definitive written agreement containing customary terms, representations, covenants, and warranties (the "Definitive Agreement"). The DUWA shall draft and provide the initial working draft of the Definitive Agreement and a team of knowledgeable representatives jointly appointed by the County and DUWA shall negotiate and work to finalize the Definitive Agreement. The parties shall use commercially reasonable efforts to negotiate and draft a Definitive Agreement within two (2) months of the date hereof.

The following basic Transaction structure, terms and conditions are proposed:

1. **Purchase Price:** The County would transfer any and all interest it may have in any assets, including but not limited to the cash reserves of DSDS, and real estate, if any, associated with the operation of the DSDS to the DUWA for $57,500,000.00 (the "Purchase Price"), payable as follows: (a) a $54,000,000.00 cash payment at Closing; and (b) a $3,500,000.00 payment payable within 5 years after the Closing Date. The consummation of this Transaction (the "Closing") would occur as soon as possible after: (a) the completion of due diligence to the County and DUWA's satisfaction; (b) all consents and approvals needed from all parties

to complete the transaction have been obtained; and (c) all conditions to Closing specified in the Definitive Agreement have been fulfilled or waived in writing. The date of such Closing is referred herein as "Closing Date". The parties recognize a cash transfer plan may be required to allow the County to pay pre-closing or transition period costs incurred. Additionally, a real estate transfer plan may be required to allow the County post-Closing Date activity for such real estate transfers.

2.  **Pre-Transfer Operations:** The County and DUWA would, in a commercially reasonable manner, cooperate to accommodate the transfer to DUWA of any DSDS assets, real estate and operations in accordance with the Definitive Agreement, including, but not limited to, the establishment of a transition period prior to transfer during which DUWA or its designee would have a scheduled opportunity to observe, shadow and obtain advice from the County regarding System operations and maintenance. DUWA may contract with the County to provide transitional operation and maintenance and/or administrative support services, the terms of which will be outlined in a subsequent agreement(s). If the County is engaged in pre-transfer operations, the County would be compensated out of the cash reserves for the DSDS.

3.  **Indemnification, Hold Harmless and Duty to Defend:** Subsequent to any transfer DUWA, as owner and operator of the DSDS including all assets and funds relating to the DSDS, shall indemnify, hold harmless and has the duty to defend the County for all liabilities and obligations arising from operations after Closing, including during the Transition Period. The parties shall negotiate a mutually acceptable and appropriate indemnification of such liabilities as part of the Definitive Agreement.

4.  **Transfer of Current Employees:** The DUWA agrees to discuss providing offers of employment to all current DSDS employees at a position of comparable duties to their current DSDS position, conditioned upon each employee's ability to satisfy DUWA's hiring and selection criteria and to satisfactorily perform the requirements of the position for which he or she is hired. Alternatively, DUWA may request a third party operator to interview for employment all interested DSDS employees.

After closing, a transition period may be needed where County employees operate DSDS for the benefit of DUWA. The DUWA shall pay all costs and expenses relating to transition operation costs incurred after the Closing Date. A transition fund may be created to address these costs.

5.  **Assumption of Operation and Maintenance Responsibilities:** The DUWA, under the Definitive Agreement, shall assume complete responsibility for the operation and maintenance of the DSDS. The Definitive Agreement will allow for the option of retaining a third-party operator to provide the day-to-day operations of the DSDS for the DUWA. After the Closing Date, DUWA may engage

the County to provide services to the DSDS, and the County may engage DUWA to provide services pursuant to separately negotiated agreements.

6.  **Disclosure of Existing Contracts:** The County shall disclose and the DUWA shall assume and be assigned all non-employment related contracts and agreements for the DSDS (the "Contracts"). DUWA would be free to renegotiate the Contracts subject to their existing terms and the rights of all third-parties under the Contracts.

7.  **New Goods and Services Contracts:** During the term of negotiations, the County will notify the DUWA if it: (i) enters into any new Contracts lasting more than six (6) months; (ii) assumes any debt or enters into any contracts exceeding $200,000.00; or (iii) amends any existing Contracts to (a) extend their term and such extension is longer than six (6) months; or (b) increase the maximum compensation under the Contract and the increase is greater than $200,000.00.

8.  **Disclosure of Claims, Liabilities and Lawsuits:** The County will disclose all known and anticipated claims, liabilities, lawsuits, and/or any and other liabilities or anticipated liabilities related to the operation of the DSDS, including but not limited to, any breach of contract claims, basement flooding claims or any other liability or negligence claims arising out of, or otherwise related to the operation of the DSDS. DUWA will only assume specifically agreed upon liabilities as outlined in the Definitive Agreement.

9.  **Cash Reserves:** With the exception of expenditures for normal monthly or annual expenses included within the budget prior to the Closing Date, DUWA will be notified of any payments from the current DSDS cash reserves held by the County. No payments shall be made from current DSDS cash reserves held by County except those necessary for appropriate DSDS costs as determined by County, including pre-transfer operations.

10. **Access to County Records:** During the period commencing on the date this letter is signed by both the County and DUWA (the "Signing Date") and continuing until the date on which either party provides the other party with written notice that negotiations toward a Definitive Agreement are terminated (the "Termination Date"), the County will afford the DUWA reasonably full and free scheduled access to, as related to the operation of the DSDS, any and all contracts, books and records and all other documents and data, including, but not limited to, and as may be updated over time: (i) updated budget-to-actual statement through March 31, 2016; (ii) current schedule of all cash balances (including activity since October 1, 2014) for the DSDS reserve accounts; (iii) usage reports for the past year; and (iv) schedule of all outstanding debt balances.

11. **County's Continued Operation:** During the period from the Signing Date

until the Closing Date, the County shall operate the DSDS in the ordinary course, unless otherwise mutually agreed.

12.  **Legal and Professional Fees:** For discussion purposes, each party shall pay its own legal and professional fees ("Fees") associated with the Transaction, although DSDS funds may be used for such fees. DUWA and the County acknowledge that the development and implementation of the Transaction will require DUWA and County to engage a variety of professional service providers including bond counsel, financial and technical advisors, and attorneys. The County and DUWA agree that each party may access and utilize DSDS revenue/cash reserves for the purpose of compensating all professional service providers for work performed relative to the Transaction. DUWA and the County agree to establish a process by which DUWA can receive timely reimbursement from the County to pay its professional service providers for work performed as of the date of this letter until the Closing Date. DSDS funds shall be utilized for costs associated with both the DUWA and County's professional service providers for work performed in relation to the Transaction. In the event that, and for any reason, the Transaction does not close, each party shall bear its own costs. The parties may establish caps for Fees from DSDS revenue/cash reserves within 60 days of an executed non-binding letter of intent.

13.  **Prohibition Against Engaging Other Potential Buyers:** The County agrees to not engage any other potential buyers in a negotiation of the sale of all or any portion of the DSDS if a draft Definitive Agreement has been circulated by July 31, 2016. Consideration for an exclusivity agreement is the time and expense involved in drafting this Non-Binding Letter of Intent and conducting the due diligence review. If either party provides written notice of termination of this Transaction this prohibition expires immediately.

## Additional Conditions Not Contemplated in DUWA's Proposed LOI

14.  **Outstanding Bonds:** All outstanding bonds of the System shall be defeased or assumed by the DUWA, upon terms and conditions acceptable to the Wayne County Executive, subject to the rights of bond holders and any approvals required. Both parties will engage bond counsel for further advice and analysis of these issues.

15.  **Orderly Transfer:** The DUWA shall ensure the orderly transfer, establishment and operation of any and all administrative support services necessary for the operation and maintenance of the System, including by way of example and without limitation, accounting, contract management, personnel/human resources, procurement and technical support.

16.  **Public Health, Safety and Welfare:** The DUWA shall ensure, to the satisfaction of the County, the continued sewage disposal transport, treatment and disposal services necessary for public health, welfare and safety.

**ABILITY TO BIND THE PARTIES:** The Parties acknowledge that the Definitive Agreement must be submitted to the Wayne County Commission, the Wayne County Chief Executive Officer, the governing body of DUWA, and each of the respective Constituent Municipalities for approval.

**PRE-CONDITIONS FOR SYSTEM TRANSFER:** The Parties acknowledge that the following Pre-Conditions shall occur prior to the Closing Date from the County to the DUWA:

(a) A complete or sufficient identification and description of the System, including all related infrastructure, assets (both located at the DSDS plant and off-site), parts, easements, etc. necessary for the continuous operation of the DSDS.

(b) DUWA shall apply for and use its reasonable best efforts to obtain the issuance of an acceptable National Pollutant Discharge Elimination System Permit associated with the System and responsibility for the associated Industrial Pretreatment Program and any other associated approvals or requirements by regulatory agencies, and hold the County harmless from any transfer or new permit related liabilities.

(c) All approvals and consents necessary for all bonds associated with the System to be defeased or transferred to the DUWA only and an assurance sufficient to the County of DUWA's ability to issue debt and otherwise obtain future financing for DSDS needs.

(d) The satisfactory completion of all due diligence, including, but not limited to reasonably scheduled access to senior management and key employees as reasonable necessary, customary legal, operational and financial inquiry, and information systems and technology review.

(e) DUWA securing appropriate funding through the issuance of a bond or bonds or alternative financing in the aggregate amount sufficient to fund the Purchase Price and costs associated with the Transaction.

(f) The completion and approval of all other documents and agreements associated with the transfer of the System to the DUWA.

(g) Each community which is a customer of the DSDS is up to date and paid in full with regard to its payments due to the County for service provided by the County.

(h) DUWA represents to the County's satisfaction that DUWA will operate and maintain the DSDS to provide continued sewage disposal transport, treatment and disposal services necessary for public health, welfare and safety without interruption or incident.

(i) Drains and Drainage Districts Relinquishment: Pursuant to the Michigan Drain Code, if agreed to by the applicable city or township, a relinquishment by the County drain commissioner and/or drainage board(s) of jurisdiction and control of the Southgate-Wyandotte Relief Drain's Drainage District and the Ecorse Creek Pollution Abatement District No. 1 and the assumption of

the maintenance, jurisdiction, control and operation of the drains and drainage districts, and all costs attendant thereto may occur by the applicable city or township.

(j) Pursuant to existing intergovernmental agreements and applicable NPDES permit requirements, a transfer of operation and maintenance of the River Rouge CSO Basin may be considered if the City of River Rouge agrees.

(k) Any other consent or approval from any entity necessary to effectuate the transfer of the County's interest in the DSDS to the DUWA through the Definitive Agreement.

**NON-BINDING:** The Parties agree that this document does not constitute an offer to consummate the transaction described herein or an agreement to sell or purchase all or any portion of the assets used to operate the DSDS and shall be treated as non-binding. It does not contain all matters upon which agreement must be reached for the Transaction or any proposed Transaction to be consummated. The creation and establishment of this document is only to respond to the Non-Binding Letter of Intent to Purchase Assets Related to the DSDS issued by the DUWA, describing a proposed framework for pursuing a sale and transfer of the System. All Parties shall have the ability to memorialize and create a formal binding term sheet prior to proceeding with any formal final or Definitive Agreement.

Very truly yours,

Downriver Utility Wastewater Authority

By: _____
Rick Sollars, Chairman

ACCEPTED AND AGREED AS OF THIS 16th DAY OF MAY, 2016:

COUNTY: The County of Wayne

By: _____
Warren C. Evans, Wayne County Executive

cc: Mr. R Kaufman, Wayne County Deputy CEO
Mr. T Saunders, Wayne County CFO
Ms. Z. Elhasan, Wayne County Corporation Counsel
Mr. J. Fausone, DUWA Counsel