UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**United States of America,** *et al.*,   Case No. 87-70992

   **Plaintiffs,**   Hon. Sean F. Cox

v.

**Wayne County,** *et al.*,

   **Defendants.**

_____/

**Stipulated Amendment to Financing Plan and Final Judgment**

Pursuant to this Court's continuing jurisdiction over its March 15, 1994 Downriver Sewage Disposal System 1994 Financing Plan and Final Judgment (Dkt. # 151) as described more fully below, and the stipulation of the Parties as are described herein, the Parties request the adoption and entry of this Stipulated Amendment to Financing Plan and Final Judgment, as follows.

WHEREAS:

a)   Wayne County presently operates the Downriver Sewage Disposal System ("DSDS")[1] which provides sewage treatment and conveyance facilities for

---

[1] At times and in other documents including those previously filed with this Court, DSDS has been referred to as the Downriver Collection and Treatment System or the Downriver Wastewater Treatment System.

1

wastewater generated by thirteen communities: the City of Allen Park, the City of Belleville, the Charter Township of Brownstown, the City of Dearborn Heights, the City of Ecorse, the City of Lincoln Park, the City of River Rouge, the City of Riverview, the City of Romulus, the City of Southgate, the City of Taylor, the Charter Township of Van Buren, and the City of Wyandotte (collectively, the "Downriver Communities");

   b)  In 1987, Frank J. Kelley, Attorney General for the State of Michigan, ex rel, Michigan Natural Resources Commission and Director of the Michigan Department of Natural Resources ("State Plaintiffs,") and the United States (together with State Plaintiffs, "Plaintiffs") filed a Complaint with this Court alleging that the County had violated, among other things, the Clean Water Act and the Michigan Water Resources Commission Act, and in 1994, this Court entered a Consent Decree (Exhibit 1) requiring, *inter alia*, various sewer and pollution control improvements to be implemented by Wayne County and the Downriver Communities to bring the DSDS into compliance with state and federal law and otherwise resolve the claims of the Plaintiffs;

   c)  In 1994, in connection with the entry of the Consent Decree, this Court entered a stipulated Downriver Sewage Disposal System 1994 Financing Plan and Final Judgment ("Financing Plan") (Exhibit 2);

2

d) The Financing Plan authorized Wayne County to finance the sewer and pollution control improvements by selling bonds and collecting amounts, including Judgment Payments mandated under § 8(b) of the Financing Plan, from the Downriver Communities to repay and otherwise fund Wayne County's obligations;

e) The Financing Plan authorized Wayne County to require payment by the Downriver Communities for Wayne County's debt service issued in connection with the Financing Plan through, among other means, the assessment of taxes by the Downriver Communities (Exhibit 2, § 8);

f) The Financing Plan provided that it "shall govern future financings of the improvements" comprising the DSDS "except as otherwise ordered by this Court, and so long as any … bonds [issued by Wayne County under the 1994 Financing Plan and Final Judgment] remain outstanding and unpaid, this structure shall not be subject to any alteration or revision which would in any manner materially adversely affect either the security of the bonds or the prompt payment of principal or interest thereon" (Exhibit 2, § 15);

g) The Financing Plan further provided that nothing contained therein "shall be construed as a prohibition against the transfer of [DSDS] from Wayne [County] to the Downriver Communities, or any other entity, including an

authority created for that purpose, for the construction, operation and maintenance of said System" (Exhibit 2, § 19);

  h)  In the Financing Plan, this Court retained jurisdiction "with respect to any matter which may arise which may involve the interpretation of the terms of this 1994 Financing Plan and Final Judgment or affect the rights of any party arising out of this 1994 Financing Plan and Final Judgment" (Exhibit 2, § 21);

  i)  The Financing Plan provided further that the Michigan Department of Natural Resources was signing the Financing Plan solely for the purposes of effectuating the provisions of Section 1, and the Michigan Department of Treasury were signing solely for the purposes of effectuating the provisions of Sections 12 and 15 (Exhibit 2, §§ 23, 24);

  j)  In 2005, on stipulation of all parties, this Court entered an Order Approving Joint Motion to Terminate Consent Decree ("Termination Order") (Exhibit 3), stating that the parties should endeavor to work cooperatively to solve new issues outside of the context of this litigation;

  k)  In the Termination Order, the Court noted that the parties to the Consent Decree, as then amended, made no motion to terminate the Financing Plan and stated that the Financing Plan "will remain in full force and effect and within this Court's oversight" (Exhibit 3, p. 1, n. 1);

l) Since entry of the Financing Plan in 1994, Wayne County has, pursuant Act 451, Public Acts of Michigan, 1994 ("Act 451") (MCL 324.101 – 324.90106), conducted multiple bond sales of judgment levy bonds to finance the construction and maintenance of improvements to the DSDS, and each bond sale has been the subject of a supplemental order entered in this case;[2]

m) Wayne County is presently collecting funds from the Downriver Communities to provide debt service to the outstanding judgment levy bonds as listed in Exhibit 4 (the "Outstanding Judgment Levy Debt");

n) In 2010, twelve of the thirteen Downriver Communities formed the Downriver Utility Wastewater Authority ("DUWA") under the provisions of Act 233, Public Acts of Michigan, 1955, as amended ("Act 233") (MCL 124.181 – 124.294), *inter alia*, to acquire, construct, manage, improve, operate, or negotiate an agreement with Wayne County for the operation of a sewage disposal system, particularly the Downriver Sewage Disposal System (*See* Amended Articles of

---

[2] See docket entries #159 (Supplement #1, entered September 2, 1994); #200 (Supplement #2, entered March 21, 1995); #202 (Amended Supplement #2, entered April 4, 1995); #208 (Supplement #3, entered August 29, 1995); #227 (Supplement #4, entered July 11, 1996); # 228 (Supplement #5, entered July 11, 1996); #262 (Supplement #6, entered October 4, 1996); #277 (Supplement #7, entered March 24, 1997); #281 (re-entry of Supplement #7, entered March 28, 1997); #294 (Supplemental #8, entered June 26, 1997); #302 (Supplement #9, entered August 27, 1997); #320 (Supplement #10, entered September 29, 1998); #331 (Supplement #11, entered February 5, 1999); #334 (Supplement #12, entered May 27, 1999); #340 (Supplement #13, entered August 23, 1999); #349 (Supplement #14, entered February 15, 2000); #606 (Supplement #15, entered June 26, 2007).

Incorporation of the Downriver Utility Wastewater Authority, Exhibit 5, Article III);

  o)  In 2015, the City of Lincoln Park joined DUWA;

  p)  On May 11, 2016, DUWA provided to Wayne County a Letter of Intent (Exhibit 6) setting forth a proposed transfer of the facilities comprising the DSDS and the obligations for operation and maintenance thereto from Wayne County to DUWA, with such transfer being contingent, among other things, on the occurrence of events and approvals as to be described and as contemplated by a final Definitive Agreement now under negotiation;

  q)  Upon the transfer of DSDS to DUWA, Wayne County and the Downriver Communities intend that DUWA will be thereafter responsible for the financing and operation of the DSDS, and that Wayne County will have no continuing obligations to the Downriver Communities as concerns DSDS except as otherwise specified in an agreement between those parties and under the Financing Plan;

  r)  The Downriver Communities, DUWA, and Wayne County desire, as part of the transfer of DSDS to DUWA, to provide for the continuing payment of the Outstanding Judgment Levy Debt, without any increase of the Outstanding Judgment Levy Debt itself, including through tax levy-supported Judgment

Payments from the Downriver Communities as mandated by § 8 of the Financing Plan;

s) The undersigned Parties believe it is in the best interest of the public to preserve the Outstanding Judgment Levy Debt and the payment structure of the Financing Plan in the transfer of DSDS to DUWA and to assure that the Outstanding Judgment Levy Debt is satisfied as originally contemplated through payment by Wayne County supported by taxation by the Downriver Communities;

t) The undersigned Parties believe it is in the best interest of the public to assure that the provisions of the Financing Plan requiring Judgment Payments to be assessed by the Assessing Officer of each Downriver Community on its respective levy date and on the taxable property of the Downriver Communities be preserved;

u) State Plaintiffs are not here joined as signatories as the provisions for which the State Plaintiffs signed the original 1994 Financing Plan—i.e., §§ 1, 12, and 15 (see Exhibit 2, §§ 23, 24)—are not altered by this Stipulation; and

v) Wayne County and the Downriver Communities consent to the entry of this Amendment in full, without adjudication;

NOW, THEREFORE, upon consent of the Parties hereto, it is hereby ordered, adjudged, and decreed as follows:

1.      This Court has continuing jurisdiction under its prior orders to enter the stipulation of the Parties to amend the Financing Plan and to alter or adjudge the obligations of the Parties thereto.

2.      The Court confirms that a transfer of DSDS or any portion thereof from Wayne County to DUWA (a "DUWA Transfer") is a transfer as permitted and contemplated by §§ 15 and 19 of the Financing Plan.

3.      In the event of and notwithstanding a DUWA Transfer as described above, the continuing validity and enforceability of the Financing Plan is hereby confirmed; the Financing Plan shall remain in full force and effect as to all liabilities issued thereunder or arising in connection therewith.

4.      Further, in the event of and notwithstanding a DUWA Transfer, Wayne County may agree to retain all or any portion of the Outstanding Judgment Levy Debt as listed in Exhibit 4, and may agree to continue to provide debt service thereto, on whichever terms it may reach with DUWA, the Downriver Communities, and any necessary third parties, including the bondholders.

5.      In the event Wayne County agrees to retain any of the Outstanding Judgment Levy Debt as described in paragraph 4, *supra*, the obligations of the Downriver Communities, both to make Judgement Payments and to assess Judgment Payments, and the remedies for nonpayment by the Downriver Communities, all as specified in § 8 of the Financing Plan, remain valid and

enforceable as if no DUWA Transfer had occurred, including specifically, but not limited to, the obligations of the Downriver Communities to make Judgment Payments and to levy taxes therefor under § 8 of the Financing Plan.

6. The continued application of the Financing Plan, as confirmed in this Order, is not contingent on the adoption or consummation of a DUWA Transfer or other transfer; the Financing Plan shall continue to govern the rights and obligations of the parties thereto even if DUWA and Wayne County fail to consummate such a transfer.

7. The ability of Wayne County and the Downriver Communities to promptly satisfy the Outstanding Judgment Levy Debt under and through the structures for payment from the Downriver Communities and their taxpayers as specified in the Financing Plan shall not, by the adoption and entry of this Stipulated Amendment or through a subsequent execution of a DUWA Transfer agreement, be materially or adversely affected.

IT IS SO ORDERED, this 5th day of December, 2017

s/Sean F. Cox
Sean F. Cox
United States District Judge

9